UNITED STATES DISTRICT COURT                 <u>**ORAL ARGUMENT REQUESTED**</u>
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------
SCOTT CHOLEWA, individually and on           Case No. 1:20-cv-05483
behalf of all others similarly situated,

        Plaintiff,                                   <u>**NOTICE OF MOTION TO DISMISS**</u>
                                             <u>**PLAINTIFF'S CLASS ACTION**</u>
    -against-                                    <u>**COMPLAINT**</u>

CVS HEALTH CORPORATION and NICE-
PAK PRODUCTS, INC.,

        Defendants.
-----------------------------------------------------------


      **PLEASE TAKE NOTICE** that, upon the annexed Declaration of John Q. Lewis,

declared under penalty of perjury on June 8, 2021, the accompanying memorandum of law and

all other pleadings and proceedings had herein, Defendants CVS Health Corporation and Nice-

Pak Products, Inc. will move this Court, before the Honorable LeShann DeArcy Hall, on a date

and at a time to be designated by the Court for an order dismissing Plaintiff's claims against

them on the basis that the Federal Trade Commission has primary jurisdiction over the labeling,

packaging, and advertisement of flushable wipes manufactured by Nice-Pak Products, Inc. and

sold by CVS Health Corporation, and that Plaintiff lacks standing to seek nationwide injunctive

relief, and for such other and further relief as to this Court shall seem just and proper, and, in the

alternative, to strike Plaintiff' allegations regarding a nationwide class because he cannot

establish personal jurisdiction as to such a class.

      **PLEASE TAKE FURTHER NOTICE** that, under the Court's May 28, 2021 Order,

Plaintiff's answering papers, if any, shall be served no later than June 29, 2021, and Defendants'

reply papers, if any, shall be served no later than July 6, 2018. The parties are to file the motion once it is fully briefed.

Dated: June 15, 2021

<div style="margin-left: 50%;">

Respectfully submitted,

*/s/ John Q. Lewis*
John Q. Lewis
Michael J. Ruttinger
Chelsea M. Croy Smith
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Tel: 216.592.5000
Fax: 216.592.5009
Email: john.lewis@tuckerellis.com
michael.ruttinger@tuckerellis.com
chelsea.smith@tuckerellis.com


Courtney E. Scott
Tressler LLP
1 Penn Plaza, Suite 4701
New York, New York 10119
Tel: 646.833.0900
Email: cscott@tresslerllp.com

*Counsel for CVS Health Corporation and Nice-Pak Products, Inc.*

</div>

5179937.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------

SCOTT CHOLEWA, individually and on
behalf of all others similarly situated,

       Plaintiff,

    -against-

CVS HEALTH CORPORATION and NICE-
PAK PRODUCTS, INC.,

       Defendants.

---------------------------------------------------------

Case No. 1:20-cv-05483

## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT</u>

## TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND ...................................................................................................3

    A.  Plaintiff's lawsuit is premised on a clog he allegedly experienced in March 2020,
       which he attributes to the use of CVS Flushable Wipes that he had been
       purchasing and flushing since 2012. ..........................................................................3

    B.  Plaintiff seeks to certify a nationwide class seeking both damages and injunctive
       relief on behalf of all persons and entities who have purchased flushable wipes of
       any kind from CVS. ....................................................................................................4

    C.  In May 2015 Nice-Pak entered into a Consent Order with the Federal Trade
       Commission ("FTC") pertaining to the labeling for its flushable wipes. ...........4

       1.  The FTC's Draft Complaint cited in Plaintiff's Complaint pertained to a
          previous, no-longer marketed product. ...........................................................6

       2.  The FTC permits Nice-Pak to continue to advertise and label its wipes as
          "flushable" consistent with the terms of the Consent Order.........................6

       3.  As part of the Consent Order process, the FTC assumed jurisdiction over
          Nice-Pak's labeling and confirmed it will "closely monitor Nice-Pak's future
          activities to determine whether any violations occur."..................................7

       4.  The FTC has never taken any action against—or expressed any concern
          with—Nice-Pak's flushable wipes labeling pursuant to the Consent Order.................8

III. LAW AND ARGUMENT........................................................................................9

    A.  This Court should dismiss Plaintiff's claims to the extent he seeks nationwide
       injunctive relief. .........................................................................................................9

       1.  Plaintiff's injunctive relief claims are barred by the doctrine of "primary
          jurisdiction" because the FTC is actively overseeing and "closely monitoring"
          its Consent Order with Nice-Pak. ...................................................................9

          a.  "Primary jurisdiction" applies where resolution of a plaintiff's claim
             would require the courts to resolve issues that have been placed within the
             special competency of an administrative agency...................................10

          b.  Plaintiff's request for injunctive relief against CVS and Nice-Pak is
             inconsistent with the FTC's oversight of its Consent Order................10

          c.  The FTC's commitment to "closely monitor" Nice-Pak's future activities
             "to determine whether any violations occur" is dispositive...................14

i

2.  Plaintiff lacks standing to seek nationwide injunctive relief. ......................................15

B.  This Court should strike Plaintiff's claims for a nationwide class because Plaintiff cannot establish personal jurisdiction as to such a class. .....................................................16

IV. CONCLUSION ...................................................................................................................19

## **TABLE OF AUTHORITIES**

<u>**Cases**</u>

*Akran v. United States*
  997 F. Supp. 2d 197 (E.D.N.Y. 2014) ....................................................................... 5

*Blue Chip Stamps v. Manor Drug Stores*
  421 U.S. 723 (1975) ................................................................................................ 13

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*
  137 S. Ct. 1773 (2017) ............................................................................. 3, 16, 17, 18

*Calibuso v. Bank of America Corp.*
  893 F. Supp. 2d 374 (E.D.N.Y. 2012) ..................................................................... 18

*Canale v. Colgate-Palmolive Co.*
  258 F. Supp. 3d 314 (S.D.N.Y. 2017) ..................................................... 2, 11, 12, 13

*Chen-Oster v. Goldman, Sachs & Co.*
  877 F. Supp. 2d 113 (S.D.N.Y. 2012) ..................................................................... 19

*City of Los Angeles v. Lyons*
  461 U.S. 95 (1983) .................................................................................................. 15

*DeBernardis v. NBTY, Inc.*
  No. 17 C 6125, 2018 WL 461228 (N.D. Ill. Jan. 18, 2018) ..................................... 17

*Fulton Cogeneration Assoc. v. Niagara Mohawk Power Corp.*
  84 F.3d 91 (1996) ................................................................................................... 11

*Gen. Elec. Co. v. MV Nedlloyd*
  817 F.2d 1022 (2d Cir. 1987) ................................................................................. 11

*Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*
  148 F. Supp. 3d 285 (S.D.N.Y. 2015) ..................................................................... 18

*In re Dental Supplies Antitrust Litig.*
  No. 16-cv-696(BMC), 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ................. 3, 17

*In re Gen. Mills Glyphosate Litig.*
  No. CV 16-2869, 2017 WL 2983877 (D. Minn. July 12, 2017) ............................... 16

*Johnson v. Nyack Hosp.*
  964 F.2d 116 (2d Cir. 1992) ................................................................................... 10

*Kurtz v. Kimberly-Clark Corp.*
  321 F.R.D. 482 (E.D.N.Y. 2017) ............................................................................. 15

*Lanovaz v. Twinings N. Am., Inc.*
  No. 12-cv-02646-RMW, 2016 WL 4585819 (N.D. Cal. Sept. 2, 2016) .................. 16

*Lia v. Saporito*
  909 F. Supp. 2d 149 (E.D.N.Y. 2012) ....................................................................... 5

*McDonnell v. Nature's Way Prod., LLC*
   No 16-CV-5011, 2017 WL 4864910 (N.D. Ill. Oct. 26, 2017) .......................................... 17, 18

*Nicosia v. Amazon.com, Inc.*
   834 F.3d 220 (2d Cir. 2016) ............................................................................................. 15

*Palmer v. CVS Health and Nice-Pak Products, Inc.*
   No. 1:17-cv-00938-CCB (D. Md.) ...................................................................................... 3, 16

*Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*
   No. 14 C 2032, 2018 WL 1255021 (N.D. Ill. Mar. 12, 2018) ................................................ 17

*Santa Fe Natural Tobacco Co. Marketing & Sales Practices and Prods. Liab. Litig.*
   No. MD 16-2695 JB/LF, 2017 WL 6550897 (D. N.M. Dec. 21, 2017) ..................................... 5

*Spratley v. FCA US LLC*
   No. 17-CV-0062, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ........................................... 17

*Stevens v. Boston Scientific Corp.*
   152 F. Supp. 3d 527 (S.D. W.Va. 2016) ................................................................................ 2

*United States v. Armour & Co.*
   402 U.S. 673 (1971) .......................................................................................................... 14

*United States v. Morgan*
   307 U.S. 183 (1939) .......................................................................................................... 11

*United States v. Western Pac. R.R. Co.*
   352 U.S. 59 (1956) ............................................................................................................ 10

*Wang v. Gordon*
   715 F.2d 1187 (7th Cir. 1983) ........................................................................................... 14

*Weinberger v. Bentex Pharms., Inc.*
   412 U.S. 645 (1973) ......................................................................................................... 2, 10

*Wenokur v. AXA Equitable Life Ins. Co.*
   No. CV-17-00165-PHX-DLR, 2017 WL 4357916 (D. Ariz. Oct. 2, 2017) ............................... 17

## **Statutes**

15 U.S.C. § 45(1) ................................................................................................................ 8, 14

28 U.S.C. § 2072 ................................................................................................................... 18

## **Rules**

Federal Rule of Evidence 201 ................................................................................................... 5

## I.       INTRODUCTION

Plaintiff Scott Cholewa is a New York consumer who alleges that he purchased CVS Flushable Cleansing Wipes and CVS Health Maximum Strength Formula Medicated Wipes ("CVS Flushable Wipes") and incurred damages, including significant plumbing costs, because the wipes were not in fact "flushable." But Plaintiff is not content with seeking compensation for his alleged damage. Instead, he seeks to transform his allegations into the basis for a nationwide class action against both CVS Health Corporation ("CVS") and the manufacturer of the CVS Flushable Wipes, Nice-Pak Products, Inc. ("Nice-Pak"), complete with requests for injunctive relief that would bar Nice-Pak from labeling *any* of its wipes as "flushable." The nationwide class he proposes, however, fails for several reasons requiring dismissal of his Class Action Complaint.

First, nationwide injunctive relief is irreconcilable with the fact that CVS Flushable Wipes are manufactured and sold consistent with a Consent Order entered into between Nice-Pak and the Federal Trade Commission ("FTC") pertaining to the labeling of its flushable wipes. (*See* Compl. ¶¶ 60-64.) The FTC is empowered to investigate and prevent unfair or deceptive acts affecting commerce, and routinely investigates whether companies are engaged in false, misleading, or deceptive consumer practices. Through the Consent Order, which was finalized on October 30, 2015, the FTC assumed jurisdiction over Nice-Pak's labeling, packaging, and advertisements for a 20-year period and publicly committed to "closely monitor Nice-Pak's future activities to determine whether any violations occur."[1] The FTC, however, has never taken any action against—or indicated any concern with—Nice-Pak's later generations of flushable wipes, including those sold by CVS.

---

[1] Decl. of John Q. Lewis, Ex. A, October 30, 2015 Letter from Donald S. Clark, Secretary of the Federal Trade Commission, to Kathleen Schmid, Senior Counsel, New York City Law Department ("FTC Letter"), *available at* https://www.ftc.gov/system/files/documents/cases/151102nice-pakletter.pdf (last accessed June 8, 2021) ("Lewis Decl.").

By seeking to enjoin the sale of flushable wipes manufactured by Nice-Pak, Plaintiffs directly challenge the FTC's decision to allow Nice-Pak to continue marketing its wipes as "flushable." Such second-guessing is precisely why courts *defer* consideration of legal issues affected a regulatory agency to the agency with "primary jurisdiction" over the issue. *See Weinberger v. Bentex Pharms., Inc.*, 412 U.S. 645, 654 (1973); *Stevens v. Boston Scientific Corp.*, 152 F. Supp. 3d 527, 533 (S.D. W.Va. 2016) (noting that deferral to an agency under the doctrine of primary jurisdiction is appropriate where 'a specific agency actually *has* authority and expertise over the relevant issues."); *Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 314, 324-26 (S.D.N.Y. 2017) (invoking primary jurisdiction doctrine "to defer to the FTC's experience and avoid the risk of inconsistent rulings.").

