UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| SCOTT CHOLEWA, Individually and on Behalf of All Others Similarly Situated, | : | Civil Action No. 1:20-cv-05483-LDH-JMW |
| | : | |
| | : | CLASS ACTION |
| Plaintiff, | : | |
| | : | OPPOSITION TO MOTION TO DISMISS |
| vs. | : | CLASS ACTION COMPLAINT |
| | : | |
| CVS HEALTH CORPORATION and NICE-PAK PRODUCTS, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   FACTUAL BACKGROUND .................................................................................3

    A.    Plaintiff's Claims ......................................................................................3

    B.    The FTC Consent Order............................................................................5

III.  ARGUMENT .........................................................................................................9

    A.    The Primary Jurisdiction Doctrine Is Inapplicable to Plaintiff's Claims...............9

        1.    Plaintiff's Legal Claims Are Within the Court's Expertise ......................10

        2.    Plaintiff's Claims Are Not Within the FTC's Discretion .........................12

        3.    There Is No Risk of Inconsistent Rulings ...................................13

        4.    There Is No Pending FTC Application ......................................15

    B.    Plaintiff Has Standing to Request Injunctive Relief .............................17

    C.    Plaintiff Has Sufficiently Pled a Nationwide Class .............................18

IV.   CONCLUSION......................................................................................................20

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Abingdon Livestock Exch., Inc. v. Smith*,
No. 1:06-cv-96, 2007 WL 3146504
(W.D. Va. Oct. 26, 2007) ................................................................................11

*Andrews v. Blick Art Materials, LLC*,
268 F. Supp. 3d 381 (E.D.N.Y. 2017) ...........................................................13

*Ault v. J.M. Smucker Co.*,
No. 13 Civ. 3409 PAC, 2014 WL 1998235
(S.D.N.Y. May 15, 2014) .................................................................................16

*Belfiore v. Procter & Gamble Co.*,
311 F.R.D. 29 (E.D.N.Y. 2015) ....................................................................6, 11

*Boger v. Citrix Sys., Inc.*,
No. 8:19-cv-1234-PX, 2020 WL 1939702
(D. Md. Apr. 22, 2020) ...................................................................................13

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*,
137 S. Ct. 1773 (2017) ....................................................................................19

*Calibuso v. Bank of America Corp.*,
893 F. Supp. 2d 374 (E.D.N.Y. 2012) .........................................................19, 20

*Campbell v. Freshbev LLC*,
No. 1:16-cv-7119 (FB)(ST), 2018 WL 3235768
(E.D.N.Y. July 3, 2018) ...................................................................................19

*Canale v. Colgate-Palmolive Co.*,
258 F. Supp. 3d 312 (S.D.N.Y. 2017) ..........................................................14, 17

*Davidson v. Kimberly-Clark Corp.*,
873 F.3d 1103 (9th Cir. 2017) ........................................................................18

*de Lacour v. Colgate-Palmolive Co.*,
No. 16-cv-8364 (RA), 2017 WL 6550690
(S.D.N.Y. Dec. 22, 2017) .................................................................................14

*Dean v. Colgate-Palmolive Co.*,
No. EDCV 15-0107 JGB (DTBx), 2015 WL 3999313
(C.D. Cal. June 17, 2015) ............................................................................11, 12

Page

*Elkind v. Revlon Consumer Prods. Corp.*,
    No. 14-cv-2484 (JS) (AKT), 2015 WL 2344134
    (E.D.N.Y. May 14, 2015) ............................................................................13

*Gonzalez v. Costco Wholesale Corp.*,
    No. 16-cv-2590 (NGG) (JO), 2018 WL 4783962
    (E.D.N.Y. Sept. 29, 2018)............................................................................19

*Goya Foods, Inc. v. Tropicana Prods., Inc.*,
    846 F.2d 848 (2d Cir. 1988)........................................................................10

*Hasemann v. Gerber Prods. Co.*,
    No. 15-cv-2995 (MKB), 2016 WL 5477595
    (E.D.N.Y. Sept. 28, 2016)............................................................................14

*Hawkins v. Well Path, LLC*,
    No. 19-cv-8969 (VB), 2020 WL 4287447
    (S.D.N.Y. July 27, 2020) .............................................................................19

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
    No. 12-md-2413 (RRM)(RLM), 2013 WL 4647512
    (E.D.N.Y. Aug. 29, 2013)........................................................................11, 13

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
    476 F. Supp. 2d 275 (S.D.N.Y. 2007).......................................................13, 14

*Jovel v. i-Health, Inc.*,
    No. 12-cv-5614 (JG), 2013 WL 5437065
    (E.D.N.Y. Sept. 27, 2013).......................................................................10, 12

*Kurtz v. Kimberly-Clark Corp.*,
    315 F.R.D. 157 (E.D.N.Y. 2016) ...................................................................8

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017)...........................................................8, 9, 11

*Manuel v. Pepsi-Cola Co.*,
    No. 17 Civ. 7955 (PAE), 2018 WL 2269247
    (S.D.N.Y. May 17, 2018)
    *aff'd*, 763 F. App'x 108 (2d Cir. 2019)..............................................10, 11, 12, 13

*Nader v. Allegheny Airlines, Inc.*,
    426 U.S. 290 (1976)....................................................................................10

**Page**

*Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*,
    46 F.3d 220 (2d Cir. 1995)...............................................................................9

*Petrosino v. Stearn's Prods., Inc.*,
    No. 16-cv-7735 (NSR), 2018 WL 1614349
    (S.D.N.Y. Mar. 30, 2018) ...............................................................3, 11, 17, 18

*Reed v. 1-800-Flowers.com, Inc.*,
    327 F. Supp. 3d 539 (E.D.N.Y. 2018) ...........................................................16