Second, in light of the FTC's active oversight of Nice-Pak and its flushable wipes, Plaintiff should be limited to litigating his own dispute—the damages he claims to have sustained from flushing CVS Flushable Wipes he has purchased since 2012. Indeed, considering that Plaintiff alleges he "stopped purchasing the CVS Flushable Wipes" upon learning they "were not in fact flushable" (*see* Compl. ¶¶ 70, 71), he lacks standing even to seek injunctive relief because he cannot be "deceived" for a second time. Nor may Plaintiff represent the claims of consumers who purchased *other* types of flushable wipes from CVS that he himself never purchased. At best, Plaintiff's claims should be limited to the products *he* purchased—CVS Flushable Cleansing Wipes and CVS Health Maximum Strength Formula Medicated Wipes.

Third, even if Plaintiff could represent a class of similarly situated consumers, the nationwide class he proposes is geographically overbroad because the non-New York class members are unable to establish personal jurisdiction. Specific personal jurisdiction requires "a connection between the forum and the specific claims at issue," *Bristol-Myers Squibb Co. v.*

*Superior Court of Cal.*, 137 S. Ct. 1773, 1781 (2017). Courts within this district have held that "[p]ersonal jurisdiction in class actions must comport with due process just the same as any other case." *In re Dental Supplies Antitrust Litig.*, No. 16-cv-696(BMC), 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017). Thus, the fact that the non-resident class members' claims lack any connection to New York renders a nationwide class action inappropriate as a matter of law.[2]

## II.   BACKGROUND

### A.   Plaintiff's lawsuit is premised on a clog he allegedly experienced in March 2020, which he attributes to the use of CVS Flushable Wipes that he had been purchasing and flushing since 2012.

Plaintiff is a New York consumer who alleges that he regularly purchased flushable wipes "in and around Jericho, New York, beginning in at least 2012, if not earlier," and in particular from a CVS Pharmacy located in Jericho. (Compl. ¶ 65.) Plaintiff alleges that he purchased two types of CVS flushable wipes—CVS Flushable Cleansing Wipes and CVS Health Maximum Strength Formula Medicated Wipes. (*Id.* ¶ 1.) Over the years, Plaintiff flushed the wipes "as directed by the products' packaging" (*id.* ¶ 68) until he experienced "plumbing issues" in the form of a clog, which "backed up" his plumbing in March 2020 (*id.*). He alleges that the plumbers he employed to remove the clog "confirmed that CVS Flushable Wipes" caused the damage. (*Id.*). He claims damages in the form of "the costs of removing the clog," the cost of repairing "damage from the resulting flooding, which necessitated significant additional construction work," and also "monetary damages associated with paying more money per wipe for CVS Flushable Wipes." (*Id.* ¶ 66.)

---

[2] In Defendants' pre-motion conference letter, Defendants included a request for this case to be stayed pursuant to the first-filed doctrine until resolution of another related case, *Palmer v. CVS Health and Nice-Pak Products, Inc.*, No. 1:17-cv-00938-CCB (D. Md.). The *Palmer* case has since been dismissed, and so Defendants do not reassert the argument here.

**B.    Plaintiff seeks to certify a nationwide class seeking both damages and injunctive relief on behalf of all persons and entities who have purchased flushable wipes of any kind from CVS.**

Even though Plaintiff only purchased two types of flushable wipes from CVS—the CVS Flushable Cleansing Wipes and CVS Health Maximum Strength Formula Medicated Wipes (*id.* ¶ 1)—he nevertheless seeks declaratory and injunctive relief that would restrict CVS and Nice-Pak from marketing or selling *any* wipes labeled "flushable." (*See* Compl., Prayer for Relief ¶ E.) Further, Plaintiff peppers his Complaint with a host of allegations and anecdotal reports, which he loosely cites for sweeping propositions like: "Numerous tests demonstrate and confirm that wipes labeled and sold as being 'flushable' . . . will not actually break down or dissolve in any sewer system" (Compl. ¶¶ 29-35), and "Flushable Wipes cause massive damage across the country and abroad," including "private property damage" (*id.* ¶¶ 36-41) and "damage to public sewer and water systems" (*id.* ¶¶ 42-59). Plaintiff does not, however, limit these anecdotal reports to CVS products; many of these unsubstantiated reports refer to different brands, retailers, and manufacturers who are not in this lawsuit.

Plaintiffs' request for relief is similarly overbroad. He does not allege any damage from CVS's flushable wipes after he "stopped purchasing the CVS Flushable Wipes" (*id.* ¶ 71), yet still seeks to certify an injunctive relief class "ordering Defendants to make disclosures, through corrective advertising, to inform the public of the true nature regarding the effect on plumbing when Flushable Wipes are flushed," and "enjoining Defendants from selling Flushable Wipes," period, until they have done so. (*Id.* ¶92; *Id.*, Prayer for Relief ¶ E.)

**C.    In May 2015 Nice-Pak entered into a Consent Order with the Federal Trade Commission ("FTC") pertaining to the labeling for its flushable wipes.**

Plaintiff knows of the Consent Order between Nice-Pak and the FTC. Indeed, Plaintiff includes several allegations in the Complaint characterizing the order. (*See* Compl. ¶¶ 60-64.) The

Consent Order is the product of an FTC investigation into Nice-Pak's advertising and labeling for its flushable wipes that began in the fall of 2013. Nice-Pak cooperated fully with the FTC and reached a settlement, which was publicly announced in May 2015 and formally entered after a public comment period on October 30, 2015. (*See id*.)

The FTC released three documents related to its investigation: (1) an Agreement Containing Consent Order ("the Consent Order")[3]; the Final Order issued by the FTC ("Final Order")[4]; and (3) a Draft Complaint against Nice-Pak ("Draft Complaint")[5]. For purposes of deciding this Motion to Dismiss, this Court may take judicial notice of each of these publicly available documents under Federal Rule of Evidence 201, as the existence of the Consent Order, Final Order, and Draft Complaint, and their contents, are facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See, e.g.*, *Akran v. United States*, 997 F. Supp. 2d 197, 203 (E.D.N.Y. 2014) ("In particular, '[a]gency determinations and administrative findings are public records of which a court may properly take judicial notice.'") (quoting *Lia v. Saporito*, 909 F. Supp. 2d 149, 161 (E.D.N.Y. 2012)); *In re Santa Fe Natural Tobacco Co. Marketing & Sales Practices and Prods. Liab. Litig.*, No. MD 16-2695 JB/LF, 2017 WL 6550897, *61 (D. N.M. Dec. 21, 2017) (taking judicial notice of an FTC Complaint, FTC Consent Order, and associated exhibits and press releases as "matters of public record").

---

[3] Lewis Decl., Ex. B, https://www.ftc.gov/system/files/documents/cases/150518nice-pakorder.pdf (last accessed June 8, 2021).

[4] Lewis Decl., Ex. C, https://www.ftc.gov/system/files/documents/cases/151102nice-pakdo.pdf (last accessed June 8, 2021).

[5] Lewis Decl., Ex. D, https://www.ftc.gov/system/files/documents/cases/151102nice-pakcmpt.pdf (last accessed June 8, 2021).

**1.      The FTC's Draft Complaint cited in Plaintiff's Complaint pertained to a previous, no-longer marketed product.**

The Draft Complaint pertained only to a previous, no-longer marketed, iteration of Nice-Pak's "substrate"—the combination of raw materials associated with its flushable wipes products—composed of "non-elemental chlorine bleached wood pulp, bicomponent fibers, and EP907 repulpable binder." (Draft Complaint ¶2.) It is undisputed that the FTC made no allegations pertaining to Nice-Pak's *subsequent* substrate technologies. Indeed, the FTC made no formal allegations about *any* Nice-Pak product because what Plaintiff refers to as the "FTC's complaint" was never filed and never left draft form. In fact, products containing the substrate identified in the Draft Complaint were already being replaced on the market, but Nice-Pak nevertheless agreed as part of the Consent Order resolution to request that retailers "immediately stop using all packaging, advertising, and marketing materials previously provided to [them] by Nice-Pak about these wipes." (Final Order, Attachment A.)

**2.      The FTC permits Nice-Pak to continue to advertise and label its wipes as "flushable" consistent with the terms of the Consent Order.**

In fact, as Plaintiff acknowledges in Paragraph 63 of the Complaint, the FTC permitted Nice-Pak to *continue* to advertise and label its subsequent generations of wipes and substrate technologies as "flushable" so long as Nice-Pak, prospectively:

> **[S]hall not make any representation**, in any manner, expressly or by implication, including through the use of a product name, endorsement, depiction, illustration, trademark, or trade name, **that the Covered Product**:
>
> A.      is safe for sewer systems;
> B.      is safe for septic systems;
> C.      breaks apart shortly after flushing;
> D.      will not clog household plumbing systems;
> E.      will not clog household septic systems;
> F.      is safe for plumbing
> G.      is safe to flush
> H.      dissolves or disperses when interacting with water; or
> I.      **is flushable**.

6

**unless the representation is non-misleading, and, at the time the representation is made, Respondent possesses and relies upon competent and reliable evidence**, which, when appropriate based on the expertise of professionals in the relevant area must be competent and reliable scientific evidence, that, when considered in light of the entire body of relevant and reliable evidence, is sufficient in quantity and quality based on standards generally accepted in the relevant fields **to substantiate that the representation is true**.

(Final Order p. 2 § I (emphases added); *see also* Compl. ¶ 63).

> **3.    As part of the Consent Order process, the FTC assumed jurisdiction over Nice-Pak's labeling and confirmed it will "closely monitor Nice-Pak's future activities to determine whether any violations occur."**

By entering into the Consent Order, Nice-Pak submitted to the FTC's jurisdiction to enforce the Final Order for 20 years. (Consent Order p. 6 § IX; Final Order, p. 5 § IX). During that time, as Plaintiff recognizes in Paragraph 64 of the Complaint, Nice-Pak is permitted to keep making and selling flushable wipes, subject to certain requirements:

> [A]ny tests, analyses, research, studies, or other evidence purporting to substantiate any of the above representations must at least:
>
> A.    demonstrate that the Covered Product disperses in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment; and
>
> B.    substantially replicate the physical conditions of the environment in which the covered product is claimed, directly or indirectly, expressly or by implication, to be disposed of; or, if no specific environment is claimed, then in all environments in which the product will likely be disposed of.

(Consent Order p. 3 § I; Final Order p. 3 § I; Compl. ¶ 64). Nice-Pak further agreed, on request by the FTC, to submit its advertisements, labeling, packaging, and promotional materials, along with any tests, reports, studies, and the like relied upon as the basis for any of its representations. (Consent Order p. 4 § IV; Final Order p. 4 § IV).

The FTC has confirmed that its enforcement of the Consent Order is not just passive surveillance. The FTC committed to "closely monitor[ing] Nice-Pak's future activities to

7

determine whether any violations occur." (FTC Letter at 1). As noted above, the Consent Order was subject to a nearly six-month notice and comment period. During that process the City of New York Law Department submitted comments in response to the proposed order urging the FTC to "rigorously monitor Respondent's compliance with the Order" and to "also vigorously exercise oversight over Respondent's compliance with the Order and impose penalties in a timely fashion if Respondent fails to demonstrate that its products comply with a meaningful dispersal standard."[6] The FTC responded to these concerns by promising to do just what the City of New York asked:

> You do raise a number of concerns about the operation of the order, which we will address. You urge the Commission to take strong further action should Nice-Pak fail to comply with the order. **If Nice-Pak violates the Commission's final order, it could be liable for civil monetary penalties of up to $16,000 per violation**, pursuant to Section 5(l) of the FTC Act, 15 U.S.C. § 45(l). As is the case with all Commission orders, **Commission staff will closely monitor Nice-Pak's future activities to determine whether any violations occur.**

(FTC Letter (emphases added)). Put simply, the FTC has committed to actively monitoring its Consent Order with Nice-Pak and enforcing it if any violations occur.