*Robles v. Domino's Pizza, LLC*,
    913 F.3d 898 (9th Cir. 2019) .........................................................................16

*Silva v. Hornell Brewing Co.*,
    No. 20-cv-756 (ARR) (PL), 2020 WL 4586394
    (E.D.N.Y. Aug. 10, 2020)...............................................................10, 11, 15, 16

## STATUTES, RULES AND REGULATIONS

New York General Business Law
    §349.................................................................................................................5
    §350.................................................................................................................5

## SECONDARY AUTHORITIES

Katherine Shaver, *A nasty pandemic problem: More flushed wipes are clogging pipes, sending sewage into homes*, THE WASHINGTON POST (Apr. 23, 2021)...........................................5

Plaintiff Scott Cholewa ("Plaintiff") respectfully submits this memorandum of law in opposition to defendants CVS Health Corporation ("CVS") and Nice-Pak Products, Inc.'s ("Nice-Pak") (collectively, "Defendants") motion to dismiss the Complaint (the "Motion").[1]

## I.    INTRODUCTION

Defendants move to dismiss Plaintiff's nationwide injunctive relief claims on several bases, which, even if accepted by the Court, have no bearing on Plaintiff's claims for damages on behalf of a New York class, which will proceed regardless of the outcome of the Motion.  First, Defendants move to dismiss Plaintiff's claims for injunctive relief based on the limited grounds that, under the primary jurisdiction doctrine, the Federal Trade Commission ("FTC") has "assumed jurisdiction over Nice-Pak's labeling, packaging," and thus, "Plaintiffs directly challenge the FTC's decision to allow Nice-Pak to continue marketing its wipes as 'flushable'" Def. Mem. at 1-2.[2]  Primary jurisdiction, which courts have determined should be invoked sparingly, typically applies to *stay* cases and allocate *initial* decision-making responsibility to administrative agencies where issues of fact are not within the conventional experience of judges.  The doctrine does not apply to legal questions such as those at issue here – *e.g.*, whether Defendants' mislabeling of their Flushable Wipes as "flushable" is false and misleading to consumers, and whether class members suffered injury by paying a premium price for Defendants' wipes– which *are* within the conventional competence of the courts.  Given the Defendants' extraordinary request for complete dismissal of Plaintiff's injunctive relief claims under the primary jurisdiction doctrine, and the fact that the FTC

---

[1]    "Complaint" refers to Plaintiff's Class Action Complaint, ECF No. 1.  References to "¶__" refer to paragraphs of the Complaint.  "Flushable Wipes" refers to moist wipe products marketed and labeled as safe to flush, safe for plumbing, safe for sewer and/or septic systems and/or biodegradable. ¶1.  Citations are omitted and emphasis is added throughout unless otherwise noted.

[2]    Citations to "Def. Mem." refer to the Memorandum of Law in Support of the Motion, dated June 15, 2021.  All references to "Ex. __" are to the exhibits attached to the Declaration of John Q. Lewis submitted in connection with the Motion.

has already implemented its initial decision-making with respect to Nice-Pak-manufactured Flushable Wipes, this case does not present the narrow circumstances where application of the doctrine is appropriate.

Defendants' central argument is that Plaintiff's requested injunctive relief is "inconsistent" with "the FTC's active oversight of Nice-Pak and its Flushable Wipes" because the Consent Order (defined below) permits the continued marketing of Nice-Pack-manufactured Flushable Wipes and the FTC is purportedly closely monitoring those wipes.  Def. Mem. at 2, 10.  But the ostensible "oversight" rests almost entirely on an FTC letter from over six years ago, responding to comments by the New York City Law Department that expressed "concerns regarding the [Consent] Order" (Ex. E), stating that the FTC will "closely monitor Nice-Pak's future activities to determine whether any violations occur."  *See* Def. Mem. at 8.  Yet, the FTC's subsequent communications make clear that it has declined to exercise jurisdiction over the subject matter of the claims at issue here and there is no indication that it is actively monitoring the activities of any Flushable Wipes manufacturer or retailer, let alone those of Nice-Pak and CVS.  Indeed, when Judge Jack B. Weinstein referred analogous flushability-related issues to the FTC to allow it to exercise jurisdiction over the matters and provide administrative guidance, the FTC refused.

While Defendants argue that the FTC's purported monitoring of Nice-Pak's activities "is dispositive" (Def. Mem. at 14), they cannot point to any supporting authority or evidence demonstrating that the FTC is actively monitoring the specific iterations of Defendants' *current* Flushable Wipes products, or any details on *how* the FTC is implementing its oversight.  Indeed, in the over five years since the Consent Order, the FTC has not taken *any* known steps to enforce its terms against, or regulate (or even investigate), *any* manufacturer or retailer of Flushable Wipes. This is true despite the continued failure of Defendants' Flushable Wipes to perform as advertised.

- 2 -

In fact, denying the Defendants' motion would be *consistent* with the Consent Order, which sought the same relief that Plaintiff seeks here – true and accurate labeling of Defendants' Flushable Wipes.

Second, Defendants argue that Plaintiff lacks standing to bring injunctive relief claims because he alleges that he "stopped purchasing" CVS Flushable Wipes. *See* Def. Mem. at 15-16. This argument misconstrues the Complaint, as Plaintiff does not allege that he would refrain from purchasing the products at issue indefinitely. Even if Plaintiff intended to never purchase the products at issue again, standing has been conferred under similar circumstances. *See Petrosino v. Stearn's Prods., Inc.*, No. 16-cv-7735 (NSR), 2018 WL 1614349, at *5 (S.D.N.Y. Mar. 30, 2018) ("a Plaintiff in a consumer protection suit has standing to seek injunctive relief regardless of any promises to purchase the products in questions in the future").