> **4.     The FTC has never taken any action against—or expressed any concern with—Nice-Pak's flushable wipes labeling pursuant to the Consent Order.**

Notwithstanding the FTC's active monitoring of Nice-Pak and its compliance with the Consent Order, the FTC has not taken any action, or expressed any concern with, any generation of Nice-Pak's flushable wipes technology. Indeed, the FTC never took formal action against *any* Nice-Pak product; Plaintiff never alleges that the FTC Complaint was actually *filed*—because it was not. (*See* Compl. ¶¶ 61-62.) This can be seen from the FTC's own Final Order, which refers to the FTC Complaint as a "draft." (Final Order at 1.) Besides, as Plaintiff admits, flushable wipes

---

[6] Lewis Decl., Ex. E, June 19, 2015 Letter From Kathleen Schmid, Senior Counsel, Environmental Law Division, New York City Law Department ("New York City Law Department Letter"), *available at* https://www.ftc.gov/system/files/documents/public_comments/2015/06/00054-96542.pdf (last accessed June 8, 2021).

manufactured by Nice-Pak remain on the market today. This is undisputed confirmation that the FTC is actively monitoring, and has not identified any issues with, the Nice-Pak flushable wipes sold *today* by retailers, including CVS.

## III.    LAW AND ARGUMENT

### A.    This Court should dismiss Plaintiff's claims to the extent he seeks nationwide injunctive relief.

The crux of Plaintiff's Complaint is a request for nationwide injunctive relief, not on his own behalf—because he no longer purchases flushable wipes from CVS—but on behalf of a nationwide class of consumers. His injunctive relief claim fails for a pair of independent, yet equally dispositive reasons. First, the injunctive relief claims are irreconcilable with the fact that the FTC has taken primary jurisdiction over the labeling for flushable wipes manufactured by Nice-Pak, committing to "closely monitor Nice-Pak's future activities to determine whether any violations" of the Consent Order occur. Second, Plaintiff's own admission that he "stopped purchasing the CVS Flushable Wipes" upon learning they "were not in fact flushable" (*see* Compl. ¶¶ 70, 71) is dispositive of his claim for injunctive relief because it confirms that he is not likely to suffer future injury, lacks standing to seek injunctive relief at all, and therefore cannot serve as a class representative for a Rule 23(b)(2) injunctive relief class.

### 1.    Plaintiff's injunctive relief claims are barred by the doctrine of "primary jurisdiction" because the FTC is actively overseeing and "closely monitoring" its Consent Order with Nice-Pak.

To begin, this Court should note that the focus of Plaintiff's Complaint is a request for injunctive relief that intrudes on the very issues over which the FTC assumed responsibility through the Consent Order process. By claiming that the Nice-Pak-manufactured flushable wipes sold by CVS should not be on the market, Plaintiff's asks this Court to act as a regulator and, in doing so, perform an administrative function that the FTC *is already performing*—monitoring and

enforcing Nice-Pak's compliance with its Consent Order. When the FTC entered into the Consent Order, it assumed prospective responsibility for answering the very technical question framed by Plaintiff's Complaint—whether Nice-Pak has sufficiently substantiated the "flushability" of its flushable wipes.

> **a.**  **"Primary jurisdiction" applies where resolution of a plaintiff's claim would require the courts to resolve issues that have been placed within the special competency of an administrative agency.**

The doctrine of primary jurisdiction is well established in the Second Circuit. Primary jurisdiction "'applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.'" *Johnson v. Nyack Hosp.*, 964 F.2d 116, 122 (2d Cir. 1992) (quoting *United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63 (1956)). At its core, the doctrine "recognizes that even though Congress has not empowered an agency to pass on the *legal* issues presented by a case raising issues of federal law, the agency's expertise may, nevertheless, prove helpful to the court in resolving difficult *factual* issues." *Id.* (emphasis in original). It thus holds that "[t]hreshold questions within the peculiar experience of an administrative agency are appropriately routed to the agency, while the court stays its hand." *Weinberger*, 412 U.S. at 654.

> **b.**  **Plaintiff's request for injunctive relief against CVS and Nice-Pak is inconsistent with the FTC's oversight of its Consent Order.**

The existence of the Consent Order, which permits the continued marketing of Nice-Pak's wipes as "flushable," is dispositive of Plaintiff's request for injunctive relief. As noted above, the FTC's Draft Complaint contained allegations critical of a specific generation of Nice-Pak substrate that is no longer on the market. It has no bearing on subsequent generations of product.

Correspondingly, it has no bearing on Plaintiffs' request for nationwide *prospective* relief in the form of an injunction that would preclude Defendants from selling flushable wipes until they have made "disclosures, through corrective advertising, to inform the public of the true nature regarding the effect on plumbing when Flushable Wipes are flushed." (Compl., Prayed for Relief ¶ E.)

By asking this Court to enjoin CVS from selling Nice-Pak's flushable wipes, Plaintiff effectively challenges the FTC's decision-making by asserting that the current generation of Nice-Pak's flushable wipes product should *not* be on the market, notwithstanding the Consent Order. But such second-guessing is precisely why courts invoke the primary jurisdiction doctrine to *defer* consideration of issues over which a regulatory agency has already assumed supervision. *See Fulton Cogeneration Assoc. v. Niagara Mohawk Power Corp.*, 84 F.3d 91, 97 (1996) ("The aim of the doctrine, then, is to ensure that courts and agencies with concurrent jurisdiction over a matter do not work at cross-purposes."); *Gen. Elec. Co. v. MV Nedlloyd*, 817 F.2d 1022, 1026 (2d Cir. 1987) ("[I]t is often counterproductive for a court to act upon that subject matter without the benefit of knowing what the agency has to offer. Beyond that, courts and administrative agencies should not act at cross-purposes less they become "wholly independent and unrelated instrumentalities of justice each acting . . . without regard to the appropriate function of the other.'") (quoting *United States v. Morgan*, 307 U.S. 183, 191 (1939)).

Deferral to the FTC's primary jurisdiction is especially appropriate where, as here, the issue is litigation addressing whether a consumer product's labeling is deceptive when the FTC has already taken ownership of that issue. The Southern District of New York's reasoning in *Canale v. Colgate-Palmolive Co.* is instructive. In *Canale*, the plaintiff alleged a putative class action including, like here, claims for breach of warranty and violation of New York's General Business Laws, based on the defendant's "claim that its Optic White products 'go beyond surface

stains to deeply whiten teeth,' which Plaintiff alleges is false and misleading." 258 F. Supp. 3d at 317. The defendant's motion to dismiss invoked primary jurisdiction, arguing that the plaintiff's claims "should be stayed or dismissed . . . given that the FTC is currently investigating the issue of which Plaintiff complains." *Id.* at 323-24. The court agreed, staying the litigation for six months pending the conclusion of the FTC's investigation.

The same four factors that the *Canale* court found dispositive also favor deferral to the FTC in this case. When assessing whether to invoke primary jurisdiction, the court explained:

> [C]ourts should consider four factors: (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

*Id.* at 324-25. In *Canale*, the court found these factors favored primary jurisdiction because the FTC "is specifically tasked with addressing deceptive labeling" and "is currently in the process of reviewing the validity of the exact claims at issue in this litigation," thus creating a "particularly high" risk of inconsistent rulings. *Id.* at 326. The same reasoning applies here.

As in *Canale*, the FTC has authority over, and is specifically tasked with addressing, the allegedly deceptive labeling at issue. The FTC has also chosen to *exercise that authority* by entering into a Consent Order with Nice-Pak. Thus, not only do the first two factors favor applying primary jurisdiction, but also the inconsistent-rulings and prior-application factors favor deferral because the FTC's oversight of Nice-Pak is *ongoing* and it has committed to "closely monitor" Nice-Pak with regard to the same allegedly deceptive labeling statements put at issue by Plaintiff's Complaint. Any decision this Court makes to enjoin CVS from selling Nice-Pak-manufactured flushable wipes would thus step into—and conflict with—the FTC's role in actively supervising and policing the Consent Decree.

The case for primary jurisdiction here is even stronger than in *Canale* and requires *dismissal* of Plaintiff's claims against CVS and Nice-Pak, as opposed to a mere stay. Unlike *Canale*, where the court invoked primary jurisdiction to stay the case until the close of a discrete investigation, the FTC has assumed an active role in overseeing and enforcing the Consent Order against Nice-Pak for a *20-year* period. By committing to "closely monitor Nice-Pak's future activities to determine whether any violations occur" (*see* FTC Letter at 1), the FTC has essentially occupied the role of chief arbiter as to whether Nice-Pak's flushable wipes should be on the market or not. As part of the Consent Order notice-and-comment process, alone, the FTC solicited feedback *and actively responded to* some 55 letters from cities, municipalities, wastewater systems, and other interested parties regarding Nice-Pak's product over a six-month period. *See generally* Notice and Comment Correspondence, collected at https://www.ftc.gov/system/files/documents/cases/151102nice-pakletter.pdf (last accessed June 8, 2021). And in response to that process, the FTC reassured interested parties like the City of New York that it will *remain* in an active oversight role throughout the 20-year term of the Consent Order. While it occupies that role, any request for injunctive relief would necessarily duplicate and potentially conflict with the FTC's own supervision.

Nor could Plaintiff use the Consent Order as a basis for its claim even if it were *not* requesting inconsistent relief. Federal courts, including the Supreme Court of the United States, routinely hold that because consent decrees are construed as contracts, non-parties have no private right to enforce a federal agency's consent decree. *See, e.g.*, *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975) ("[A] well-settled line of authority from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it.") (citing *United States v. Armour*

13

*& Co.*, 402 U.S. 673 (1971)); *Wang v. Gordon*, 715 F.2d 1187, 1190 (7th Cir. 1983) (rejecting a nonparty's attempt to use a violation of a consent decree to support a damage claim against a party to the consent decree). Here too, even if the relief Plaintiff requested *were* consistent with the Consent Order, Plaintiff lacks any private right to enforce it.

> **c.      The FTC's commitment to "closely monitor" Nice-Pak's future activities "to determine whether any violations occur" is dispositive.**

Plaintiff's principal argument against primary jurisdiction carries no real force when the FTC has already committed to "closely monitor Nice-Pak's future activities to determine whether any violations" of the Consent Decree "occur." (FTC Letter at 1). Specifically, Plaintiff, in his January 25, 2021 pre-motion conference letter to this Court, takes the position that the FTC "is not, as Defendants claim, 'closely monitoring' the marketing or labeling of so-called flushable products." (Doc. 15 at 1.) But Defendants are not the ones making this claim; the "closely monitoring" commitment comes from the *FTC itself* in response to comments made by the City of New York during the process of finalizing the Consent Order. Not only did the FTC commit to "closely monitor Nice-Pak's future activities to determine whether any violations occur," but it reassured that it would leverage fees "pursuant to Section 5(1) of the FTC Act, 15 U.S.C. § 45(1)" if Nice-Pak did. (FTC Letter at 1). In light of that commitment, the undisputed fact that the agency has *not* identified any violations or taken any action against Nice-Pak is confirmation that the FTC agrees Nice-Pak's product appropriately remains on the market labeled as "flushable." Plaintiff's argument, which blatantly asks this Court to conclude that the FTC is not doing what it said it would do, is *precisely* the kind of second-guessing of an agency position that requires invocation of primary jurisdiction.

Indeed, the FTC's commitment to "closely monitor" Nice-Pak's compliance with the Consent Decree not only defangs Plaintiff's main argument, but illustrates why Plaintiff's

reference to another flushable wipes case, in which Judge Weinstein considered the application of primary jurisdiction, is misplaced. *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482 (E.D.N.Y. 2017). Plaintiff cites *Kurtz* in his pre-motion conference letter to argue that primary jurisdiction is *inappropriate* insofar as the FTC advised the *Kurtz* court that "it cannot engage in 'aggregate adjudication' of claims" and "does not intend to prescribe trade regulation rules" for flushable wipes. (Doc. 15 at 2.) But, as Plaintiff acknowledges, the FTC went on to advise the *Kurtz* court that it should "look to the Consent Order for guidance on" the FTC's "views regarding 'flushability representations.'" (*Id.*) In other words, the FTC, when asked, pointed directly to Nice-Pak's Consent Order—in which it had committed to "closely monitor" Nice-Pak's activities—as the best guidance for the *entire industry* of flushable wipes manufacturers. True, the *Kurtz* referral illustrates that the FTC would not *enforce* its Consent Order with Nice-Pak against non-signatory companies, but the FTC indicated that it *will* monitor and enforce the Consent Order as to Nice-Pak, making it directly applicable in this case, which involves *only* Nice-Pak-manufactured flushable wipes subject to the FTC's ongoing jurisdiction.