Finally, Defendants' argument that Plaintiff's proposed nationwide class claims must be dismissed because "non-resident class members' claims lack any connection to New York" is misplaced because jurisdictional analyses concerning absent class members are premature prior to class certification. Def. Mem. at 3. And while Defendants attempt to argue that class definitions are "separate and apart" from "the issues that this Court will decide on any class certification motion," (*id*. at 18) despite the core importance of the issue to class certification, Defendants fail to cite any authority to the contrary.

For these reasons and those discussed further below, Defendants' motion should be denied.

## II.    FACTUAL BACKGROUND

### A.    Plaintiff's Claims

Defendants manufacture, market and/or sell wipes labeled as "flushable" and/or "safe" for sewer systems. ¶¶11-13, 18. The term "flushable" is commonly understood to mean "*suitable* for disposal by flushing down a toilet," requiring more than simply clearing a toilet or home plumbing

system.  ¶20.  Plaintiff alleges that Defendants' Flushable Wipes are unsuitable for flushing, making them improperly labeled as "flushable" and "safe" for sewer systems.  ¶¶18-26.

Although there are many definitions of the word "flushable," sources generally agree that for a product to be deemed "flushable" and "safe" for sewer systems it must disperse in a sufficiently short amount of time to prevent damage to both home plumbing ***and*** sewer systems.  ¶¶20-22; *see also id.* at ¶22(d) (discussing the FTC's guidance that "flushable" means a product must "disperse[] in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment").  Because Defendants' Flushable Wipes do not meet this basic threshold, they are, therefore, not flushable under any available definition or guideline because, *inter alia*, they cannot safely pass through municipal sewage lines, pumps and treatment facilities due to their nondispersability.  *See, e.g.*, ¶¶23-27.

Numerous independent tests have confirmed that Defendants' Flushable Wipes will not actually break down or dissolve in sewer systems.  ¶¶29-35.  For example, Ryerson University conducted a study in 2019 where researchers examined 101 single-use wipes products, including 23 wipes products labeled as "flushable" by the manufacturer, following specifications set out by the International Water Services Flushability Group ("IWSFG") - an international coalition of national and regional wastewater services associations and organizations and individual wastewater utilities – and found that none of the products fell apart or dispersed enough to safely pass through an average home's plumbing system to the public sewer, or through the sewer system for 30 minutes.  ¶30.

Unsurprisingly – given their inability to sufficiently break down quickly enough (or at all) – Flushable Wipes are known to cause a variety of plumbing issues to septic tanks, piping, sewers and wastewater collection and treatment facilities across the country, and around the world.  ¶¶36-59.

- 4 -

Utilities in the United States continue to spend hundreds of millions of dollars per year to address and fix damages caused in large part by Flushable Wipes.  ¶42.  And rather than seeing improvements, sewage treatment facilities have been experiencing increased wipes-based blockages.[3]

The Complaint details Plaintiff's own experiences with Defendants' Flushable Wipes, particularly extensive plumbing issues, including the clogging of his home plumbing system.  ¶¶65-79.  In March 2020, Plaintiff had to employ the help of professional plumbers to remove the clog, who confirmed that the damage was caused by Flushable Wipes.  ¶68.  In addition to the costs of removing the clog caused by CVS Flushable Wipes, Plaintiff also sustained damage from the resulting flooding, which necessitated significant additional construction work to repair and required Plaintiff to hire contractors to remove the flooring of multiple rooms that had been damaged by the flooding, and paid more for the wipes than he would have absent Defendants' misrepresentations.  ¶¶69, 74.  Plaintiff alleges that, despite the repeated clogs and ongoing damage to Plaintiff and Class members' property, Defendant CVS has ignored countless complaints regarding Flushable Wipes, thereby causing injury or damage to Plaintiff and members of the Class while providing itself with additional and unjust financial gain.  ¶84.  Plaintiff is seeking both injunctive relief and, *inter alia*, statutory damages for violation of the New York General Business Law §§349 and 350.  ¶88.

**B.     The FTC Consent Order**

The FTC initiated an investigation into retailers' and manufacturers' advertising claims associated with Flushable Wipes in or about early 2014.  On May 18, 2015, the FTC entered into a

---

[3]      *See also* Katherine Shaver, *A nasty pandemic problem: More flushed wipes are clogging pipes, sending sewage into homes*, THE WASHINGTON POST (Apr. 23, 2021), https://www.washingtonpost.com/local/trafficandcommuting/flushable-wipes-clogging-sewers/2021/04/23/5e8bbc82-a2c9-11eb-a774-7b47ceb36ee8_story.html (discussing increased wipe-related backups in various municipal wastewater systems through the country).

settlement with Nice-Pak and publicly issued the Agreement Containing Consent Order ("Consent Order").[4]   On October 5, 2015, Judge Jack B. Weinstein stayed two coordinated flushable wipes actions – *Kurtz v. Kimberly-Clark Corp.*, No. 1:14-cv-1142 (E.D.N.Y.) (ECF No. 183) and *Belfiore v. Proctor & Gamble Co.*, No. 2:14-cv-4090 (E.D.N.Y.) – "while the FTC exercises jurisdiction, if it chooses to do so[,]" and referred "[t]he issue of an appropriate definition of 'flushable' wipes and related issues . . . to the FTC."  *Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 39 (E.D.N.Y. 2015).  The settlement between the FTC and Nice-Pak was effectuated on October 30, 2015, after a notice and comment period.[5]

As part of the notice and comment period, the New York City Law Department submitted comments describing, *inter alia*, "the impact of flushable wipes on New York City's sewer and wastewater treatment infrastructure," and expressing "concerns regarding the [Consent] Order." Ex. E at 1-3 ("NYC Comments").  In the NYC Comments, the City explained that:

> Following the introduction of "flushable" sanitary wipes into the consumer market, the City noted a ***significant increase*** in the number of sanitary wipes found in its sewer and wastewater treatment infrastructure, and the volume of wipes in the City's systems continues to rise every year.  Many wipes marketed as flushable are not truly "flushable," in that ***they do not disintegrate before they reach the City's treatment systems***, where they then interfere with the treatment process.  In addition, the widespread marketing of so-called flushable wipes appears to have created confusion with nonflushable wipes.