### 2.    Plaintiff lacks standing to seek nationwide injunctive relief.

Plaintiff's injunctive relief claims also fail, both on a class-wide basis and individually, because Plaintiff admits that he "stopped purchasing the CVS Flushable Wipes" after determining for himself "that Flushable Wipes were not in fact flushable." (Compl. ¶¶ 70-71.) Standing to seek injunctive relief requires an allegation that the plaintiff is likely to suffer future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). When—as here—a plaintiff *alleges* that he is aware of the alleged threat posed by a deceptive product label, and has stopped purchasing the product— there is no allegation of future harm sufficient to sustain an injunctive relief claim. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (plaintiff did not have standing to seek an injunction relating to the sale of an appetite suppressant because he did not allege a likelihood of

future harm); *see also, e.g.*, *In re Gen. Mills Glyphosate Litig.*, No. CV 16-2869, 2017 WL 2983877, at *4 (D. Minn. July 12, 2017) (concluding that "if Plaintiffs will never buy [] Products [at issue] or be misled by the label on the Products again, then there is no threat of injury and no standing for injunctive claims, regardless of the states of mind of members of the putative class"); *Lanovaz v. Twinings N. Am., Inc.*, No. 12-cv-02646-RMW, 2016 WL 4585819, at *3 (N.D. Cal. Sept. 2, 2016) (plaintiff lacked standing to seek injunctive relief where she had no intention of purchasing product again in the future).

This is the same basis for dismissal embraced by the District of Maryland in *Palmer v. CVS Health*, No. CCB 17-938, 2019 WL 6529163 (D. Md. Dec. 4, 2019), another flushable wipes case involving the same defendants, same plaintiffs' counsel, and similarly situated plaintiffs. In the *Palmer* case, as here, the plaintiffs affirmatively alleged that they had "stopped purchasing" flushable wipes from CVS. *Id.* at *4. The *Palmer* court found this allegation dispositive on the issue of injunctive relief: "The Palmers do not plausibly allege a likelihood of future injury. They do not allege that they want to or plan on purchasing the flushable wipes in the future. . . . Therefore, the complaint does not contain any allegations of future injury, but instead implies that the Palmers do not plan on purchasing these wipes in the future." *Id.* The same is true here, and this Court should reach the same result—dismissal of Plaintiff's injunctive relief claims because Plaintiff has failed to allege any plausible future injury.

      **B.**    **This Court should strike Plaintiff's claims for a nationwide class because Plaintiff cannot establish personal jurisdiction as to such a class.**

If any of Plaintiff's claims survive dismissal, this Court should strike Plaintiff's "National CVS Class," (Compl. ¶85), in the wake of the Supreme Court's holding in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017) ("*BMS*"). In *BMS*, the Supreme Court confirmed that before a court may exercise specific jurisdiction there

"must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* at 1780 (internal citation omitted). When there is "no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.* at 1781. The Supreme Court thus held that non-resident plaintiffs cannot pursue their claims in a forum in which they cannot establish specific jurisdiction, even if there are in-state plaintiffs with factually similar claims.

The same logic that precluded the *BMS* non-resident plaintiffs from establishing specific jurisdiction in California precludes non-New York class members in this case from having their claims adjudicated by a court in New York. Indeed, another judge in this District has already applied *BMS* to dismiss a putative class, rejecting the argument that the Supreme Court's decision "has no effect on the law in class actions." *In re Dental Supplies Antitrust Litig.*, No. 16 Civ. 696 (BMC), 2017 WL 4217115, at *9 (E.D.N.Y. Sept 20, 2017). Any such argument "is flawed" because "[t]he constitutional requirements of due process do[] not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case."[7] *Id. See also Spratley v. FCA US LLC*, No. 17-CV-0062, 2017 WL 4023348, at *6-7 (N.D.N.Y. Sept. 12, 2017) (dismissing non-resident plaintiffs' claims in a class action for lack of personal jurisdiction because they showed no connection between their claims and the defendant's contacts with the forum state); *McDonnell v.*

---

[7] Other courts have followed Judge Cogan's lead in applying *BMS* to class actions. *See, e.g.*, *Wenokur v. AXA Equitable Life Ins. Co.*, No. CV-17-00165-PHX-DLR, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017) (noting that the court "lacks personal jurisdiction over the claims of putative class members with no connection to Arizona, and therefore would not be able to certify a nationwide class"); *McDonnell v. Nature's Way Prods., LLC*, No. 16 C 5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017) (in-state plaintiff's connection with the forum "cannot provide a basis for the Court to exercise personal jurisdiction over the claims of nonresidents"); *DeBernardis v. NBTY, Inc.*, No. 17 C 6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018); *Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, No. 14 C 2032, 2018 WL 1255021, at *3 (N.D. Ill. Mar. 12, 2018).

*Nature's Way Prod., LLC*, No 16-CV-5011, 2017 WL 4864910, at *4 (N.D. Ill. Oct. 26, 2017) (applying *BMS* and dismissing the non-resident plaintiffs' claims, who had no connection to the forum state, except for resident plaintiffs' purchases of products in the forum, which 'cannot provide a basis for the Court to exercise personal jurisdiction over the claims of nonresidents.'"). Indeed, consistent with Judge Cogan's recognition, to hold otherwise would contravene the Rules Enabling Act, which mandates that federal rules of procedure—including Rule 23—"shall not abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2072.

Plaintiff does not appear to contest the application of *BMS* to nationwide class action claims, but rather insists that any decision would be premature. In his pre-motion conference letter, Plaintiff suggests that "Second Circuit case law provides that a motion to dismiss is not the appropriate stage to evaluate state versus nationwide class claims." (Doc. 15 at 2.) But the Second Circuit has not addressed this issue. And while motions to strike class allegations are often held to be premature, courts in this circuit have clarified that overbroad class allegations may be stricken where the defendant can "demonstrate from the face of the [c]omplaint that it would be impossible to certify the alleged class regardless of the facts [the] [p]laintiffs may be able to obtain during discovery.'" *See Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d 285, 292 (S.D.N.Y. 2015). Here, Plaintiff's allegations about the scope of his proposed class frames the debate; nothing in discovery is likely to change the geographic scope of the alleged national class. As such, the personal jurisdiction issue presents issues that can be resolved "separate and apart from" the issues that this Court will decide on any class certification motion, and so Defendant's request is not premature. *Calibuso v. Bank of America Corp.*, 893 F. Supp. 2d 374, 383 (E.D.N.Y. 2012) ("However, '[a] motion to strike that addresses issues 'separate and apart from the issues that will be decided on a class certification motion' is not procedurally premature.'" (quoting

*Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (adopting in part and reversing in part report and recommendation)).

## IV.    CONCLUSION

Plaintiff's allegations of economic loss that he, individually, attributes to CVS Flushable Wipes do not fit with his overarching attempt to represent a broad class of flushable wipes consumers seeking not just compensation, but prospective injunctive relief. Not only is the relief he requests in conflict with the FTC's ongoing commitment to "closely monitor" and enforce its Consent Order with Nice-Pak regarding the flushable wipes Nice-Pak currently manufactures, but also his own allegations underscore why he lacks standing to represent such a broad nationwide class. This Court should therefore dismiss Plaintiff's request for injunctive relief and corresponding national class claims. Defendants therefore respectfully request that this Court grant their Motion to Dismiss.

Respectfully Submitted,

*/s/ John Q. Lewis*
John Q. Lewis
Michael J. Ruttinger
Chelsea M. Croy Smith
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Tel: 216.592.5000
Fax: 216.592.5009
Email: john.lewis@tuckerellis.com
         michael.ruttinger@tuckerellis.com
         chelsea.smith@tuckerellis.com

*Counsel for CVS Health Corporation and Nice-Pak Products, Inc.*

Courtney E. Scott
Tressler LLP
1 Penn Plaza, Suite 4701
New York, New York 10119
Tel: 646.833.0900
Email: cscott@tresslerllp.com
*Counsel for CVS Health Corporation and Nice-Pak Products, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2021, a copy of the foregoing ***Memorandum of Law in Support of Motion to Dismiss Class Action Complaint*** was via email to the following:

Samuel H. Rudman
Vincent M. Serra
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, Y 11747
Tel:     631.367.7100
Fax:    631.367.1173
Email: srudman@rgrdlaw.com
           vserra@rgrdlaw.com

*Attorneys for Plaintiff*

<div style="text-align:right">

*/s/ John Q. Lewis*
John Q. Lewis

*One of the Attorneys for Defendants CVS Health Corporation and Nice-Pak Products, Inc.*

</div>

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------

SCOTT CHOLEWA, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

        Case No. 1:20-cv-05483

        Plaintiff,

    -against-

CVS HEALTH CORPORATION AND NICE-PAK PRODUCTS, INC.,

        Defendants.

---------------------------------------------------------

## DECLARATION OF JOHN Q. LEWIS

    I, John Q. Lewis, of full age, hereby make this declaration pursuant to 28 U.S.C. § 1746 and declare as follows:

    1.    I am a partner with the law firm of Tucker Ellis LLP. I am a member of good standing of the bar of the State of Ohio. I am admitted to practice *pro hac vice* as counsel of record for Defendants CVS Health Corporation and Nice-Pak Products, Inc. in this Court in the above-captioned action.

    2.    I make this Declaration in support of the Motion to Dismiss Plaintiff's Class Action Complaint.

    3.    Attached hereto as Exhibit A is a true and correct copy of the October 30, 2015 Letter From Donald S. Clark, Secretary of the Federal Trade Commission to Kathleen Schmid, Senior Counsel, New York City Law Department, *available at* https://www.ftc.gov/system/files/documents/cases/151102nice-pakletter.pdf (last accessed June 8, 2021).

    4.    Attached hereto as Exhibit B is a true and correct copy of the Agreement Containing Consent Order, *available at* https://www.ftc.gov/system/files/documents/cases/150518nice-

pakorder.pdf (last accessed June 8, 2021).

5.      Attached hereto as Exhibit C is a true and correct copy of the Final Order issued by the FTC, *available at* https://www.ftc.gov/system/files/documents/cases/151102nice-pakdo.pdf (last accessed June 8, 2021).

6.      Attached hereto as Exhibit D is a true and correct copy of the Draft Complaint against Nice-Pak, *available at* https://www.ftc.gov/system/files/documents/cases/151102nice-pakcmpt.pdf (last accessed June 8, 2021).

7.      Attached hereto as Exhibit E is a true and correct copy of the June 19, 2015 Letter From Kathleen Schmid, Senior Counsel, Environmental Law Division, New York City Law Department,                              *available*                              *at* https://www.ftc.gov/system/files/documents/public_comments/2015/06/00054-96542.pdf (last accessed June 8, 2021).

I declare on June 8, 2021 under penalty of perjury that the foregoing is true and correct.

Dated: June 8, 2021

_____

John Q. Lewis
TUCKER ELLIS LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone: 216.592.5000
Facsimile:  216.592.5009
E-mail: john.lewis@tuckerellis.com

*Attorney for Defendants CVS Health*
*Corporation and Nice-Pak Products, Inc.*

# **<u>EXHIBIT A</u>**



Office of the Secretary

UNITED STATES OF AMERICA
## Federal Trade Commission
WASHINGTON, D.C. 20580

October 30, 2015

Kathleen Schmid, Senior Counsel
New York City Law Department
City of New York
State of New York

     Re:   *In the Matter of Nice-Pak Products, Inc.*
            FTC File No. 132 3272; Docket No. C-4556

Dear Ms. Schmid:

     Thank you for commenting on the Federal Trade Commission's proposed consent agreement in the above-referenced proceeding. The Commission has placed your comment on the public record pursuant to Rule 4.9(b)(6)(ii) of the Commission's Rules of Practice, 16 C.F.R. § 4.9(b)(6)(ii), and has given it serious consideration.

     Your comment describes New York City's infrastructure and the damage caused to its wastewater equipment by manufacturers claiming their products are "flushable," when such is not the case. Because of New York City's experience, you "welcome the Commission's . attention to the pressing problems that sanitary wipes that are marketed to be flushable present to sewer and wastewater treatment utilities, the City is concerned that the proposed Order suffers from several weaknesses that may threaten its efficacy."