*Id*. at 2.  The NYC Comments also described the importance of "ensur[ing] that wastewater utilities are not saddled with significant expenses resulting from disingenuous marketing practices of wipes manufacturers and brands and the inadequate design of wipes marketed as flushable" and noted that "it is essential that [Nice-Pak] establish rigorous performance standards for wipes that it markets as

---

[4]     Ex. B (*In the Matter of Nice-Pak Products, Inc.*, No. C-4556 (F.T.C. May 18, 2015), Agreement Containing Consent Order).

[5]     Ex. C (*In the Matter of Nice-Pak Products, Inc.*, No. C-4556 (F.T.C. Oct. 30, 2015)); Consent Order at 3.

flushable." *Id*. at 3. Accordingly, the NYC Comments requested that the FTC: (1) "***rigorously***

***monitor***" Nice-Pak's compliance with the Consent Order (*id*. at 3); (2) should not permit Nice-Pak

"to rely on the INDA standard . . . developed by representatives of the nonwoven fabrics industry"

(*id*. at 4-6);[6] (3) consult wastewater treatment utilities and "incorporate their recommendations into

dispersal parameters and performance requirements" (*id*. at 6); and (4) pursue penalties against Nice-

Pak and other manufacturers that had or have notice that their flushable wipes caused or cause harm

to wastewater collection and treatment systems (*id*. at 6-7).

The FTC's Complaint ***only*** addressed Nice-Pak wipes made of "non-woven fabric,

specifically non-elemental chlorine bleached wood pulp, bicomponent fibers, and EP907 repulpable

binder" ("EP907 Wipes").[7] The substrate used in the EP907 Wipes iteration was sold by various

retailers under private labels between 2011 and 2015. The FTC Complaint alleged that EP907

Wipes "do not break down in water in a reasonably short amount of time" and, as a result, they can

---

[6]    In connection with its comments about relying on the Association of the Nonwoven Fabrics Industry's ("INDA") performance standards, the City explained that:

> While the INDA standard has been embraced by certain manufacturers and owners of wipes brands, the City does not consider the INDA standard to be a "standard[] generally accepted" in the wastewater treatment field, does not believe the dispersal standards used by the INDA standard are representative of the "physical conditions of the environment" that wipes meet in sewer and wastewater treatment infrastructure, and does not consider the evidence on which the INDA standard relies to be "competent and reliable." The INDA standard tests wipes using dispersal parameters that allow for significantly more time and agitation than wipes actually encounter in the City's sewer and wastewater treatment infrastructure. Many sanitary wipes that have passed the INDA assessment do not disperse prior to their reaching the City sewer and wastewater treatment infrastructure, and other municipal wastewater utilities report similar findings.

Ex. E at 5. Plaintiff alleges that Defendants rely on INDA standards to support their "flushable" claims. ¶27.

[7]    Ex. D (*In the Matter of Nice-Pak Products, Inc.*, No. C-4556 (F.T.C. Oct. 30, 2015), Complaint ("FTC Complaint")).

clog household plumbing systems, household septic systems, public sewer systems, and sewage treatment plant systems after being flushed. *Id*. ¶2. According to the FTC Complaint, EP907 Wipes were labeled with unsubstantiated claims that the wipes were: (1) safe for sewer systems; (2) safe for septic systems; (3) capable of breaking apart shortly after being flushed; and (4) safe to flush. *Id*.

The Consent Order provided recommendations for what is considered an accurate means for substantiating representations about wipes' dispersability and defined "flushable" as "disperses in a sufficiently short amount of time after flushing to avoid clogging, or other operational problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment." *See* Consent Order at 3. The Consent Order, however, did not address or establish: (1) testing protocols that must be followed; (2) how often any testing must be performed, if ever; (3) which independent third party or parties can be used for testing; or (4) any enforcement mechanisms for products that fail testing (*e.g.*, penalties, re-labeling, or removal from retail shelves). The FTC also did not – explicitly or implicitly – bless, permit or allow any other or future iteration of wipes to be marketed or sold as "flushable." *See id*.

On June 28, 2016, Judge Weinstein told the parties in *Kurtz* and *Belfiore* "to explore the opportunity for aggregate adjudication of their claims before the FTC[.]" *Kurtz v. Kimberly-Clark Corp.*, 315 F.R.D. 157, 159 (E.D.N.Y. 2016). In response, on July 6, 2016, counsel in *Belfiore* contacted the FTC to inquire as to whether it intended to formally define "flushability" and whether aggregate adjudication by the FTC was feasible. *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 505 (E.D.N.Y. 2017). The FTC responded, by letter dated July 27, 2016, stating that: (1) it cannot engage in "aggregate adjudication" of claims, due to its administrative design; (2) it does not intend to prescribe trade regulation rules in relation to issues raised by the court's referral; and (3) the

parties and the court can look to the Consent Order for guidance on their views regarding "flushability" representations. *See Belfiore*, ECF No. 184-2.