     You do raise a number of concerns about the operation of the order, which we will address. You urge the Commission to take strong further action should Nice-Pak fail to comply with the order. If Nice-Pak violates the Commission's final order, it could be liable for civil monetary penalties of up to $16,000 per violation, pursuant to Section 5(1) of the FTC Act, 15 U.S.C. § 45(1). As is the case with all Commission orders, Commission staff will closely monitor Nice-Pak's future activities to determine whether any violations occur.

     You also believe that other manufacturers of "flushable" wipes should be required to comply with the order's substantiation standards. We believe that the final order will put manufacturers on notice of the quality of substantiation a manufacturer should possess and rely upon before advertising a wipe as "flushable."

     Your comment states that the company or the wipe manufacturers' trade association should not be allowed to determine what test results are sufficient substantiation under the order. Specifically, you state that the trade association's current flushability standards are not representative of the "physical conditions of the environment" of sewer and wastewater infrastructure, and do not reflect the expertise of individuals in the wastewater treatment field. You add that those standards allow for significantly more time and agitation than is present in New York City's infrastructure.

The order prohibits the company from representing that any wipes are safe to flush unless it can substantiate that the wipe will disperse in a "sufficiently short amount of time" after flushing to prevent clogging and/or damage to household plumbing, sewage lines, septic systems, and other standard wastewater treatment equipment.  The evidence substantiating this claim must also replicate the physical conditions of the environment where the wipes will be disposed.  As such, the wipe manufacturers' trade association's flushability standards do not replicate the physical conditions of the environment where the wipes will be disposed.

In addition, you suggest that the Commission consult wastewater treatment agencies about what constitutes "competent and reliable evidence" of flushability, and that the Commission seek input from professionals from a variety of geographic areas because of differing conditions of infrastructure.  Commission staff do routinely interact with a wide variety of industry participants – including professionals in the relevant field – when examining substantiation for potentially unsubstantiated and false claims.  The order requires that he evidence must have been "conducted and evaluated in an objective manner by qualified persons, using procedures generally accepted in the profession to yield accurate and reliable results."  This addresses your concern regarding neutral third party oversight.  Moreover, as noted above, the order requires that the substantiation tests replicate the physical conditions of the environment where the wipes will be disposed.

Finally, you request that the Commission require that wipes not marketed as "flushable" be labeled "do not flush."  Please understand, however, that the Commission generally acts to address specific representations that are false, misleading, or unsubstantiated, on a case-by-case basis to ascertain whether a marketer has engaged in unfair or deceptive conduct in violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45.

After consideration of your comment, the Commission has determined that the relief set forth in the consent agreement is appropriate and sufficient to remedy the violations alleged in the complaint.  The final Decision and Order and other relevant materials are available from the Commission's website at www.ftc.gov.  It helps the Commission's analysis to hear from a variety of sources, and we thank you again for your comment.

By direction of the Commission.


Donald S. Clark
Secretary

# **<u>EXHIBIT B</u>**

<div align="center">

**UNITED STATES OF AMERICA**
**BEFORE THE FEDERAL TRADE COMMISSION**

</div>

**COMMISSIONERS:**    **Edith Ramirez, Chairwoman**
                          **Julie Brill**
                          **Maureen K. Ohlhausen**
                          **Joshua D. Wright**
                          **Terrell McSweeny**

| | |
|---|---|
| **In the Matter of** | **FILE NO. 132 3272** |
| **NICE-PAK PRODUCTS, INC.,**<br>    **a corporation, d/b/a NICE-PAK.** | **AGREEMENT CONTAINING**<br>**CONSENT ORDER** |

The Federal Trade Commission has conducted an investigation of certain acts and practices of Nice-Pak Products, Inc., a corporation, also doing business as Nice-Pak ("proposed respondent"). Proposed respondent, having been represented by counsel, is willing to enter into an agreement containing a consent order resolving the allegations contained in the attached draft complaint. Therefore,

**IT IS HEREBY AGREED** by and between Nice-Pak Products, Inc., by its duly authorized officers, and counsel for the Federal Trade Commission that:

1.      Proposed respondent Nice-Pak Products, Inc. is a New York corporation with its principal office or place of business at Two Nice-Pak Park, Orangeburg, NY 10962-1376.

2.      Proposed respondent waives:

         a.      Any further procedural steps;

         b.      The requirement that the Commission's decision contain a statement of findings of fact and conclusions of law; and

         c.      All rights to seek judicial review or otherwise to challenge or contest the validity of the order entered pursuant to this agreement.

3.      This agreement shall not become part of the public record of the proceeding unless and until it is accepted by the Commission. If this agreement is accepted by the Commission, it, together with the draft complaint, will be placed on the public record for a period of thirty (30) days and information about it publicly released. The Commission thereafter may either withdraw its acceptance of this agreement and so notify proposed respondent, in which event it will take such action as it may consider appropriate, or issue and serve its complaint (in such form as the circumstances may require) and decision in disposition of the proceeding.

<div align="center">

Page 1 of 7

</div>

4.      This agreement contemplates that, if it is accepted by the Commission, and if such acceptance is not subsequently withdrawn by the Commission pursuant to the provisions of Section 2.34 of the Commission's Rules, the Commission may, without further notice to proposed respondent, (1) issue its complaint corresponding in form and substance with the attached draft complaint and its decision containing the following order in disposition of the proceeding, and (2) make information about it public.  When so entered, the order shall have the same force and effect and may be altered, modified, or set aside in the same manner and within the same time provided by statute for other orders.  The order shall become final upon service. Delivery of the complaint and the decision and order to proposed respondent's address as stated in this agreement by any means specified in Section 4.4(a) of the Commission's Rules shall constitute service.  Proposed respondent waives any right it may have to any other manner of service.  The complaint may be used in construing the terms of the order.  No agreement, understanding, representation, or interpretation not contained in the order or in the agreement may be used to vary or contradict the terms of the order.

5.      Proposed respondent has read the draft complaint and consent order.  It understands that it may be liable for civil penalties in the amount provided by law and other appropriate relief for each violation of the order after it becomes final.

6.      Proposed respondent neither admits nor denies the allegations in the draft complaint, except as specifically stated in this order.  Only for the purposes of this action, proposed respondent admits the facts necessary to establish jurisdiction.

## ORDER

### DEFINITIONS

For purposes of this order, the following definitions shall apply:

1.      "Commerce" shall mean as defined in Section 4 of the Federal Trade Commission Act, 15 U.S.C. § 44.

2.      "Covered Product" shall mean all wipes, including but not limited to Kirkland Signature Moist Flushable Wipes, and any moist toilet tissue or cloth.

3.      Unless otherwise specified, "respondent" shall mean Nice-Pak Products, Inc., a corporation, its successors and assigns and its officers, agents, representatives, and employees.

### I.

**IT IS ORDERED** that Respondent, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, in connection with the manufacturing, labeling, packaging, advertising, promotion, offering for sale, sale, or distribution of any Covered Product in or affecting commerce, shall not make any representation, in any manner, expressly or by

implication, including through the use of a product name, endorsement, depiction, illustration, trademark, or trade name, that the Covered Product:

    A.  is safe for sewer systems;
    B.  is safe for septic systems;
    C.  breaks apart shortly after flushing;
    D.  will not clog household plumbing systems;
    E.  will not clog household septic systems;
    F.  is safe for plumbing;
    G.  is safe to flush;
    H.  dissolves or disperses when interacting with water; or
    I.  is flushable,

unless the representation is non-misleading, and, at the time the representation is made, Respondent possesses and relies upon competent and reliable evidence, which, when appropriate based on the expertise of professionals in the relevant area must be competent and reliable scientific evidence, that, when considered in light of the entire body of relevant and reliable evidence, is sufficient in quantity and quality based on standards generally accepted in the relevant fields to substantiate that the representation is true.  For the purposes of this Part, "competent and reliable evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by qualified persons, using procedures generally accepted in the profession to yield accurate and reliable results.  For the purposes of this Part, "competent and reliable scientific evidence" means tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons, using procedures generally accepted in the profession to yield accurate and reliable results.   Specifically, any tests, analyses, research, studies, or other evidence  purporting to substantiate any of the above representations must at least:

    A.    demonstrate that the Covered Product disperses in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment; and

    B.    substantially replicate the physical conditions of the environment in which the Covered Product is claimed, directly or indirectly, expressly or by implication, to be properly disposed of; or, if no specific environment is claimed, then in all environments in which the product will likely be disposed of.

<div align="center">II.</div>

**IT IS FURTHER ORDERED** that Respondent, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, in connection with the manufacturing, labeling, packaging, advertising, promotion, offering for sale, sale, or distribution of any moist toilet tissue or cloth, in or affecting commerce, shall not make any representation, other than the representations covered by Part I of this Order, in any manner, expressly or by implication, including through the use of a product name, endorsement, depiction, illustration,

trademark, or trade name, about the benefits, performance, or efficacy of such product or service, unless the representation is non-misleading, and, at the time the representation is made, Respondent possesses and relies upon competent and reliable evidence, which, when appropriate based on the expertise of professionals in the relevant area must be competent and reliable scientific evidence, that, when considered in light of the entire body of relevant and reliable evidence, is sufficient in quantity and quality based on standards generally accepted in the relevant fields to substantiate that the representation is true. For the purposes of this Part, "competent and reliable evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by qualified persons, using procedures generally accepted in the profession to yield accurate and reliable results. For the purposes of this Part, "competent and reliable scientific evidence" means tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons, using procedures generally accepted in the profession to yield accurate and reliable results.

III.

**IT IS FURTHER ORDERED** that Respondent, directly or through any corporation, partnership, subsidiary, division, or other device, in connection with the manufacturing, labeling, packaging, advertising, promotion, offering for sale, sale, or distribution of the Covered Product, or any other product or service in or affecting commerce, shall not provide to others the means and instrumentalities with which to make any representation prohibited by Part I or II above. For the purposes of this Part, "means and instrumentalities" means any information, including, but not necessarily limited to, any advertising, labeling, or promotional, sales training, or purported substantiation materials, for use by trade customers in their marketing of such product or service.

IV.

**IT IS FURTHER ORDERED** that Nice-Pak Products, Inc. and its successors and assigns shall, for five (5) years after the last date of dissemination of any representation covered by this order, maintain and upon request make available to the Federal Trade Commission for inspection and copying:

A.      All advertisements, labeling, packaging and promotional materials containing the representation;

B.      All materials that were relied upon in disseminating the representation;

C.      All tests, reports, studies, surveys, demonstrations, or other evidence in its possession or control that contradict, qualify, or call into question the representation, or the basis relied upon for the representation, including complaints and other communications with consumers or with governmental or consumer protection organizations; and

D.      All acknowledgments of receipt of this order obtained pursuant to Part V.

V.

**IT IS FURTHER ORDERED** that Nice-Pak Products, Inc. and its successors and assigns shall, for five (5) years after entry of this order, deliver a copy of this order to all current and future subsidiaries, current and future principals, officers, directors, and managers, and to all current and future employees, agents, and representatives having responsibilities relating to the subject matter of this order, and shall secure from each such person a signed and dated statement acknowledging receipt of the order, with any electronic signatures complying with the requirements of the E-Sign Act, 15 U.S.C. § 7001 et seq.  Nice-Pak Products, Inc. and its successors and assigns shall deliver this order to such persons within thirty (30) days after the date of service of this order, and to future such persons within thirty (30) days after such person assumes such position or responsibilities.

VI.

**IT IS FURTHER ORDERED** that Nice-Pak Products, Inc. and its successors and assigns shall send as soon as practicable, but in no event later than thirty (30) days after entry of this order, by first-class mail, postage prepaid and return receipt requested, an exact copy of the notice attached hereto as Attachment A, showing the date of mailing, to all of its trade customers, wholesalers, and retailers for or to whom it has manufactured, labeled, packaged, advertised, promoted, offered for sale, sold, or distributed any Covered Product that was advertised, promoted, offered for sale, sold, or distributed, with any of the representations, expressly or by implication, including through the use of a product name, endorsement, depiction, illustration, trademark, or trade name, enumerated in Part I A through I of this Order. The notice required by this paragraph shall include a copy of this order, but shall not include any other document or enclosures and shall be sent to the principal place of business of each entity**.**

VII.