Although Judge Weinstein had previously referred the issue of defining "flushability" and other related issues to the FTC, "[i]n the absence of an administrative . . . approach," he concluded that "the court is compelled to address these consumers' claims on a state-by-state basis." *Kurtz*, 321 F.R.D. 482 at 495-96. Over four years have passed since that statement, and the FTC has taken no further action to regulate the advertising or manufacture of Flushable Wipes despite the pendency of approximately a dozen flushable-wipes related actions during that time. Based on publicly available information, the FTC has not opened any investigations relating to Flushable Wipes and has not sought to enforce or set enforcement mechanisms relating to the testing of Flushable Wipes or the manner in which they are labeled; the FTC has not requested that Flushable Wipes retailers or manufacturers submit proposed advertisements, labels or formulations for their wipe products or ordered testing on Flushable Wipes; nor has the FTC offered further guidance on the definition of "flushable" to the courts handling actions relating to damages resulting from Flushable Wipes.

Yet Defendants' Flushable Wipes remain – to this day – falsely and improperly labeled as flushable when they do not sufficiently break down and disperse.

## III.   ARGUMENT

### A.   The Primary Jurisdiction Doctrine Is Inapplicable to Plaintiff's Claims

The primary jurisdiction doctrine has be invoked where a cause of action "extending beyond the 'conventional experiences of judges'" and involves "technical and intricate questions of fact and policy that Congress has assigned to a specific agency." *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 46 F.3d 220, 222-23 (2d Cir. 1995). Under the doctrine, a court may refer a matter to "an administrative agency with more specialized experience, expertise, and insight." *Id.* at 223; *see also*

*Goya Foods, Inc. v. Tropicana Prods., Inc.*, 846 F.2d 848, 851 (2d Cir. 1988) ("The doctrine has been applied **only** when a lawsuit raises an issue, frequently the validity of a commercial rate or practice, committed by Congress in the first instance to an agency's determination.") (citing *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 304 (1976)).   Despite its name, the doctrine is not jurisdictional and its "central aim is to allocate **initial** decisionmaking responsibility between courts and agencies and to ensure that they do not work at cross-purposes."  *Manuel v. Pepsi-Cola Co.*, No. 17 Civ. 7955 (PAE), 2018 WL 2269247, at *6 (S.D.N.Y. May 17, 2018), *aff'd*, 763 F. App'x 108 (2d Cir. 2019).

Although no fixed formula exists for applying the doctrine, courts may consider the following factors in determining whether deference to an administrative agency is appropriate under the doctrine: whether the case involves a matter: (1) that falls "within the conventional experience of judges" or the agency's particular field of expertise; (2) is particularly "within the agencys discretion"; (3) gives rise to "substantial danger of inconsistent rulings"; and (4) concerns a pending agency application for guidance.  *Silva v. Hornell Brewing Co.*, No. 20-cv-756 (ARR) (PL), 2020 WL 4586394, at *2 (E.D.N.Y. Aug. 10, 2020).   Each of these four discretionary factors weigh decidedly against the application of the primary jurisdiction doctrine in this case.

### 1.      Plaintiff's Legal Claims Are Within the Court's Expertise

The primary jurisdiction doctrine allows federal courts to refer matters "extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight."  *Jovel v. i-Health, Inc.*, No. 12-cv-5614 (JG), 2013 WL 5437065, at *6 (E.D.N.Y. Sept. 27, 2013).   There is no basis to conclude that the FTC has greater technical expertise or experience than this Court to answer the questions posed by Plaintiff's claims.   In fact, Judge Weinstein in the *Kurtz* and *Belfiore* actions, even after probing the application of primary jurisdiction and going so far as to invite the FTC's

position on flushability and aggregate adjudication, concluded that the same technical and factual issues were within the purview and conventional experience of the court. *Kurtz*, 321 F.R.D. at 495 (addressing plaintiff's claims in the absence of FTC action); *Belfiore*, 311 F.R.D. at 75 ("Generally, the judiciary is 'well-suited' to determine a consumer's reasonable expectations about labeling."); *see also Silva*, 2020 WL 4586394, at *2 ("while defining the term 'all natural' does involve technical and policy considerations, this case does not require a technical definition of 'all natural'"); *Abingdon Livestock Exch., Inc. v. Smith*, No. 1:06-cv-96, 2007 WL 3146504, at *2 (W.D. Va. Oct. 26, 2007) (that "courts have been deciding" a particular issue "belies the argument that such a determination is within the particular discretion of the [administrative agency]").[8]

Courts routinely find that common law claims and issues pertaining to false and misleading labeling or advertising do not require the FTC's particular field of "expertise." *See, e.g., Petrosino*, 2018 WL 1614349, at *10 ("The present case is 'far less about science than it is about whether a label is misleading, and the reasonable-consumer inquiry upon which some of the claims in this case depends is one to which courts are eminently well suited, even well versed.'"); *Manuel*, 2018 WL 2269247, at *6 ("[t]he Court is therefore 'reluctant to declare that issues of alleged consumer deception are necessarily outside the conventional wisdom of judges (or even juries)'"); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-md-2413 (RRM)(RLM), 2013 WL 4647512, at *8 (E.D.N.Y. Aug. 29, 2013) (refusing to adopt primary jurisdiction for claims relating to defendants' misleading and deceptive misrepresentations that the products were made of all natural ingredients).

Even if the subject matter of this litigation implicates the expertise of the FTC, the mere existence of the Consent Order does not support the application of primary jurisdiction. *See Dean v.*

---

[8]    The adjudication of similar claims pertaining to the labeling and advertising of Flushable Wipes in *Pettit v. Proctor & Gamble Co.*, No. 3:15-cv-02150 (N.D. Cal. 2019) and *Davidson v. Kimberly Clark Corp.*, No. 15-16173 (9th Cir. 2017) and other similar litigations further demonstrates this Court's competence to rule on Plaintiff's claims.