**IT IS FURTHER ORDERED** that Nice-Pak Products, Inc., and its successors and assigns shall notify the Commission at least thirty (30) days prior to any change in the corporation(s) that may affect compliance obligations arising under this order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor corporation; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this order; the proposed filing of a bankruptcy petition; or a change in the corporate name or address.  Provided, however, that, with respect to any proposed change in the corporation about which Nice-Pak Products, Inc. and its successors and assigns learn less than thirty (30) days prior to the date such action is to take place, it shall notify the Commission as soon as is practicable after obtaining such knowledge.

Unless otherwise directed by a representative of the Commission in writing, all notices required by this Part shall be emailed to Debrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin: In the Matter of Nice-Pak Products, Inc., FTC File Number 132 3272.

VIII.

**IT IS FURTHER ORDERED** that Nice-Pak Products, Inc., and its successors and assigns, within sixty (60) days after the date of service of this order, shall each file with the Commission a true and accurate report, in writing, setting forth in detail the manner and form of their own compliance with this order.  Within ten (10) days of receipt of written notice from a representative of the Commission, they shall submit additional true and accurate written reports.

Unless otherwise directed by a representative of the Commission in writing, all notices required by this Part shall be emailed to Debrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: "Nice-Pak Products, Inc., Docket No. ____, File No. 132 3272."

IX.

This order will terminate twenty (20) years from the date of its issuance, or twenty (20) years from the most recent date that the United States or the Federal Trade Commission files a complaint (with or without an accompanying consent decree) in federal court alleging any violation of the order, whichever comes later; provided, however, that the filing of such a complaint will not affect the duration of:

    A.  Any Part in this order that terminates in less than twenty (20) years;

    B.  This order's application to any respondent that is not named as a defendant in such complaint; and

    C.  This order if such complaint is filed after the order has terminated pursuant to this Part.

Provided, further, that if such complaint is dismissed or a federal court rules that the respondent did not violate any provision of the order, and the dismissal or ruling is either not appealed or upheld on appeal, then the order will terminate according to this Part as though the complaint had never been filed, except that the order will not terminate between the date such complaint is filed and the later of the deadline for appealing such dismissal or ruling and the date such dismissal or ruling is upheld on appeal.

NICE-PAK PRODUCTS, INC.


Date: _____      By:  _____
                                   [Name]
                                   [Title]
                                   Nice-Pak Products, Inc.

Date: _____                    _____
                                       Trenton Norris, Esq.
                                       ARNOLD & PORTER
                                       Attorneys for Respondent


Date: _____                    _____
                                       SYLVIA KUNDIG
                                       KENNETH H. ABBE
                                       LAURA FREMONT
                                       Counsel for the Federal Trade Commission


APPROVED:


_____
THOMAS N. DAHDOUH
Director
Western Region


_____
JESSICA L. RICH
Director
Bureau of Consumer Protection

# **EXHIBIT C**

132 3272

# UNITED STATES OF AMERICA
## BEFORE THE FEDERAL TRADE COMMISSION

**COMMISSIONERS:  Edith Ramirez, Chairwoman**
**Julie Brill**
**Maureen K. Ohlhausen**
**Terrell McSweeny**

| | |
|---|---|
| **In the Matter of** | **DOCKET NO. C-4556** |
| **NICE-PAK PRODUCTS, INC.,** | **DECISION AND ORDER** |
| **a corporation, d/b/a NICE-PAK** | |

The Federal Trade Commission ("Commission"), having initiated an investigation of certain acts and practices of the respondent named in the caption hereof, and the respondent having been furnished thereafter with a copy of a draft of a complaint which the Western Region-San Francisco proposed to present to the Commission for its consideration and which, if issued, would charge the respondent with violations of the Federal Trade Commission Act; and

The respondent, its attorney, and counsel for the Commission having thereafter executed an Agreement Containing Consent Order ("consent agreement"), which includes:  a statement by respondent that it neither admits nor denies any of the allegations in the draft complaint except as specifically stated in the consent agreement, and, only for purposes of this action, admits the facts necessary to establish jurisdiction; and waivers and other provisions as required by the Commission's Rules; and

The Commission having thereafter considered the matter and having determined that it had reason to believe that the respondent has violated the Federal Trade Commission Act, and that a complaint should issue stating its charges in that respect, and having thereupon accepted the executed consent agreement and placed such agreement on the public record for a period of thirty (30) days for the receipt and consideration of public comments, and having duly considered the comments received from interested persons pursuant to Commission Rule 2.34, 16 C.F.R. § 2.34, now in further conformity with the procedure prescribed in Commission Rule 2.34, the Commission hereby issues its complaint, makes the following jurisdictional findings and enters the following order:

1.      Respondent Nice-Pak Products, Inc. is a New York corporation with its principal office or place of business at Two Nice-Pak Park, Orangeburg, NY 10962-1376.

2.      The Federal Trade Commission has jurisdiction of the subject matter of this proceeding and of the respondent, and the proceeding is in the public interest.

# ORDER

## DEFINITIONS

For purposes of this order, the following definitions shall apply:

1.      "Commerce" shall mean as defined in Section 4 of the Federal Trade Commission Act, 15 U.S.C. § 44.

2.      "Covered Product" shall mean all wipes, including but not limited to Kirkland Signature Moist Flushable Wipes, and any moist toilet tissue or cloth.

3.      Unless otherwise specified, "respondent" shall mean Nice-Pak Products, Inc., a corporation, its successors and assigns and its officers, agents, representatives, and employees.

## I.

**IT IS ORDERED** that Respondent, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, in connection with the manufacturing, labeling, packaging, advertising, promotion, offering for sale, sale, or distribution of any Covered Product in or affecting commerce, shall not make any representation, in any manner, expressly or by implication, including through the use of a product name, endorsement, depiction, illustration, trademark, or trade name, that the Covered Product:

    A.  is safe for sewer systems;
    B.  is safe for septic systems;
    C.  breaks apart shortly after flushing;
    D.  will not clog household plumbing systems;
    E.  will not clog household septic systems;
    F.  is safe for plumbing;
    G.  is safe to flush;
    H.  dissolves or disperses when interacting with water; or
    I.  is flushable,

unless the representation is non-misleading, and, at the time the representation is made, Respondent possesses and relies upon competent and reliable evidence, which, when appropriate based on the expertise of professionals in the relevant area must be competent and reliable scientific evidence, that, when considered in light of the entire body of relevant and reliable evidence, is sufficient in quantity and quality based on standards generally accepted in the relevant fields to substantiate that the representation is true.  For the purposes of this Part, "competent and reliable evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by qualified persons, using procedures generally accepted in the profession to yield accurate and reliable results.  For the purposes of this Part, "competent and reliable scientific evidence" means tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons, using procedures generally

accepted in the profession to yield accurate and reliable results. Specifically, any tests, analyses, research, studies, or other evidence purporting to substantiate any of the above representations must at least:

A.	demonstrate that the Covered Product disperses in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment; and

B.	substantially replicate the physical conditions of the environment in which the Covered Product is claimed, directly or indirectly, expressly or by implication, to be properly disposed of; or, if no specific environment is claimed, then in all environments in which the product will likely be disposed of.

## II.

**IT IS FURTHER ORDERED** that Respondent, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, in connection with the manufacturing, labeling, packaging, advertising, promotion, offering for sale, sale, or distribution of any moist toilet tissue or cloth, in or affecting commerce, shall not make any representation, other than the representations covered by Part I of this Order, in any manner, expressly or by implication, including through the use of a product name, endorsement, depiction, illustration, trademark, or trade name, about the benefits, performance, or efficacy of such product or service, unless the representation is non-misleading, and, at the time the representation is made, Respondent possesses and relies upon competent and reliable evidence, which, when appropriate based on the expertise of professionals in the relevant area must be competent and reliable scientific evidence, that, when considered in light of the entire body of relevant and reliable evidence, is sufficient in quantity and quality based on standards generally accepted in the relevant fields to substantiate that the representation is true. For the purposes of this Part, "competent and reliable evidence" means tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by qualified persons, using procedures generally accepted in the profession to yield accurate and reliable results. For the purposes of this Part, "competent and reliable scientific evidence" means tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons, using procedures generally accepted in the profession to yield accurate and reliable results.

## III.

**IT IS FURTHER ORDERED** that Respondent, directly or through any corporation, partnership, subsidiary, division, or other device, in connection with the manufacturing, labeling, packaging, advertising, promotion, offering for sale, sale, or distribution of the Covered Product, or any other product or service in or affecting commerce, shall not provide to others the means and instrumentalities with which to make any representation prohibited by Part I or II above. For the purposes of this Part, "means and instrumentalities" means any information, including, but not necessarily limited to, any advertising, labeling, or promotional, sales training, or purported substantiation materials, for use by trade customers in their marketing of such product or service.

## IV.

**IT IS FURTHER ORDERED** that Nice-Pak Products, Inc. and its successors and assigns shall, for five (5) years after the last date of dissemination of any representation covered by this order, maintain and upon request make available to the Federal Trade Commission for inspection and copying:

      A.      All advertisements, labeling, packaging and promotional materials containing the representation;

      B.      All materials that were relied upon in disseminating the representation;

      C.      All tests, reports, studies, surveys, demonstrations, or other evidence in its possession or control that contradict, qualify, or call into question the representation, or the basis relied upon for the representation, including complaints and other communications with consumers or with governmental or consumer protection organizations; and

      D.      All acknowledgments of receipt of this order obtained pursuant to Part V.

## V.

**IT IS FURTHER ORDERED** that Nice-Pak Products, Inc. and its successors and assigns shall, for five (5) years after entry of this order, deliver a copy of this order to all current and future subsidiaries, current and future principals, officers, directors, and managers, and to all current and future employees, agents, and representatives having responsibilities relating to the subject matter of this order, and shall secure from each such person a signed and dated statement acknowledging receipt of the order, with any electronic signatures complying with the requirements of the E-Sign Act, 15 U.S.C. § 7001 et seq. Nice-Pak Products, Inc. and its successors and assigns shall deliver this order to such persons within thirty (30) days after the date of service of this order, and to future such persons within thirty (30) days after such person assumes such position or responsibilities.

## VI.

**IT IS FURTHER ORDERED** that Nice-Pak Products, Inc. and its successors and assigns shall send as soon as practicable, but in no event later than thirty (30) days after entry of this order, by first-class mail, postage prepaid and return receipt requested, an exact copy of the notice attached hereto as Attachment A, showing the date of mailing, to all of its trade customers, wholesalers, and retailers for or to whom it has manufactured, labeled, packaged, advertised, promoted, offered for sale, sold, or distributed any Covered Product that was advertised, promoted, offered for sale, sold, or distributed, with any of the representations, expressly or by implication, including through the use of a product name, endorsement, depiction, illustration, trademark, or trade name, enumerated in Part I A through I of this Order. The notice required by this paragraph shall include a copy of this order, but shall not include any other document or enclosures and shall be sent to the principal place of business of each entity**.**

## VII.

**IT IS FURTHER ORDERED** that Nice-Pak Products, Inc., and its successors and assigns shall notify the Commission at least thirty (30) days prior to any change in the corporation(s) that may affect compliance obligations arising under this order, including but not limited to a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor corporation; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this order; the proposed filing of a bankruptcy petition; or a change in the corporate name or address.  Provided, however, that, with respect to any proposed change in the corporation about which Nice-Pak Products, Inc. and its successors and assigns learn less than thirty (30) days prior to the date such action is to take place, it shall notify the Commission as soon as is practicable after obtaining such knowledge.

Unless otherwise directed by a representative of the Commission in writing, all notices required by this Part shall be emailed to Debrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin:  "In the Matter of Nice-Pak Products, Inc., Docket No. C-4556, FTC File Number 132 3272."

## VIII.

**IT IS FURTHER ORDERED** that Nice-Pak Products, Inc., and its successors and assigns, within sixty (60) days after the date of service of this order, shall each file with the Commission a true and accurate report, in writing, setting forth in detail the manner and form of their own compliance with this order.  Within ten (10) days of receipt of written notice from a representative of the Commission, they shall submit additional true and accurate written reports.

Unless otherwise directed by a representative of the Commission in writing, all notices required by this Part shall be emailed to Debrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin:  "In the Matter of Nice-Pak Products, Inc., Docket No. C-4556, File No. 132 3272."