*Colgate-Palmolive Co.*, No. EDCV 15-0107 JGB (DTBx), 2015 WL 3999313, at *4 (C.D. Cal. June 17, 2015) ("not every case that implicates the expertise of federal agencies warrants invocation of primary jurisdiction"). "In other words, the doctrine is 'not designed to secure expert advice from agencies' merely because the issue is conceivably within an agency's ambit." *Id.* Notably, Plaintiff's claims neither include a cause of action under the FTC Act nor require an interpretation of any FTC definition. *See id.* at *5 (refusing to invoke primary jurisdiction where "[p]laintiff is not pursuing a cause of action under the Food Drug and Cosmetic Act (the "FDCA"), the FTC Act, or the Fair Packaging and Labeling Act [and] her claims do not require reference to or interpretation of any FDA or FTC definition"); *see also Jovel*, 2013 WL 5437065, at *7 (refusing to invoke the doctrine where "proof of [defendant's] deceptive advertisements does not depend on violation of, or compliance with, the FDA . . . or threaten the uniform application of FDA labeling guidelines").

Here, the relevant questions posed by this action fall within the competency and domain of the Court, including whether Defendants' Flushable Wipes are in fact "flushable"; whether the use of the word "flushable" and similar terms on product labeling by Defendants is false and misleading and consequently injured Plaintiff and Class members economically; and whether injunctive relief, such as appropriate labeling changes, is appropriate. These issues do not fall within the unique expertise of the FTC. For these reasons, factor one weighs against application of the primary jurisdiction doctrine.

### 2.   Plaintiff's Claims Are Not Within the FTC's Discretion

As discussed above, the FTC has already explicitly declined to provide any further clarification or interpretation of the definition of "flushable" when asked by a court to do so. *See supra* §III. Nor is it actively or rigorously regulating manufacturers, marketers and/or retailers of Flushable Wipes. *Id.* Rather, there is "every indication [] that the [FTC] will ***not*** exercise that discretion as to the matter at hand." *Manuel*, 2018 WL 2269247, at *7.

Moreover, given the FTC's inaction, Plaintiff's claims will be most expeditiously resolved by this Court. *See, e.g.*, *Boger v. Citrix Sys., Inc.*, No. 8:19-cv-1234-PX, 2020 WL 1939702, at *3 (D. Md. Apr. 22, 2020) ("The FCC has been wrestling with the definition of ATDS for six years with no clear conclusion in sight. Accordingly, this Court joins other courts that have refused to stay proceedings on this ground."); *Andrews v. Blick Art Materials, LLC*, 268 F. Supp. 3d 381, 403 (E.D.N.Y. 2017) ("The court will not delay in adjudicating his claim on the off-chance the DOJ promptly issues regulations it has contemplated issuing for seven years but has yet to make significant progress on."); *In re Frito-Lay*, 2013 WL 4647512, at *9 (denying request to stay case on the grounds of primary jurisdiction and noting that "the FDA is unlikely to respond in a timely manner to any referral from this Court"); *Manuel*, 2018 WL 2269247, at *7 ("primary jurisdiction is not required when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make"). Therefore, factor two also weighs against application of the primary jurisdiction doctrine.

### 3. There Is No Risk of Inconsistent Rulings

Defendants rely heavily on the unfounded contention that the requested injunctive relief is "inconsistent with the FTC's oversight of its Consent Order." Def. Mem. at 10. But there is no risk of inconsistent rulings here. An assessment of this factor focuses on risks of inconsistent rulings that are real, not remote. *See Elkind v. Revlon Consumer Prods. Corp.*, No. 14-cv-2484 (JS) (AKT), 2015 WL 2344134, at *10 (E.D.N.Y. May 14, 2015) ("the parties have not suggested that any relevant FDA ruling or guidance is imminent, so that danger is relatively low"); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 476 F. Supp. 2d 275, 283 (S.D.N.Y. 2007) ("the mere possibility of inconsistency is not sufficiently grave a concern to warrant deferral, as application of the primary jurisdiction doctrine is warranted only when the requested relief 'create[s] a substantial danger of inconsistency'").

- 13 -

Defendants' purported concern regarding this action interfering with FTC regulation of flushable products is unfounded.  *See* Def. Mem. at 12 ("Any decision this Court makes to enjoin CVS from selling Nice-Pak-manufactured flushable wipes would thus step into—and conflict with— the FTC's role in actively supervising and policing the Consent Decree.").  There has been no regulatory action undertaken by the FTC since the Consent Order and it has already once turned down an offer to weigh-in on flushable wipes-related litigation.  As discussed above, the FTC is not actively regulating the Flushable Wipes industry.  *See Hasemann v. Gerber Prods. Co.*, No. 15-cv-2995 (MKB), 2016 WL 5477595, at *7 (E.D.N.Y. Sept. 28, 2016) ("Because the FDA has concluded its administrative investigation, [] there is no risk of inconsistent rulings between the FDA and the Court.").  Where an agency gives no indication that it is taking regulatory action or providing further guidance, "there is little danger that the Court will be 'work[ing] at cross-purposes' with the [agency.]"  *de Lacour v. Colgate-Palmolive Co.*, No. 16-cv-8364 (RA), 2017 WL 6550690, at *4 (S.D.N.Y. Dec. 22, 2017); *see also Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 325 (S.D.N.Y. 2017) ("a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation").