## IX.

This order will terminate on October 30, 2035, or twenty (20) years from the most recent date that the United States or the Federal Trade Commission files a complaint (with or without an accompanying consent decree) in federal court alleging any violation of the order, whichever comes later; provided, however, that the filing of such a complaint will not affect the duration of:

A. Any Part in this order that terminates in less than twenty (20) years;

B. This order's application to any respondent that is not named as a defendant in such complaint; and

C. This order if such complaint is filed after the order has terminated pursuant to this Part.

Provided, further, that if such complaint is dismissed or a federal court rules that the respondent did not violate any provision of the order, and the dismissal or ruling is either not appealed or upheld on appeal, then the order will terminate according to this Part as though the complaint had never been filed, except that the order will not terminate between the date such complaint is filed and the later of the deadline for appealing such dismissal or ruling and the date such dismissal or ruling is upheld on appeal.

By the Commission.


Donald S. Clark
Secretary

SEAL:
ISSUED:  October 30, 2015

**ATTACHMENT A**

**[ON NICE-PAK PRODUCTS, INC. LETTERHEAD]**

[insert addressee name] [insert addressee address]

Dear [name of retailer]:

You have purchased Nice-Pak Products, Inc. ("Nice-Pak") moist wipes for resale under your private label. In a recent enforcement action, the Federal Trade Commission (FTC) alleged that Nice-Pak made misleading representations in its advertising and marketing of "flushable" moist wipes made of non-elemental chlorine bleached word pulp, bicomponent fibers, and EP907 repulpable binder.   Among other things, the FTC alleged that Nice-Pak lacked adequate substantiation for the claim that this product is safe for household plumbing, household septic systems, and public sewer systems.

Nice-Pak resolved this matter with the FTC by a settlement and has agreed to send this notification to you.

Nice-Pak requests that you immediately stop using all packaging, advertising, and marketing materials previously provided to you by Nice-Pak about these wipes. Also, please ensure such claims are removed from your website and do not appear in any other advertising or marketing.

For further information about this matter, go to www.ftc.gov and search for "Nice-Pak."

Very truly yours,


Robert P. Julius, CEO
Nice-Pak Products, Inc.

# **<u>EXHIBIT D</u>**

132 3272

## UNITED STATES OF AMERICA
## BEFORE THE FEDERAL TRADE COMMISSION

**COMMISSIONERS:**    **Edith Ramirez, Chairwoman**
                     **Julie Brill**
                     **Maureen K. Ohlhausen**
                     **Terrell McSweeny**

In the Matter of


**NICE-PAK PRODUCTS, INC., a corporation.,**
     **d/b/a NICE-PAK.**

**DOCKET NO. C-4556**

## COMPLAINT

The Federal Trade Commission, having reason to believe that Nice-Pak Products, Inc., a corporation ("Respondent"), has violated the provisions of the Federal Trade Commission Act, and it appearing to the Commission that this proceeding is in the public interest, alleges:

1.      Respondent Nice-Pak Products, Inc. ("Nice-Pak"), also doing business as Nice-Pak, is a New York corporation with its principal office or place of business at Two Nice-Pak Park, Orangeburg, NY 10962-1376.

2.      Respondent Nice-Pak has packaged, labeled, advertised, offered for sale, sold, or distributed moist toilet tissue, a personal hygiene product, throughout the United States.  This moist toilet tissue is composed of non-woven fabric, specifically non-elemental chlorine bleached wood pulp, bicomponent fibers, and EP907 repulpable binder (the "Nice-Pak wipe"). Because of their composition, non-woven fabrics do not break down in water in a reasonably short amount of time.  As a result, products made from them can clog household plumbing systems, household septic systems, public sewer systems, and sewage treatment plant systems after being flushed.

3.      The acts and practices of Respondent alleged in this complaint have been in or affecting commerce, as "commerce" is defined in Section 4 of the Federal Trade Commission Act.

**Respondent's Business Activities**

4.     Respondent disseminated to trade customers materials purporting to substantiate certain claims for its Nice-Pak Wipes.  These materials concerned tests which did not accurately reflect real-world conditions Nice-Pak Wipes would encounter after being flushed (i.e., conditions that exist in household toilets, plumbing, or septic systems, or in public sewer systems or public wastewater treatment facilities).  Moreover, alone or in concert with others, Respondent developed unsubstantiated flushability claims for use by its trade customers based on this purported substantiation. Through these means, Respondent provided trade customers with the means and instrumentalities to deceive consumers by disseminating these unsubstantiated flushability claims in marketing Respondent's Nice-Pak Wipes under private labels, such as Costco's Kirkland Signature Moist Flushable Wipes, CVS's Flushable Cleansing Wipes, Target's Up & Up Flushable Moist Wipes, and BJ's Family & Toddler Moist Wipes.

5.     Alone or in concert with others, Respondent has disseminated or has caused to be disseminated advertisements, packaging, labeling, and purported substantiation materials for its Nice-Pak Wipes, including but not necessarily limited to the attached Exhibit A.  This material contains the following statements and depictions:

A.   Exhibit A, product label:

"Kirkland Signature moist flushable wipes"

"Safe for Sewer & Septic"

"Kirkland Signature Moist Flushable Wipes are … safe for sewer and septic systems because they begin to break down after flushing."

The label also contains the following depiction, which includes the statement, "BREAKS APART after flushing":



**Count I**

**Unsubstantiated Performance Claims**

6.     In connection with the advertising, labeling, packaging, promotion, offering for sale, sale, or distribution of the Nice-Pak Wipes,  Respondent has represented, directly or indirectly, expressly or by implication, that:

2

A. The Nice-Pak Wipes are safe for sewer systems;

B. The Nice-Pak Wipes are safe for septic systems;

C. The Nice-Pak Wipes break apart shortly after flushing; and

D. The Nice-Pak Wipes are safe to flush; that is, they are safe for household plumbing systems, household septic systems, and public sewer systems.

7.  The representations set forth in Paragraph 6 were not substantiated at the time the representations were made.

## Count II

### Means and Instrumentalities

8.     Respondent has provided to its trade customers advertising, labeling, packaging, or purported substantiation materials referred to in Paragraphs 4 and 5 which contain, among other things, unsubstantiated representations, as described in Paragraph 6, above.

9.     By providing its trade customers with these advertising, labeling, packaging, or purported substantiation materials, Respondent has provided its trade customers the means and instrumentalities for the commission of deceptive acts and practices.

### Violations of Section 5

10.    The acts and practices of Respondent as alleged in this complaint constitute unfair or deceptive acts or practices, in or affecting commerce in violation of Section 5(a) of the Federal Trade Commission Act.

**THEREFORE,** the Federal Trade Commission this thirtieth day of October, 2015, has issued this Complaint against Respondent.

By the Commission.


Donald S. Clark
Secretary

SEAL:

3

# **<u>EXHIBIT E</u>**



**T**HE **C**ITY OF **N**EW **Y**ORK
# LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**ZACHARY W. CARTER**
*Corporation Counsel*

**KATHLEEN CHANDLER SCHMID**
**Senior Counsel**
phone:  (212) 356-2314
fax:  (212) 788-1619
email:  kschmid@law.nyc.gov

June 19, 2015

**By Electronic Submission**

Federal Trade Commission
Office of the Secretary
600 Pennsylvania Avenue, NW, Room CC-5610 (Annex D)
Washington, DC 20580

Re:     **Comments on the Proposed Consent Agreement** *In the Matter of Nice-Pak Products, Inc.*, **File No. 132-3272**

To Whom It May Concern:

The City of New York ("City"), through the New York City Law Department, submits the following comments in response to the United States Federal Trade Commission's ("Commission" or "FTC") proposed consent agreement *In The Matter of Nice-Pak Products, Inc.* ("Nice-Pak" or "Respondent"), File No. 132-3272 ("Order").[1] While the City supports and welcomes the Commission's attention to the pressing problems that sanitary wipes that are marketed to be flushable present to sewer and wastewater treatment utilities, the City is concerned that the proposed Order suffers from several weaknesses that may threaten its efficacy.

**A.     The Impact of Flushable Wipes on New York City's Sewer and Wastewater Treatment Infrastructure**

The New York City Department of Environmental Protection ("DEP") operates and is responsible for 21 wastewater treatment plants ("WWTPs"), over 7,000 miles of sewer pipes, and 107 wastewater pumping stations that transport and treat an average of 1.3 billion

---

[1]  Available at www.ftc.gov/system/files/documents/cases/150518nice-pakorder.pdf (last visited June 3, 2015).

gallons of wastewater generated from homes, businesses, schools, and streets every day. The City's WWTPs remove most pollutants from wastewater through physical and biological processes before releasing the treated water into local waterways. Depending on where wastewater enters the City's sewer system, it can travel from a New York City resident's house to a City WWTP in as little as a few minutes to just over an hour, and, under dry weather operating conditions, the City's WWTPs can fully treat wastewater in only seven hours.

Following the introduction of "flushable" sanitary wipes into the consumer market, the City noted a significant increase in the number of sanitary wipes found in its sewer and wastewater treatment infrastructure, and the volume of wipes in the City's systems continues to rise every year. Many wipes marketed as flushable are not truly "flushable," in that they do not disintegrate before they reach the City's treatment systems, where they then interfere with the treatment process. In addition, the widespread marketing of so-called flushable wipes appears to have created confusion with nonflushable wipes. Many wipes that are not designed to be flushable are poorly marked, leading consumers increasingly to flush both nonflushable wipes as well as "flushable wipes."

Once introduced into the sewer system by ill-informed consumers, flushed wipes cause problems whether they are designed to be flushed or not. Heavy accumulation of wipes and debris can obstruct and damage the pumps, screens and screening mechanisms, mixers, channels, and other equipment at City pumping stations and WWTPs. All of the wipes collected from the City's sewer and wastewater treatment infrastructure must be transported to landfills for disposal.

These problems result in additional financial burdens on municipalities already heavily burdened with the costs of operating and maintaining critical infrastructure.[2] The City spends millions of dollars yearly on labor, maintenance, and capital costs related to clearing flushable wipes from its systems, repairing equipment damaged by accumulated wipes, and transporting and disposing flushed wipes in landfills. As the amount of wipes disposed of by flushing increases annually, the City's costs likewise escalate. The City must divert funds to resolve the problems created by flushed wipes from other important wastewater priorities. The increased costs that the City incurs are directly attributable to the wipe industry's improper marketing practices.

---

[2] Municipalities across the country are experiencing similar problems caused by flushed wipes, as evidenced by the numerous comments relating to this settlement submitted to the FTC by other municipal wastewater utilities and representative organizations. *See, e.g.,* Comments submitted by The Sanitary Board of the City of Charleston, West Virginia regarding *In the Matter of Nice-Pak Products, Inc.*, File No. 132-3272 (June 1, 2015); Comments submitted by Southern California Alliance of Publicly Owned Treatment Works regarding *In the Matter of Nice-Pak Products, Inc.*, File No. 132-3272 (June 15, 2015); Comments submitted by Seattle Public Utilities regarding *In the Matter of Nice-Pak Products, Inc.*, File No. 132-3272 (June 10, 2015), all available at https://www.ftc.gov/policy/public-comments/initiative-610.

These escalating costs are borne by water rate payers in New York City, which include not only City residents, but also businesses and institutions based in the City. Moreover, because residential water rates are borne equally by all water users, higher rates have a disproportionately burdensome impact on low-income communities. In New York City, the average annual household wastewater cost is about one percent of the median household income ("MHI"). United States Environmental Protection Agency guidance on financial capability indicates that average wastewater bills between one and two percent of MHI constitute a mid-range economic impact, and greater than two percent of MHI constitute a large economic impact. For a city like New York, with large income inequality, it is also important to look at the households below the median. Roughly 27 percent of households are estimated to pay two percent or more of their income on wastewater service alone. The FTC must consider costs to the City that are passed on to consumers through rate increases as a result of the industry's marketing practices.