In the event that the FTC decides to take action in the future, there is nothing to suggest that this would result in inconsistent rulings.  *See MTBE*, 476 F. Supp. 2d at 284 ("any injunctive or equitable relief which might eventually issue from this Court [can] take into account the need for consistency and coordination with the actions of the involved state agencies").  Moreover, the injunctive relief sought here is in fact ***consistent with*** what the FTC endeavored to accomplish with the Consent Order – namely, clarity and truthfulness about the efficacy of Defendants' Flushable

- 14 -

Wipes.  Given that the FTC has been dormant for years on this issue despite continued harm from these products,[9] Plaintiff now seeks relief consistent with the goals of the Consent Order.

Courts have also distinguished between the specific powers of the agency to set standards and define terms used on labeling, and the courts' role in applying the law.  *See Silva*, 2020 WL 4586394, at *2 ("this case does not involve determining a scientific definition of 'natural.'  Any guidance the FDA ultimately issues about the term 'natural' will not be inconsistent with the outcome the court reaches in this case because the FDA is not tasked with applying a reasonable consumer standard. [determining whether the labeling is misleading to a reasonable consumer.]"  As in *Silva*, this Court's application of the relevant standards for Plaintiff's legal claims would not interfere with any future agency action regarding the definition of the term "flushable."

Thus, factor three also weighs against application of the primary jurisdiction doctrine.

### 4.    There Is No Pending FTC Application

As Defendants seem to acknowledge, Plaintiff's claims do not concern a pending FTC application.  The FTC Complaint – issued six years ago – was limited to Nice-Pak's EP907 Wipes and does not (and could not) address the current iterations of Defendants' Flushable Wipes at issue in this litigation.  *See supra* §III.  While Defendants argue that the "FTC permitted Nice-Pak to *continue* to advertise and label its subsequent generations" so long as the representations regarding the products are "'non-misleading'" (Def. Mem. at 6-7) (emphasis in original), they provide no evidence or facts proving that its representations are in fact "'non-misleading,'" let alone suggesting that the current generation of their wipes is indeed permitted by the FTC.  Where, as here, it is undisputed that an administrative body's regulatory action does not cover the scope of the claims before the Court, the doctrine of primary jurisdiction cannot apply.  *See Silva*, 2020 WL 4586394, at

---

[9]         *See, e.g.*, ¶¶36-43, 48, 52-53, 65-70; *supra*, n.3.

*3 ("there has been a prior application to the agency, but I have no confidence that [after 5 years] the FDA will be addressing this issue anytime soon"); *see also Ault v. J.M. Smucker Co.*, No. 13 Civ. 3409 PAC, 2014 WL 1998235, at *3 (S.D.N.Y. May 15, 2014) (when an agency "is unable to address a potentially deceptive practice, state claims are one of the few means of safeguarding consumers and therefore should not be preempted by the [agency's] inaction").

Although Defendants argue that the FTC has taken an active role in regulating the Flushable Wipes industry, the Consent Order requires Nice-Pak to submit advertising materials to the FTC upon request, and Defendants have not provided the Court with a single instance in which a request was made. *See* Def. Mem. at 7. Likewise, while the FTC has the stated power to enforce a fine of $16,000 per violation, *see id.* at 8, the theoretical ability to enforce a fine does nothing to show that the FTC intends to act. Indeed, no fines have been imposed. Defendants also do not cite to any testing or enforcement measures taken by the FTC relating to the initial investigation despite their repeated claim that the FTC "assumed jurisdiction . . . for a 20-year period." Def. Mem. at 1. Inaction on an agency's part commonly forms the basis for denying application of primary jurisdiction. *See Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 910 (9th Cir. 2019) ("[e]ven when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation"); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539, 548 (E.D.N.Y. 2018) ("Given the DOJ's prolonged silence, the prior application factor weighs against referral to the agency on the basis of primary jurisdiction."); *Ault*, 2014 WL 1998235, at *3 (when an agency "is unable to address a

potentially deceptive practice, state claims are one of the few means of safeguarding consumers and therefore should not be preempted by the [agency's] inaction").[10]

Further, although Defendants argue that the FTC has presently assumed jurisdiction over the claims at issue, they also acknowledge that the Consent Order was a resolution, and suggest that Plaintiff's claims are inconsistent with that resolution. *See, e.g.*, Def. Mem. at 11 ("Plaintiff effectively challenges the FTC's decision-making"). However, Nice-Pak itself has continued to litigate and settle similar claims in subsequent actions. *See Meta v. Target Corp.*, 4:14-cv-00832 (N.D. Ohio Mar. 29, 2018), ECF No. 169-2 (compensating purchasers of Up&Up™ wipes manufactured by Nice-Pak for the price premium of Flushable Wipes sold under Target Corporation's private label). As a result, Defendants' argument that this Court cannot hear Plaintiff's claims falls flat. Therefore, factor four also weighs against application of the primary jurisdiction doctrine.

### B.   Plaintiff Has Standing to Request Injunctive Relief

Defendants also argue that Plaintiff lacks standing to bring injunctive relief claims because he alleges that he "stopped purchasing" CVS Flushable Wipes (*see* Def. Mem. at 15-16), but misconstrue the Complaint in doing so. Plaintiff did not allege that he would refrain from purchasing the products at issue indefinitely. As stated above, even if Plaintiff intended to never purchase the products at issue again, standing has been conferred under similar circumstances. *Petrosino*, 2018 WL 1614349, at *5 ("a Plaintiff in a consumer protection suit has standing to seek injunctive relief regardless of any promises to purchase the products in questions in the future").