## B.   Concerns Regarding the Nice-Pak Order

The City applauds the Commission's attention to this issue and its enforcement action related to Nice-Pak's dissemination of marketing materials that include information about "tests which did not accurately reflect real-world conditions Nice-Pak Wipes would encounter after being flushed (i.e., conditions that exist in household toilets, plumbing, or septic systems, or in public sewer systems or public wastewater treatment facilities)." *See In the Matter of Nice-Pak Products, Inc.*, Complaint at 2 ("Complaint").[3] However, in order to ensure that wastewater utilities are not saddled with significant expenses resulting from disingenuous marketing practices of wipes manufacturers and brands and the inadequate design of wipes marketed as flushable, it is essential that Respondent establish rigorous performance standards for wipes that it markets as flushable. To ensure that the standards are designed to be protective of wastewater treatment infrastructure, they must be developed by experts in the area of wastewater treatment with input from representative wastewater utilities. The FTC should rigorously monitor Respondent's compliance with the Order and require that all manufacturers and brand owners selling flushable wipes comply with these standards.

### 1.   The Order Should Clarify That All Nice-Pak Wipes Marketed as Flushable Must Be Safe For Both Sewer and Wastewater Treatment Infrastructure

The Complaint alleges that Nice-Pak flushable wipes "do not break down in water in a reasonably short amount of time . . . [and as] a result . . . can clog . . . public sewer systems[] and sewage treatment plant systems after being flushed." *See* Complaint at 1. The Order specifies that Respondent "shall not make any representation . . . that [a] "Covered Product" [defined in the Order to include wipes marketed as flushable]:

A. is safe for sewer systems;

---

[3] Available at www.ftc.gov/system/files/documents/cases/150518nice-pakcmpt.pdf (last visited June 10, 2015).

        B. is safe for septic systems;
        C. breaks apart shortly after flushing;
        D. will not clog household plumbing systems;
        E. will not clog household septic systems;
        F. is safe for plumbing;
        G. is safe to flush;
        H. dissolves or disperses when interacting with water; or
        I. is flushable.

["Covered Representations"] unless . . . Respondent possesses and relies upon competent and reliable evidence, which is sufficient . . . to substantiate that the representation is true." *See* Order at 2-3. The Order continues to require that "any tests, analyses, research, studies, or other evidence purporting to substantiate any of the above representations must at least . . . demonstrate that the Covered Product disperses in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment." *See id.* at 3.

        The City interprets the Order to require that <u>any</u> evidence used by Nice-Pak to substantiate any of the Covered Representations, or any substantially similar representation, must demonstrate that the Covered Product is safe for sewers and wastewater treatment infrastructure, even if the representation is limited to the Covered Product's compatibility with household plumbing and septic systems. It is essential that the Order be interpreted in this manner if the Order is to sufficiently protect wastewater utilities and address the problems identified in the Complaint. The Commission should confirm that it shares the City's interpretation of the Order.

        In addition, it is essential that the Order explicitly require compatibility with wastewater treatment infrastructure as well as sewer systems because such infrastructure is different from, and uses different equipment from, sewer systems (including pumps, screening mechanisms, mixers, degritters, and settling tanks). While the City interprets that the Order's requirement that Respondent rely on evidence that demonstrates compatibility with "standard wastewater equipment" includes wastewater treatment infrastructure owned by municipalities and utilities, the Commission should clarify that this interpretation is correct.

## 2. The Commission Should Not Allow Respondent or the Nonwoven Fabrics Industry to Define Performance Standards

        The Order requires that Nice-Pak use "competent and reliable evidence . . . [that] is sufficient in quantity and quality based on standards generally accepted in the relevant fields to substantiate [any] representation" that a wipe is flushable by "dispers[ing] in a sufficiently short amount of time after flushing." *See* Order at 3. This evidence must "substantially replicate the physical conditions of the environment" in which the wipe is flushed. *See id.* However, the Order does not designate who will determine whether such evidence is competent or reliable, whether such tests substantially replicate conditions in sewer and wastewater treatment plants, or what constitutes general acceptance. Further, the Order fails to specify a standard for determining adequate dispersal – it does not quantify how quickly a wipe must disperse, what size a wipe must separate into, or how much agitation the wipe may be exposed to when

dispersal is being tested.  It also does not identify who will define and enforce these dispersal standards.

Neutral third party oversight that relies upon the expertise of wastewater utilities is necessary to ensure that the standards developed to establish compliance with the Order sufficiently protect the affected community identified in the Complaint – the public and wastewater treatment utility owners.

Allowing Nice-Pak to determine what qualifies as competent and reliable evidence and define the standards for establishing whether a wipe adequately disperses would undercut the Order. Nice-Pak, a manufacturer of sanitary wipes, has no expertise in home plumbing or sewer and wastewater treatment infrastructure and has a financial incentive to develop lax standards.  It would be equally problematic to permit Respondent to rely on other representatives of the nonwoven fabric industry to designate evidence as competent and reliable or specify dispersal standards without concurrence from wastewater utilities.  Specifically, the Association of the Nonwoven Fabrics Industry ("INDA") has issued guidance intended to provide manufacturers and brand owners with a voluntary standard to determine whether a sanitary wipe should be flushed into the wastewater stream.[4]  Currently in its third iteration, INDA's guidance document provides a multi-step flushability assessment as well as terms of a voluntary code of practice.[5]  While the INDA standard has been embraced by certain manufacturers and owners of wipes brands, the City does not consider the INDA standard to be a "standard[] generally accepted" in the wastewater treatment field, does not believe the dispersal standards used by the INDA standard are representative of the "physical conditions of the environment" that wipes meet in sewer and wastewater treatment infrastructure, and does not consider the evidence on which the INDA standard relies to be "competent and reliable."  The INDA standard tests wipes using dispersal parameters that allow for significantly more time and agitation than wipes actually encounter in the City's sewer and wastewater treatment infrastructure.  Many sanitary wipes that have passed the INDA assessment do not disperse prior to their reaching the City sewer and wastewater treatment infrastructure, and other municipal wastewater utilities report similar findings.[6]  It is of particular importance that an impartial third party develop a dispersal standard because Nice-Pak sells its products and makes representations about flushability both to consumers and to trade customers and brand owners.  Not only do these trade customers and brands rely on and repeat Nice-Pak's claims, amplifying their effect in the marketplace, but they also may participate in industry organizations such as INDA.  Because they would also benefit from lax standards, they may seek to weaken any effort by an industry association to develop an adequate dispersal standard.

---

[4] Available at www.inda.org/issues-advocacy/flushability/ (last visited June 10, 2015).

[5] *See* INDA, Executive Summary: Third Edition Guidance Document for Assessing the Flushability of Nonwoven Disposable Products, available at www.inda.org/wp-content/uploads/2015/04/GD3-and-Code-of-Practice_Executive-Summary_June-2013-FINAL.pdf (last visited June 3, 2015).

[6] *See supra*, n. 2.

Therefore, the Commission should not permit Respondent to rely on the INDA standard or any other standard developed by representatives of the nonwoven fabrics industry. The Commission should also bar Respondent from using evidence and data collected by INDA to support its own findings unless such evidence has been found by experts in the area of wastewater treatment, with input from representative wastewater utilities, to accurately represent the conditions of wastewater treatment infrastructure.

### 3. The Commission Should Provide a Mechanism to Consult Wastewater Treatment Utility Owners and Incorporate Their Recommendations Into Dispersal Parameters and Performance Requirements

Because sanitary wipes marketed as flushable impose such significant costs and expenses on the owners of sewer and wastewater treatment systems, such as the City, because wipe manufacturers and brand owners do not have expertise in the operation of wastewater collection and treatment systems, as demonstrated by the significant and widespread nature of problems caused in such infrastructure by wipes marketed as flushable, and because Respondent and other representatives of the nonwoven fabrics industry cannot be expected to objectively assess whether wipes cause problems in wastewater treatment systems insofar as they benefit from lax standards, it is essential that the Commission and Respondent consult wastewater agencies about what constitutes "competent and reliable evidence" and incorporate the recommendations of such agencies as "qualified persons" into the standards that are established to determine whether a wipe disperses adequately to be marketed as flushable. Wastewater agencies have the professionals with expertise in what is undeniably a relevant area of inquiry – what is necessary to avoid harm to sewer and wastewater treatment infrastructure from flushed wipes.

Input from a diverse set of utilities around the country is particularly important because, while sewer and wastewater treatment systems may share similarities, they can differ in important ways, including the size of the system and the equipment of which it is comprised, the distance between households and wastewater treatment plants, and the technologies used in wastewater treatment. Incorporating input from several representative utilities is essential to ensuring that any dispersal standard is sufficiently stringent to protect all sewer and wastewater treatment utilities.

### 4. The FTC Should Pursue Penalties

If the FTC has reason to believe that Respondent had notice that wipes it represented to be flushable to consumers or its trade customers were causing problems in household plumbing or wastewater collection and treatment systems and, nonetheless, made representations that the wipes were flushable, the FTC should pursue fines pursuant to its enforcement authority established in section 5 of the Federal Trade Commission Act, which allows the FTC to seek penalties if a respondent violates the act by engaging in a covered deceptive act or practice with "actual knowledge or knowledge fairly implied on the basis of objective circumstances." *See* 15 U.S.C. §§ 45(b), (m). The imposition of penalties would communicate to Respondent that the Commission takes the Complaint's allegations of harm to these consumers and utilities seriously.

The FTC should also vigorously exercise oversight over Respondent's compliance with the Order and impose penalties in a timely fashion if Respondent fails to demonstrate that its products comply with a meaningful dispersal standard. Despite the allegations in the Complaint and the explicit requirements in the Order that Nice-Pak establish standards for flushability, Nice-Pak has indicated that it does not intend to change its verification practices that it claims ensure that its products are compatible with household plumbing and wastewater collection and treatment systems. It has stated that "[a]ll claims related to our current flushable product portfolio are fully substantiated as safe to flush, and the FTC consent agreement does not require any change to our existing products or claims." *See* Sustainable Nonwovens, *FTC Nice-Pak Release is Misleading*.[7] Given Nice-Pak's express refusal to make changes to its dispersal standards going forward, voiced prior to the Commission's approval of the Order, there are adequate grounds for concern that it will violate the Order by failing to make changes necessary to protect consumers and wastewater collection and treatment utilities absent future FTC enforcement. In addition, because Nice-Pak sells its products to other companies to market under private labels and other brands, the scope and extent of future misrepresentations that Nice-Pak makes about flushability will be amplified in the consumer marketplace.

## C. The FTC Should Pursue Enforcement Action Against Other Manufacturers and Brands of Both Flushable and NonFlushable Wipes

Following this settlement the FTC should extend its attention and enforcement efforts to include other manufacturers that market sanitary wipes as flushable even when they cause the same operational problems in sewer and wastewater treatment infrastructure that Nice-Pak-manufactured wipes cause. In addition, the FTC should also pursue brand owners that purchase and sell wipes marketed as flushable, which make representations about flushability to consumers separate from those made by wipe manufacturers. Because wipes flushed into sewer and wastewater treatment systems cause problems in the aggregate, improving on the dispersal characteristics of one manufacturer's wipes will not eliminate, and likely will not significantly decrease, the problems that sewer and wastewater treatment utility owners face. The industry as a whole, including brand owners, must cease to market as flushable wipes that do not conform to a meaningful dispersal standard that accounts for systems in municipalities throughout the country.

The FTC should also require that manufacturers and brand owners of wipes that are not designed to be flushed label those products in a manner that clearly warns consumers. Currently, there are many sanitary wipes available to consumers that are not intended to disperse in plumbing or wastewater collection and treatment infrastructure that do not include warnings against flushing on their packaging. Other nonflushable wipes are inadequately labeled – for instance, warnings are presented in small and difficult-to-read fonts, under packaging flaps where consumers will not see them, and without a visual symbol demonstrating that the wipe

---

[7] Available at www.sustainablenonwovens.net/index.php?option=com_content&view=article&id =12605:ftc-release-misleading-says-nice-pak&catid=124:news-free&Itemid=2 (last visited June 10, 2015).

should not be flushed.  It is necessary that the FTC require clear and conspicuous labeling that nonflushable wipes must not be flushed on all product packaging to counteract the widespread confusion that "flushable" wipes have created in the market place.

**D.  Conclusion**

Thank you for the opportunity to comment on the proposed Order.  We would be pleased to provide additional information to assist the FTC to further understand the problems that flushed sanitary wipes create for sewer and wastewater treatment systems and assist the FTC in establishing appropriate standards for sanitary wipes to avoid such problems.

Sincerely yours,

Kathleen Schmid
Senior Counsel
Environmental Law Division
New York City Law Department

cc:   John Rousakis, General Counsel, New York City Department of Environmental Protection
Marla Tepper, General Counsel, New York City Department of Consumer Affairs