---

[10]      Defendants' reliance on *Canale*, 258 F. Supp. 3d 312, to support their application of primary jurisdiction here is misplaced. *See* Def. Mem. at 11-13. The *Canale* court granted a limited six-month stay "given that the FTC [was] ***currently*** investigating the issue of which Plaintiff complain[ed]." 258 F. Supp. 3d at 324 (emphasis added). Unlike in *Canale*, there is no known pending active FTC investigation that could conceivably lead to an inconsistent ruling, and Defendants are seeking to ***dismiss*** – not stay – Plaintiff's injunctive claims.

Standing has also been conferred in similar cases involving "flushable" products.  *See Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1115 (9th Cir. 2017) (rejecting the notion "that injunctive relief is ***never*** available for a consumer who learns after purchasing a product that the label is false").

The *Davidson* opinion is instructive here.  In *Davidson*, the court explained that a plaintiff-consumer may face a threat of future harm sufficient to confer standing: (1) where "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to[;]" or (2) where "she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved."  *Id*.  The Court added that the plaintiff "faces a threat of imminent or actual harm by not being able to rely on [defendant manufacturer-retailer]'s labels in the future," and that this harm is sufficient to confer standing to seek injunctive relief.  *Id*. at 1112-13.[11]  That reasoning is applicable here as well.  Additionally, similar to *Petrosino*, the Complaint does not allege that Plaintiff would not purchase Flushable Wipes again if changes to the products were implemented to make them true to their advertising.  *See Petrosino*, 2018 WL 1614349, at *5 (finding the plaintiff's expressed intention of purchasing the defendant's products once the product is not mislabeled sufficient to confer standing).

## C.    Plaintiff Has Sufficiently Pled a Nationwide Class

Defendants also argue that Plaintiff's proposed nationwide class "is geographically overbroad because the non-New York class members are unable to establish personal jurisdiction."  Def. Mem. at 2.  Specifically, Defendants state that "the fact that the non-resident class members' claims lack any connection to New York renders a nationwide class action inappropriate as a matter

---

[11]    *Cf. Kurtz v. Costco Wholesale Corp.*, No. 17-1856-(L)-cv (2d Cir. June 26, 2020), ECF No. 293-1 at 5-6 (finding ***at class certification*** that the plaintiff lacked standing to seek injunctive relief because he did not assert that he intended to purchase the products again).

of law." Def. Mem. at 3.  However, the issue of personal jurisdiction over out-of-state class claims is more appropriately decided at the class certification stage. *See Hawkins v. Well Path, LLC*, No. 19-cv-8969 (VB), 2020 WL 4287447, at *6 (S.D.N.Y. July 27, 2020) ("the Court concludes personal jurisdiction over defendant as to putative out-of-state class claims would be best assessed at the class certification stage of the proceedings, not at the motion to dismiss stage"); *Gonzalez v. Costco Wholesale Corp.*, No. 16-cv-2590 (NGG) (JO), 2018 WL 4783962, at *8 (E.D.N.Y. Sept. 29, 2018) ("because of the 'unsettled nature of the law following Bristol-Myers'[12]- specifically its applicability to federal class actions - this court will defer its resolution of this issue until Plaintiff files a motion for class certification, if she does in fact decide to do so") (emphasis removed); *Campbell v. Freshbev LLC*, No. 1:16-cv-7119 (FB)(ST), 2018 WL 3235768, at *2 (E.D.N.Y. July 3, 2018) (deferring on the question of whether *Bristol-Myers* applied to nationwide class actions until a motion for class certification was brought).

Defendants acknowledge that "motions to strike class allegations are often held to be premature," but argue that "courts in this circuit have clarified that overbroad class allegations may be stricken where the defendant can 'demonstrate from the face of the [c]omplaint that it would be impossible to certify the alleged class regardless of the facts [the] [p]laintiffs may be able to obtain during discovery.'" Def. Mem. at 18 (citation omitted).  Defendants rely on *Calibuso v. Bank of America Corp.*, 893 F. Supp. 2d 374, 383 (E.D.N.Y. 2012) to establish that the class definitions in this case are issues that can be resolved "'separate and apart from' the issues that [this Court] will be decided on a class certification motion," but the *Calibuso* opinion emphasizes that "[a] motion to strike class allegations [] is even more disfavored because it requires a reviewing court to 'preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in

---

[12]     *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 137 S. Ct. 1773 (2017).

the complaint[.]" *Id.* The *Calibuso* opinion did not implicate issues concerning personal jurisdiction or non-resident plaintiffs, and the defendants' motion to dismiss and strike class claims was denied, mostly without prejudice to the defendants re-raising the issues at class certification. *Id.* at 394-95. Thus, Defendants' own arguments ultimately provide more support to Plaintiff and suggest that the Court should address these issues at the class certification stage.

## IV.   CONCLUSION

For the foregoing reasons, the doctrine of primary jurisdiction is inapplicable to Plaintiff's claims and Plaintiff has adequately alleged a nationwide class and standing for his injunctive relief claims.  Plaintiff, thus, respectfully requests that the Court deny the Defendants' Motion.

DATED:  June 29, 2021                          Respectfully submitted,

                                               ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
                                               SAMUEL H. RUDMAN
                                               VINCENT M. SERRA


                                               */s/ Vincent M. Serra*
                                               VINCENT M. SERRA

                                               58 South Service Road, Suite 200
                                               Melville, NY  11747
                                               Telephone:  631/367-7100
                                               631/367-1173 (fax)
                                               srudman@rgrdlaw.com
                                               vserra@rgrdlaw.com

                                               *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on June 29, 2021, I caused a true and correct copy of the foregoing document to be served on all defense counsel of record by providing them with copies via electronic mail.

*/s/ Vincent M. Serra*
VINCENT M. SERRA

ROBBINS GELLER RUDMAN
  & DOWD LLP
VINCENT M. SERRA
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
vserra@rgrdlaw.com