UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

SCOTT CHOLEWA, individually and on
behalf of all others similarly situated,

             Plaintiff,

    -against-

CVS HEALTH CORPORATION and NICE-
PAK PRODUCTS, INC.,

             Defendants.

------------------------------------------------------------

Case No. 1:20-cv-05483

## REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     LAW AND ARGUMENT .......................................................................................2

        A.      Plaintiff understates the scope of the Consent Order, which governs the
                conditions under which Nice-Pak's wipes may be marketed and sold as
                "flushable" through 2035. .........................................................................3

        B.      Publicly available documents and proceedings confirm that the FTC is not
                "inactive" in its oversight of its Consent Order with Nice-Pak. ............................5

                1.   The Eastern District of New York proceedings in the *Belfiore* and
                *Kurtz* cases are not relevant to the FTC's enforcement of the Consent
                Order. ........................................................................................5

                2.   The FTC's commitment to "closely monitor" the Consent Order
                refutes Plaintiff's unsupported claim that the FTC is "inactive." ..........................6

        C.      The primary jurisdiction factors favor dismissal. ...................................................8

                1.   Plaintiff's injunctive relief request asks this Court to decide an issue—
                the "flushability" of Nice-Pak's flushable wipes—that is within the FTC's
                particular field of expertise to address. ...................................................8

                2.   The specific question at issue is particularly within the FTC's
                discretion to resolve. ......................................................................9

                3.   Court-ordered injunctive relief would create a substantial danger of
                inconsistent rulings. ......................................................................9

                4.   The "prior application" factor is irrelevant. ..........................................11

        D.      Plaintiff cannot establish standing to seek nationwide injunctive relief. ...............11

        E.      This Court should strike Plaintiff's claims for a nationwide class because
                it is clear from the face of the Complaint that Plaintiff cannot establish
                personal jurisdiction as to non-New York class members. ....................................12

III.    CONCLUSION ......................................................................................................13

i

# TABLE OF AUTHORITIES

## Cases

*Access Telecomm. v. Southwestern Bell Tel. Co.*,
  137 F.3d 605(8th Cir. 1998) ........................................................................... 8

*B.H. Gold Fields Mining Corp.*,
  506 F. Supp. 2d 792 (N.D. Okla. 2007) ........................................................... 2

*Belfiore v. Procter & Gamble Co.*,
  *311 F.R.D. 42 (E.D.N.Y. 2015)* ............................................................... passim

*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco*,
  137 S. Ct. 1773 (2017) .................................................................................. 12

*City of Wyoming, et al. v. Procter & Gamble Co., et al.*,
  No. 15-cv-02101 JRT-TNL (D. Minn.) ........................................................... 10

*Clark v. Time Warner Cable*,
  523 F.3d 1110 (9th Cir. 2008) ......................................................................... 8

*Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*,
  148 F. Supp. 3d 285 (S.D.N.Y. 2015) ........................................................... 13

*Kurtz v. Kimberly-Clark Corp.*,
  *321 F.R.D. 482 (E.D.N.Y. 2017)* ......................................................... 1, 5, 6, 9

*Meta v. Target Corp.*,
  4:14-cv-00832 (N.D. Ohio Mar. 29, 2018) ................................................. 3, 12

*Palmer v. CVS Health*,
  No. CCB 17-938, 2019 WL 6529163 *4 (D. Md. Dec. 4, 2019) ................... 2, 12

*Petrosino v. Stearn's Prods., Inc.*,
  No. 16-CV-7735(NSR), 2018 WL 1614349, at *3 ......................................... 12

*Reiter v. Cooper*,
  507 U.S. 258 (1993) ......................................................................................... 8

*Shinault v. American Airlines, Inc.*,
  936 F.2d 796 (5th Cir. 1991) ........................................................................... 3

*Shwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.*,
  857 F. Supp. 838 (D. N.M. 1994) .................................................................... 3

## I.    INTRODUCTION

Plaintiff asks this Court to enjoin Nice-Pak and CVS from marketing and selling flushable wipes, which he alleges are deceptively labeled as "flushable," even though the Federal Trade Commission ("FTC") committed to "closely monitor" the accuracy of Nice-Pak's labeling as part of a 20-year Consent Order. Plaintiff does not dispute that the FTC made this commitment, on the record, as part of its formal notice-and-comment process prior to finalizing the Consent Order with Nice-Pak.

Plaintiff spends the majority of the Opposition arguing that this Court should not believe the FTC because "there is no indication that [the agency] is actively monitoring the activities of any Flushable Wipes manufacturer or retailer, let alone those of Nice-Pak and CVS." Pl's Opp. at 2. Publicly available documents refute and discredit Plaintiff's attempt to second-guess the FTC:

- Plaintiff wrongly claims that the FTC "*only* addressed Nice-Pak wipes made of 'non-woven fabric, specifically non-elemental chlorine bleached wood pulp, bicomponent fibers, and EP907 repulpable binder,'" Pl's Opp. at 7, and not products on the market today. But the plain text of the Consent Order covers "all wipes" that Nice-Pak markets as "flushable" over the Consent Order's 20-year duration. *See* Consent Order p. 2, Lewis Decl., Ex. B, *available at* https://www.ftc.gov/system/files/documents/cases/150518nice-pakorder.pdf (last accessed June 30, 2021);

- Plaintiff's discussion of the referral to the FTC in the *Kurtz* and *Belfiore* cases in the Eastern District of New York is not evidence that the FTC is "inactive." To the contrary, the FTC expressly directed the parties and the court to look to its Consent Order with Nice-Pak for guidance on "flushability." *See Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 495 (E.D.N.Y. 2017); and

- Plaintiff's claim that the FTC is "inactive" is irreconcilable with the agency's written commitment to "closely monitor Nice-Pak's future activities to determine whether any violations of the Consent Order occur. *See* Lewis Decl., Ex. A, *available at* https://www.ftc.gov/system/files/documents/cases/151102nice-pakletter.pdf (last accessed June 30, 2021).

These documents prove that the Consent Order *does* apply to the flushable wipes currently sold by Nice-Pak and CVS, rendering injunctive relief inappropriate. Further, these documents—in

combination with Plaintiff's own statements in his Opposition—expose Plaintiff's motives for seeking injunctive relief. Plaintiff disbelieves the FTC when it says it will "closely monitor" Nice-Pak and thinks the Consent Order did not go far enough in regulating Nice-Pak's conduct. This attempt to second-guess the FTC's judgment is precisely what the doctrine of primary jurisdiction exists to prevent.

Plaintiff likewise misconstrues the law in an attempt to salvage his standing to seek nationwide injunctive relief claims. Numerous courts have held that plaintiffs cannot establish standing—*especially* standing to seek injunctive relief—when a plaintiff alleges that he was deceived by a false representation on a consumer product. Indeed, Plaintiff tellingly ignores the decision of another court, which dismissed the same injunctive relief claims involving Nice-Pak and CVS's flushable wipes, brought by the same Plaintiff's counsel, because "the complaint does not contain any allegations of future injury, but instead implies that the [plaintiffs] do not plan on purchasing these wipes in the future." *Palmer v. CVS Health*, No. CCB 17-938, 2019 WL 6529163, *4 (D. Md. Dec. 4, 2019). Plaintiff does not even acknowledge *Palmer* even though his Complaint features the same allegations as *Palmer*. His injunctive relief claims should be dismissed for the same reason.

## II.    LAW AND ARGUMENT

As a threshold matter, Plaintiff's argument that the doctrine of primary jurisdiction is inapplicable to the type of questions raised in this litigation ignores the fact that the focus of Defendants' Motion to Dismiss is Plaintiff's claim for injunctive relief. Compl., Prayer for Relief ¶ E. Such claims naturally implicate primary jurisdiction by overlapping with issues that are within the province of an administrative agency, like the FTC. *See, e.g.*, *B.H. Gold Fields Mining Corp.*, 506 F. Supp. 2d 792, 805 (N.D. Okla. 2007) ("Primary jurisdiction will often be invoked when a plaintiff seeks injunctive relief, because there is the greatest likelihood that a court's order will

interfere with administrative agency's proceedings."); *Shinault v. American Airlines, Inc.*, 936 F.2d 796, 804 (5th Cir. 1991) (permitting plaintiff to proceed with damages claim against airline carrier, but invoking primary jurisdiction to stay claim for injunctive relief); *Shwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.*, 857 F. Supp. 838, 843 (D. N.M. 1994) ("[T]he doctrine of primary jurisdiction is more readily applicable to claims for injunctive relief.").[1]

A.    **Plaintiff understates the scope of the Consent Order, which governs the conditions under which Nice-Pak's wipes may be marketed and sold as "flushable" through 2035.**

In an attempt to cast the Consent Order as irrelevant, Plaintiff states that the FTC's draft complaint, which began the process that led to the Consent Order, only addressed a no-longer-marketed, type of wipe "made of 'non-woven fabric, specifically non-elemental chlorine bleached wood pulp, bicomponent fibers, and EP907 repulpable binder.'" Pl's Opp. at 7. While that is true for the draft complaint, it is untrue for the Consent Order itself, which imposed prospective, *ongoing* obligations on Nice-Pak relevant to *all* of its flushable wipes, including future product.

The Consent Order imposes a continuing obligation on Nice-Pak—still in force today—to market wipes as "flushable" only if Nice-Pak "possesses and relies upon competent and reliable evidence . . . to substantiate that the representation is true." Consent Order p. 2 § I. Plaintiff

---

[1] At one point in his Opposition, Plaintiff references the fact that Nice-Pak has "continued to litigate and settle similar claims in subsequent actions" as inconsistent with its request for primary jurisdiction, citing a settlement in *Meta v. Target Corp.*, 4:14-cv-00832 (N.D. Ohio Mar. 29, 2018). To be clear, *Meta* does not support Plaintiff's point. In *Meta*, the court dismissed the plaintiff's injunctive relief claims after finding that the plaintiff, who had stopped purchasing the flushable wipes at issue, could not be injured again in the same way. *Meta v. Target Corp.*, No. 4:14-cv-00832, 2016 WL 5076089, *3 (N.D. Ohio Sept. 20, 2016). The *Meta* plaintiff could only pursue his already incurred damages allegedly attributable to flushable wipes sold between the years 2010 and 2014 (the EP907 substrate) and discontinued prior to the Consent Order.

3

acknowledges this. Compl. ¶ 63. In addition to prescribing specific standards for these tests,[2]

Consent Order p. 3, § I.A-I.B, requires that Nice-Pak "shall, for five (5) years after the last date of

dissemination of any representation covered by this order, maintain and upon request make

available to" the FTC:

> A.  All advertisements, labeling, packaging, and promotional materials containing the representation;
>
> B.  All materials that were relied upon in disseminating the representation; [and]
>
> C.  All tests, reports, studies, surveys, demonstrations, or other evidence in its possession or control that contradict, qualify, or call into question the representation, or the basis relied upon for the representation, including complaints and other communications with consumers or with governmental or consumer protection organizations.

*Id.* p. 4, § IV. These obligations are not limited to the EP907 substrate, as Plaintiff suggests; the

Consent Order defines "Covered Product" to include "all wipes, including but not limited to

Kirkland Signature Moist Flushable Wipes, and any moist toilet tissue or cloth." *Id.* p. 2.

Plaintiff's argument that the Consent Order process between Nice-Pak and the FTC "was

limited to Nice-Pak's EP907 Wipes and does not (and could not) address the current iterations of

Defendants' Flushable Wipes at issue in this litigation," Pl's Opp. at 15, likewise fails by the plain

---

[2] Plaintiff acknowledges some of the standards set by the FTC, including guidance that to be considered "flushable," Nice-Pak's wipes must "disperse[] in a sufficiently short amount of time after flushing to avoid clogging, or other operations problems in, household and municipal sewage lines, septic systems, and other standard wastewater equipment." Pl's Opp. at 8. Plaintiff, however, argues that the FTC did not go far enough because it "did not address or establish: (1) testing protocols that must be followed; (2) how often testing must be performed, if ever; (3) which independent third party or parties can be used for testing; or (4) any enforcement mechanisms for products that fail testing (*e.g.*, penalties, re-labeling, or removal from retail shelves)." *Id.* at 8. This argument is plainly inconsistent with Plaintiff's argument that the Consent Order did not apply no prospectively and demonstrates the way in which Plaintiff's request for relief reflect nothing more than a policy disagreement with the FTC's standard.

4

language of the Consent Order itself. The FTC knew the EP907 substrate was being taken off the market and acknowledged such in the template letter it required Nice-Pak to send retailers under the terms of the Consent Order. *See* Consent Order, p. 7, Attachment A. Consequently, the only real reason to impose a 20-year enforcement period for the Consent Order was to maintain jurisdiction over Nice-Pak's *future* product. Plaintiff completely ignores this 20-year enforcement period in their Opposition, presumably because it is irreconcilable with their argument that the Consent Order process related only to the EP907 substrate.

### B. Publicly available documents and proceedings confirm that the FTC is not "inactive" in its oversight of its Consent Order with Nice-Pak.

#### 1. The Eastern District of New York proceedings in the *Belfiore* and *Kurtz* cases are not relevant to the FTC's enforcement of the Consent Order.

In its Opposition, Plaintiff repeatedly references proceedings in two Eastern District of New York cases, *Kurtz v. Kimberly-Clark Corp.* and *Belfiore v. Procter & Gamble Co.*, as evidence that the FTC is inactive and "has taken no further action to regulate the advertising or manufacture of Flushable Wipes." Pl's Opp. at 9. *Kurtz* and *Belfiore*, however, have no bearing on either the Consent Order or the FTC's oversight of Nice-Pak. Plaintiff's blurring of the lines between those proceedings and the Consent Order is a transparent attempt to misdirect this Court from the heart of the primary jurisdiction issue. A short procedural overview of the *Kurtz* and *Belfiore* litigation helps dispel this confusion.

*Kurtz* and *Belfiore* were the lead cases filed in the Eastern District of New York before Judge Jack Weinstein. *See Belfiore*, 311 F.R.D. 42, 43-44 (E.D.N.Y. 2015). On October 5, 2015, Judge Weinstein entered an order in *Belfiore* invoking the primary jurisdiction doctrine, staying the litigation, and referring "[t]he issue of an appropriate definition of 'flushable' and related issues" to the FTC. *Id.* at 79. Plaintiff implies in its Opposition that Judge Weinstein's referral to the FTC was a response to the Consent Order with Nice-Pak, interspersing the references to

*Belfiore* and *Kurtz* with factual characterizations of the Consent Order. *See* Pl's Opp. at 6. In reality, however, the referral to the FTC in *Belfiore* had nothing to do with the Consent Order; Nice-Pak was not even a defendant in the action. Judge Weinstein acknowledged the FTC's then-tentative Agreement Containing Consent Order with Nice-Pak in his *Belfiore* opinion, noting that the public comment period was ongoing, but did not base any portion of his reasoning on those proceedings. *See Belfiore*, 311 F.R.D. at 45-47.

The FTC declined to respond to Judge Weinstein's referral, but that is not evidence that it is "inactive" in monitoring the Consent Order. Quite the contrary. When the FTC responded to a query from counsel in the *Belfiore* action, the Commission *directed* the parties to "look to the Nice-Pak final consent order for guidance on the Commission's views regarding representations of 'flushability.'" *Kurtz*, 321 F.R.D. at 495. So, while Plaintiff argues that the FTC "has taken no further action" since the Consent Order, they are really referring to the FTC's regulation of *other manufacturers* than Nice-Pak, who are not subject to the Consent Order, to which the FTC has pointed to as its gold standard for "flushability."

> **2.    The FTC's commitment to "closely monitor" the Consent Order refutes Plaintiff's unsupported claim that the FTC is "inactive."**

Plaintiff's argument that the FTC is "inactive" clashes with the FTC's written commitment to "closely monitor" its Consent Order with Nice-Pak, which amounts to an agency statement that it will *not* be inactive. As Defendants explained in their Motion, the FTC committed in written correspondence to the New York City Law Department to "closely monitor Nice-Pak's future activities to determine whether any violations" of the Consent Order occur, and enforce the Order as necessary with civil monetary penalties.[3] Even though this letter was the centerpiece of the

---

[3]   Lewis   Decl.,   Ex.   A,   *available   at*   https://www.ftc.gov/system/files/documents/cases/151102nice-pakletter.pdf (last accessed June 30, 2021).

Motion to Dismiss filed by Defendants, Plaintiff ignores it but for a single sentence dismissing the letter as stale because it was sent "over six years ago." Pl's Opp. at 2.

The letter from the FTC to the New York City Law Department provides a point-by-point response to the City's concerns. Before this Court entertains Plaintiff's argument that the FTC did not mean what it said when it committed to "closely monitor" the Consent Order, Defendants encourage this Court to review the 71 pages of correspondence between the FTC and entities that provided comments over the six-month comment period, which is publicly available at https://www.ftc.gov/system/files/documents/cases/151102nice-pakletter.pdf (last accessed June 30, 2021).

Unable to prove that the FTC is "inactive," Plaintiff suggests that the Consent Order is inadequate and the FTC's oversight insufficient based on "tests," "studies," and "specifications" conducted by other third parties, including the International Water Services Flushability Group ("ISWFG"), all of which purportedly indicate that flushable wipes, generally, "will not actually break down or dissolve in sewer systems." Pl's Opp. at 4. Setting aside the fact that none of these allegations pertain specifically to the wipes currently manufactured by Nice-Pak or sold by CVS, all this assertion accomplishes is unmask Plaintiff's true motive—mere disagreement with the standards put into place by the FTC. Plaintiff wishes that the FTC had prescribed more rigorous or more specific testing standards than it did, and now asks that this Court agree with it and displace the FTC's judgment with the testing standards for which Plaintiff advocates. Put another way, even though the FTC has said it is actively regulating Nice-Pak's flushable wipes, Plaintiff asks this Court to take control from the FTC and set its own, different, standard. That is the very heart of the problem that the primary jurisdiction doctrine was created to cure.

C.     **The primary jurisdiction factors favor dismissal.**

Even though there is no "fixed formula" for applying primary jurisdiction, the most frequently addressed factors support dismissal. Plaintiff suggests both that primary jurisdiction can be used only to stay (and not dismiss) a case, and that the factors all disfavor primary jurisdiction. Plaintiff is wrong on both counts. Courts *dismiss* cases citing primary jurisdiction when doing so will further the purposes of the doctrine without prejudicing the parties. *See, e.g.*, *Access Telecomm. v. Southwestern Bell Tel. Co.*, 137 F.3d 605, 609 (8th Cir. 1998) (A district court 'has discretion either to [stay the case and] retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice.'") (quoting *Reiter v. Cooper*, 507 U.S. 258, 268 (1993)); *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) ("The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice . . . ."). Here, dismissal makes more sense than a stay given the 20-year term of the Consent Order, which keeps the FTC in charge of overseeing Nice-Pak's compliance through October 2035.

1.     **Plaintiff's injunctive relief request asks this Court to decide an issue—the "flushability" of Nice-Pak's flushable wipes—that is within the FTC's particular field of expertise to address.**

Plaintiff claims that "[t]here is no basis to conclude that the FTC has greater technical expertise or experience than this Court to answer the questions posed by Plaintiff's claims," but this argument fails as a matter of common sense. Pl's Opp. at 10. Plaintiff admits—and indeed, *alleges in the Complaint*—that the FTC investigated Nice-Pak as part of the process that led up to the entry of its Consent Order. Compl. ¶¶ 60-64. It is undisputed that Nice-Pak cooperated with the FTC during that investigation. Thereafter, the FTC undertook a six-month public comment period, which included evaluating and responding to concerns expressed by some 55 different entities. Together, the FTC's investigation and public comment period give the FTC "greater technical expertise" on the issues involved in this litigation.

Indeed, Plaintiff seems to concede that the FTC has—at least as to Nice-Pak—defined the very term, "flushable," that Plaintiff asks this Court to define through its request for injunctive relief. On page 8 of his Opposition, Plaintiff admits that when the FTC responded to a query from counsel in the *Belfiore* action, the Commission *directed* the parties to "look to the Nice Pak final consent order for guidance on the Commission's views regarding 'flushability' representations." Pl's Opp. at 8. Thus, as to Nice-Pak, Plaintiff has alleged that a definition of "flushable" and standards for making that determination are not only within the FTC's technical expertise, but areas the FTC has already addressed.

## 2. The specific question at issue is particularly within the FTC's discretion to resolve.

Plaintiff wrongly argues that the agency discretion factor disfavors primary jurisdiction because "the FTC has already explicitly declined to provide any further clarification or interpretation of the definition of 'flushable' when asked by a court to do so." Pl's Opp. at 12. This is untrue. Plaintiff bases this statement on the FTC's response to the Eastern District of New York in the *Kurtz* and *Belfiore* cases. Yet, as Plaintiff itself acknowledges, the FTC responded by referring the parties and the court to the FTC Consent Order with Nice-Pak "for guidance on [the Commission's] views regarding 'flushability' representations." Pl's Opp. at 8. Put another way, the FTC *itself* has said that the Consent Order with Nice-Pak is the most up-to-date guidance on the definition of flushability. Any attempt by Plaintiff to second-guess that definition by suggesting that the Consent Order is insufficient, as they do in this case, thus relates directly to an issue particularly within the FTC's discretion to resolve.

## 3. Court-ordered injunctive relief would create a substantial danger of inconsistent rulings.

Plaintiff's claim that "[t]here is no risk of inconsistent rulings" posed by this Court presiding over injunctive relief that would overlap with the FTC's Consent Order is belied by the

correspondence between the FTC and the New York City Law Department. Here, Plaintiff's request for court-ordered injunctive relief is an argument that the FTC's Consent Order does not go far enough to regulate Nice-Pak's sale of flushable wipes. That is the *very same* argument made by the New York City Law Department to the FTC when, as part of the notice-and-comment process, it asked the FTC to require Nice-Pak to provide greater substantiation for its "flushability" representations and to take additional enforcement action, including pursuing statutory penalties for violations of the Order. *See generally* Ex. E to the Lewis Decl. In response, the FTC committed to "closely monitor" Nice-Pak's compliance with the Consent Order, but reiterated its position that the Consent Order *itself* provides an adequate set of remedies for New York City's concerns. *See* Ex. A to the Lewis Decl. ("After consideration of your comment, the Commission has determined that the relief set forth in the consent agreement is appropriate and sufficient to remedy the violations alleged in the complaint.").

In other words, Plaintiff's request for injunctive relief is a transparent second-guessing of the FTC. Plaintiff is asking this Court to conclude that the FTC's Consent Order with Nice-Pak did not go far enough to ensure that the wipes it manufactures are "flushable." Granting the injunctive relief that Plaintiff requests will therefore *necessarily* conflict with the Consent Order.

Tellingly, plaintiffs in other flushable wipes litigation have conceded that the Consent Order renders injunctive relief "duplicative" and therefore inappropriate. In litigation filed against flushable wipes manufacturers in the District of Minnesota, *City of Wyoming, et al. v. Procter & Gamble Co., et al.*, No. 15-cv-02101 JRT-TNL (D. Minn.), the plaintiffs took the position during class certification briefing that the Consent Order between Nice-Pak and the FTC leaves them unable to pursue injunctive relief claims against Nice-Pak: "Obviously, any injunctive relief

Plaintiffs could obtain against Nice-Pak would be duplicative of the FTC's relief." (Pls.' Reply in Supp. of Class Cert., Doc. 681 at 31, publicly available version attached as Exhibit F.)

### 4. The "prior application" factor is irrelevant.

Finally, Plaintiff advances a procedural objection to primary jurisdiction, arguing that there is no "pending FTC application." Pl's Opp. at 15. Yet, Plaintiff fails to cite any authority to suggest that the prior application factor is a fixed requirement. Indeed, Plaintiff concedes there is no "fixed formula" for applying the doctrine of primary jurisdiction. *Id.* at 10. More importantly, the need for a "prior application" becomes irrelevant when there is undisputed evidence of an *ongoing* Consent Order between the FTC and the regulated entity on whose behalf the parties are seeking to invoke the doctrine of primary jurisdiction.

Against all of this, Plaintiff attempts to force Defendants to prove a negative. Repeatedly Plaintiff asserts, without support, that the FTC is "inactive" and faults Defendants because they "have not provided the Court with a single instance" of evidence in which the FTC has requested information from Nice-Pak, imposed a fine, or taken enforcement measures. Pl's Opp. at 16. But Defendants have provided this Court with evidence (1) in the form of the FTC's own public commitment to "closely monitor Nice-Pak's future activities" and enforce the Consent Order, *and* (2) in the form of direction provided from the FTC to the parties in *Belfiore* that they should look to the Consent Order for guidance on the FTC's definition of "flushable." In light of those undisputed statements by the agency, the most direct conclusion from agency inaction is not that the FTC is asleep at the wheel, but that the agency is doing what it has said it would do and, simply, has concluded that Nice-Pak is complying with its Consent Order obligations.

### D. Plaintiff cannot establish standing to seek nationwide injunctive relief.

Plaintiff continues to defend his right to seek nationwide injunctive relief even though he expressly alleges in the Complaint that he "stopped purchasing the CVS Flushable Wipes" at issue

in this case. Compl. ¶ 71. Other courts involved in flushable wipes litigation have found similar concessions fatal to claims for nationwide injunctive relief. For example, the court in the *Meta* case, in which Nice-Pak was also a defendant, held that "the undisputed fact that the product formulation purchased and complained of by the Plaintiff is no longer on the market eliminates any need for injunctive relief" because Plaintiff could not be injured again in the same way. *See Meta*, 2016 WL 5076089 at \*3. Likewise, in the *Palmer* case in which the same counsel represented a similarly situated plaintiff, the plaintiffs made almost identical allegations that they "stopped purchasing" flushable wipes from CVS. *See Palmer*, 2019 WL 6529163 at \*4 . This allegation was dispositive as to the plaintiffs' standing—or lack thereof—because it confirmed that "[t]he Palmers do not plausibly allege a likelihood of future injury," and so could not state a claim for injunctive relief.

Plaintiff here acknowledges neither the *Meta* nor *Palmer* rejection of those consumers' injunctive relief theories. Instead, he turns to a single, unpublished, district court decision in a case where the plaintiff affirmatively alleged that she *would* purchase the product in question again, if Defendants changed their labeling to be "truthful." *See Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735(NSR), 2018 WL 1614349, at \*3. Plaintiff here alleges nothing of the sort. Indeed, given Plaintiff's allegations that he believes Nice-Pak and CVS's wipes *are not* flushable because they do not satisfy the criteria and standards he alleges that Nice-Pak should be held to for demonstrating "flushability," there is no alleged likelihood that Plaintiff will purchase the flushable wipes at issue again. *Meta* and *Palmer* are on-point; *Petrosino* is not.

**E.    This Court should strike Plaintiff's claims for a nationwide class because it is clear from the face of the Complaint that Plaintiff cannot establish personal jurisdiction as to non-New York class members.**

Significantly, Plaintiff does not contest that the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco*, 137 S. Ct. 1773 (2017) applies to

nationwide class actions. Rather, Plaintiff's only argument is that addressing the geographic scope of the class is "premature" until the parties reach the class-certification stage. Given Plaintiff's failure to articulate any basis on which a non-New York class member could establish personal jurisdiction over his or her claims *at any stage*, this is an issue that can be decided now—not later—consistent with decisions of other New York federal courts that have concluded that class allegations may be stricken when the overbreadth is clear from the face of the complaint. *Hidalgo v. Johnson & Johnson Consumer Companies, Inc.*, 148 F. Supp. 3d 285, 292 (S.D.N.Y. 2015). Here, it is obvious at this stage that any class consisting of non-New York class members must fail. Common sense and judicial economy support striking these claims from the complaint now, rather than wasting the parties' time and resources revisiting these issues following discovery.

## III.   CONCLUSION

Plaintiff's attempts to evade the application of primary jurisdiction by mischaracterizing the Consent Order underscore the fact that the agency has committed to "closely monitor" the very issues that Plaintiff claims merit injunctive relief. For that reason, among those discussed more fully above, Plaintiff's injunctive relief claims should be dismissed as inconsistent with the FTC's jurisdiction over the Consent Order, as well as for lack of standing to seek injunctive relief in the first place. At the same time, this Court should strike Plaintiffs' class allegations as to non-New York class members who cannot establish personal jurisdiction. Defendants thus respectfully request that this Court grant their Motion to Dismiss.

Respectfully Submitted,

*/s/ John Q. Lewis*
John Q. Lewis
Michael J. Ruttinger
Chelsea M. Croy Smith
Tucker Ellis LLP
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Tel: 216.592.5000
Fax: 216.592.5009
Email: john.lewis@tuckerellis.com
        michael.ruttinger@tuckerellis.com
        chelsea.smith@tuckerellis.com

*Counsel for CVS Health Corporation and Nice-Pak Products, Inc.*

Courtney E. Scott
Tressler LLP
1 Penn Plaza, Suite 4701
New York, New York 10119
Tel: 646.833.0900
Email: cscott@tresslerllp.com
*Counsel for CVS Health Corporation and Nice-Pak Products, Inc.*

14

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on July 6, 2021, a copy of the foregoing ***Reply Memorandum of Law***

***in Support of Motion to Dismiss Class Action Complaint***  was served via email to the following:

Samuel H. Rudman
Vincent M. Serra
Robbins Geller Rudman & Dowd LLP
58 South Service Road, Suite 200
Melville, NY 11747
Tel:     631.367.7100
Fax:    631.367.1173
Email:  srudman@rgrdlaw.com
            vserra@rgrdlaw.com

*Attorneys for Plaintiff*

/s/ *John Q. Lewis*_____
John Q. Lewis

*One of the Attorneys for Defendants CVS*
*Health Corporation and Nice-Pak Products,*
*Inc.*

15

5197893.1

# <u>EXHIBIT F</u>

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Village of Holmen, Wisconsin; City of Elk River, Minnesota; City of Mankato, Minnesota; City of Princeton, Minnesota; City of Fergus Falls, Minnesota; Sauk Centre Public Utilities Commission; and Chisago Lakes Joint Sewage Treatment Commission; on behalf of themselves and all others similarly situated, | Civil No. 15-cv-02101 JRT-TNL |
|      Plaintiffs, | |
| v. | |
| Procter & Gamble Company; Kimberly-Clark Corporation; Nice-Pak Products, Inc.; Professional Disposables International, Inc.; Tufco Technologies Inc.; and Rockline Industries, | |
|      Defendants. | |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR
## MOTION FOR CLASS CERTIFICATION

### (REDACTED)

**TABLE OF CONTENTS**

Introduction ................................................................................................................ 1

Argument .................................................................................................................... 3

I.    In Opposing Class Certification, Defendants Ignore Their Own Documents and Testimony ................................................................. 3

II.    Plaintiffs Have Ample Evidence That They Are "Likely To Be Damaged" By Defendants' False, Misleading and Deceptive Statements About Their Wipes ............................................ 7

    A.    Elk River ................................................................................. 8

    B.    Mankato ................................................................................. 9

    C.    CLJSTC ................................................................................. 10

    D.    Fergus Falls .......................................................................... 12

    E.    Holmen ................................................................................. 12

    F.    Sauk Centre .......................................................................... 13

    G.    Princeton ............................................................................... 13

III.    Plaintiffs and Their Counsel Satisfy the Adequacy Criteria ...................... 14

    A.    Plaintiffs Properly Seek Rule 23(b)(2) Certification ...................... 15

    B.    Plaintiffs' Individual Settlements Do Not Result in a Conflict ....... 21

    C.    Defendants' Claims Regarding Future Harm are False .................. 24

        1.    Defendants are Wrong on the Law ....................................... 24

        2.    Plaintiffs Have Ample Evidence Establishing They are "Likely to Be Damaged" by Defendants' Flushable Wipes . 27

        3.    Plaintiffs Are Active Participants in the Litigation .............. 34

IV.    Plaintiffs Satisfy Commonality and Typicality, a Rule 23(b)(2) Class Should be Certified .............................................. 36

    A.    Plaintiffs have met Rule 23(a)(2) Commonality Requirement ........ 36

    B.    Plaintiffs have met the Rule 23(a)(3) Typicality Requirement ........ 41

    C.    Plaintiffs' Proposed Classes are Cohesive ................................. 44

V.    Defendants' Standing Arguments are Without Merit ................................. 47

    A.    Plaintiffs do not need to Present Evidence of Harm to Absent Members ................................................................. 47

B.      Plaintiffs' Proposed Class Definition Does not Defeat a
Finding of Standing as to Absent Class Members ........................... 49

C.      Regardless, There is Ample Evidence of Harm to Absent
Class Members ....................................................................... 50

VI.      Plaintiffs' Have Satisfied Rule 23(b)(1) ......................................... 51

A.      The Classes Satisfy Rule 23(b)(1)(A) ................................. 51

B.      The Classes Satisfy Rule 23(b)(1)(B) ................................. 54

Conclusion ..................................................................................... 55

# TABLE OF AUTHORITIES

Cases                                                                              Page(s)

*Alsides v. Brown Institute, Ltd.,*
   592 N.W.2d 468 (Minn. App. 1999) ................................................................. 26

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) .......................................................................................... 14

*Andren v. Alere, Inc.,*
   Case N. 16cv1255-GPC(AGS), 2017 WL 6509550 (S.D. Cal. Dec. 20, 2017) ........... 19

*Ang v. Bimbo Bakeries USA, Inc.,*
   Case No. 13-cv-01196-HSG, 2018 WL 4181896 (N.D. Cal. Aug 31, 2018) ............... 16

*Avritt v. Reliastar Life Ins. Co.,*
   615 F.3d 1023 (8th Cir. 2010) ................................................................. 48, 49

*Back Doctor Ltd. v. Metro Prop & Cas. Ins. Co.,*
   637 F.3d 827 (7th Cir. 2011) ........................................................................... 19

*Bhatia v. 3M Co.,*
   323 F. Supp. 3d 1082 (D. Minn. 2018) ................................................... 26, 37

*Brown v. Kerkhoff,*
   279 F.R.D. 479 (S.D. Iowa 2012) .................................................................... 18

*Brown v. Wells Fargo & Co.,*
   284 F.R.D. 432 (D. Minn. 2012) ..................................................................... 53

*Buetow v. A.L.S. Enterprises, Inc.,*
   650 F.3d 1178 (8th Cir. 2011) ................................................................. 25, 27

*Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n,*
   624 F.3d 185 (5th Cir. 2010) ........................................................................... 52

*Chicago Teachers Union Local No. 1 v. Board of Education of the City of Chicago,*
   797 F.3d 426 (7th Cir. 2015) ........................................................................... 17

*Chmieleski v. City Prod. Corp.,*
   71 F.R.D. 118 (W.D. Mo. 1976) ..................................................................... 52

*City of Wyoming v. Procter & Gamble Co.*,
    210 F. Supp. 3d. 1137 (D. Minn. 2016) .................................................. 17, 23

*Colon v. Passaic Cty.*,
    No. CIV.A. 08-CV-4439 DM, 2009 WL 1560156 (D.N.J. May 27, 2009) ................. 39

*Costas v. City of Fond du Lac*,
    129 N.W.2d 217 (Wis. 1964) ............................................................. 26, 28

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ......................................................... 3, 5, 7, 9

*Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*,
    276 F.3d 1150 (9th Cir. 2002) ................................................................. 24

*DeBoer v. Mellon Mortg. Co.*,
    64 F.3d 1171 (8th Cir.1994) ............................................................... 43, 47

*Denney v. Deustche Bank AG*,
    443 F.3d 253 (2d Cir.  2006) ................................................................... 49

*Drinkman v. Encore Receivable Management, Inc.*,
    No. 07-C33-S, 2007 WL 4458307 (W.D. Wis. Dec. 7, 2007) ............................ 15

*Ebert v. General Mills, Inc.*,
    823 F.3d 472 (8th Cir. 2016) ......................................................... 17, 44, 47

*Ebin v. Kangadis Food, Inc.*,
    297 F.R.D. 561 (S.D.N.Y. 2014) ............................................................. 37

*Eisenberg v. Gagnon*,
    766 F.2d 770 (3d Cir. 1985) ................................................................... 39

*Estate of Mahoney v. R.J. Reynolds Tobacco Co.*,
    204 F.R.D. 150 (S.D. Iowa 2001) ............................................................ 42

*Fogie v. Rent–A–Center, Inc.*,
    867 F. Supp. 1398 (D. Minn.1993) ........................................................... 52

*Foster v. St. Jude Med., Inc.*,
    229 F.R.D. 599 (D. Minn. 2005) .............................................................. 18

*Gardner v. First Am. Title Ins. Co.*,
    No. CIV.00-2176(RHK/AJB), 2003 WL 221844 (D. Minn. Jan. 27, 2003) ........... 42, 43

*Gardner v. GMAC, Inc.*,
    796 F.3d 390 (4th Cir. 2015) ......................................................................... 20

*Geary v. Green Tree Servicing, LLC*,
    Case No. 2:14-CV-00522, 2017 WL 2608691 (S.D. Ohio  June 16, 2017) ................. 15

*Gooch v. Life Investors Insurance Co. of America*,
    672 F.3d 402 (6th Cir. 2012) ......................................................................... 17

*Group Health Plan, Inc. v. Phillip Morris*,
    621 N.W. 2d. 2 (Minn. 2001) ........................................................................ 40

*Hartley v. Suburban Radiologic Consultants Ltd.*,
    295 F.R.D. 357 (D. Minn. 2013) .................................................................... 36

*Hassine v. Jeffes*,
    846 F.2d 169 (3d Cir. 1988) ......................................................................... 39

*Henderson v. Burd*,
    133 F.2d 515 (2d Cir. 1943) ......................................................................... 25

*Hernandez v. Midland Credit Mgmt., Inc.*,
    236 F.R.D. 406 (N.D.Ill.2006) ...................................................................... 35

*In re Baycol Prod. Litig.*,
    218 F.R.D. 197 (D. Minn. 2003) .................................................................... 41

*In re Potash Antitrust Litig.*,
    159 F.R.D. 682 (D. Minn. 1995) .................................................................... 42

*In re Simon II Litig.*,
    407 F.3d 125 (2d Cir. 2005) ......................................................................... 54

*In re St. Jude Med., Inc. Silzone Heart Valves Prod. Liab. Litig.*,
    No. MDL 01-1396 JRTFLN, 2003 WL 1589527 (D. Minn. Mar. 27, 2003) ............... 52

*In re Target Corporation Customer Data Security Breach Litig.*,
    MDL No. 14-2522 (PAM), 2017 WL 2178306 (D. Minn. May 17, 2017) ....... 14, 21, 38

*In re Teflon Products Liability Litigation*,
    254 F.R.D. 354 (S.D. Iowa 2008) .................................................................. 18

*In the Matter of NICE-PAK PRODUCTS, INC.,*
    2015 WL 7009345 (F.T.C. Oct. 30, 2015) ....................................................... 21, 22, 32

*Jones v. Berge,*
    172 F. Supp. 2d 1128 (W.D. Wis. 2001) ....................................................... 15

*Khoday v. Symantec Corp.,*
    Civil No. 11-180 (JRT/TNL), 2014 WL 1281600 (D. Minn. March 13, 2014) ........... 35

*Krueger v. Ameriprise Financial, Inc.,*
    304 F.R.D. 559 (D. Minn. 2004) ................................................................ 52

*Kurtz v. Kimberly–Clark Corporation,*
    321 F.R.D. 482 (E.D.N.Y. 2017) ...........................................................*passim*

*Lockwood Motors, Inc. v. Gen. Motors Corp.,*
    162 F.R.D. 569 (D. Minn. 1995) .............................................................. 41, 42

*Looney v. Chesapeake Energy Corp.,* 2:15-CV-02108,
    2016 WL 7638467 (W.D. Ark. Sept. 23, 2016) ....................................... 23, 24

*McReynolds v. Richards–Cantave,*
    588 F.3d 790 (2d Cir. 2009) ..................................................................... 16

*Mendez v. The Radec Corp.,*
    260 F.R.D. 38 (W.D.N.Y. 2009) ......................................................... 20, 21, 22

*Meta v. Target Corporation,* 4:14 CV 832,
    2016 WL 5076089 (N.D. Ohio Sept. 20, 2016) ................................................ 2

*Murray v. GMAC Mortg. Corp.,*
    434 F.3d 948 (7th Cir. 2006) ..................................................................... 19

*Parko v. Shell Co.,*
    739 F.3d 1083 (7th Cir. 2014) ................................................................... 45

*Paxton v. Union Nat'l Bank,*
    688 F.2d 552 (8th Cir. 1982) ............................................................... 15, 17

*Payne v. Tri-State CareFlight, LLC,*
    No. CIV 14-1044 JB\KBM, 2018 WL 4603810 (D.N.M. Sept. 25, 2018) ................. 54

*Petrovic v. Amoco Oil Co.,*
    200 F.3d 1140 (8th Cir. 1999) ................................................................... 38

*Pettit v. Procter & Gamble Company*,
    Case No. 15-cv-02150-RS, 2017 WL 3310692 (N.D. Cal. Aug. 3, 2017) .................... 2

*Portz v. St. Cloud State University*,
    297 F. Supp. 3d 929 (D. Minn. 2018) ............................................................. 14, 34, 35

*Postawko v. Missouri Department of Corrections*,
    No. 2:16-cv-04219-NKL, 2017 WL 3185155 (W. D. Mo. July, 26, 2017) ................ 15

*Richards v. Jeffrson Cty.*,
    517 U.S. 793 (1996) .................................................................................................. 20

*Ruland v. Gen. Elec. Co.*,
    94 F.R.D. 164 (D. Conn. 1982) .................................................................................. 53

*See Todd v. Tempur-Sealy International, Inc.,* Case No. 13-cv-04984-JST,
    2016 WL 5746364 (N.D. Cal. Sept. 30, 2016) ........................................................... 19

*Simmons v. Modern Aero, Inc.*,
    603 N.W.2d 336 (Minn. Ct. App. 1999) ............................................................... 25, 26

*Smith v. Brown & Williamson Tobacco Corp.*,
    174 F.R.D. 90 (W.D. Mo. 1997) ............................................................................... 53

*Sonmore v. CheckRite Recovery Servs., Inc.*,
    206 F.R.D. 257 (D. Minn. 2001) ............................................................................... 36

*Stewart v. Winter*,
    669 F.2d 328 (5th Cir. 1982) ............................................................................... 15, 16

*Suchanek v. Sturm Foods, Inc.*,
    764 F.3d 750 (7th Cir.2014) ..................................................................................... 38

*Thompson v. Am Tobacco Co.*,
    189 F.R.D. 544 (D. Minn. 1999) ......................................................................... 18, 43

*Town of East Troy v. Soo Line R. Co.*,
    653 F.2d 1123 (7th Cir. 1980) ................................................................................... 26

*United States v. Pugh*,
    717 F. Supp. 2d 271 (E.D.N.Y. 2010) ...................................................................... 25

*Wadena Implement Co. v. Deere & Co., Inc.*,
    480 N.W.2d 383 (Minn. App. 1992) .......................................................................... 25

*Wal-Mart v. Dukes*,
  564 U.S. 338 (2011)..............................................................37, 47

*Ward v. Dixie Nat'l Life Ins. Co.*,
  595 F.3d 164 (4th Cir. 2010) .............................................................. 14

*White v. Nat'l Football League*,
  822 F. Supp. 1389 (D. Minn. 1993)....................................53, 54, 55

*Wildlife Research Center, Inc. v. Robinson Outdoors, Inc.*,
  409 F. Supp. 2d 1131 (D. Minn. 2005)..................................*passim*

Statutes

Minn. Stat. § 325D.13 ...............................................................23, 26
Minn. Stat. § 325D.15 ......................................................................27
Minn. Stat. § 325D.44(1).............................................................25, 37
Minn. Stat. § 325D.45(1)..................................................................25
Minn. Stat. § 325D.45(3)..................................................................26
Wis. Stat. §823.01.......................................................................26, 37

Rules

Fed. R. Civ. P. 23............................................................................16, 20
Fed. R. Civ. P. 23(a) ...........................................................................47
Fed. R. Civ. P. 23(b)(2) ...............................................................*passim*
Fed. R. Civ. P. 23(b)(3) ......................................................17, 18, 19
Fed. R. Civ. P. 23(c)(2)(A).................................................................16

Other Authorities

7AA Wright & Miller § 1775 .............................................................47
Newberg on Class Actions § 4:38 .....................................................17

## INTRODUCTION

In their zeal to oppose Plaintiffs' Motion for Class Certification, Defendants, Kimberly-Clark and Rockline ("Defendants") essentially admit that the labeling of their wipes is false or misleading. Hoping to persuade the Court that individual issues abound, they highlight the differences between Plaintiffs' equipment, operating conditions, water temperature, age, and flow, among other things. But if in fact these differences exist and if it is a "highly individualized inquiry" whether Defendants' wipes may harm a particular sewer system, how can Defendants market that their wipes are "flushable" and "sewer system safe" nationally in all these different conditions?

That is precisely Plaintiffs' point; they cannot. Plaintiffs have concrete evidence, including Defendants' own admissions, that their wipes are not suitable for flushing in all sewer systems because they are proven *not* to disperse—like toilet paper—in cold, hard, low flow sewage water. Defendants cannot truthfully tell consumers their wipes are "flushable," "sewer system safe," and provide the directive to dispose of them in a toilet, when individual sewer conditions impact their dispersibility, rendering those unconditioned, nationwide, uniform claims false and misleading.

Plaintiffs seek to enjoin Defendants' "flushability" and "sewer safe" marketing claims pursuant to specific statutes in both Minnesota and Wisconsin, which grant them standing to do so. Under Minnesota law, injunctive relief is permitted to thwart deceptive practices regardless of damages or other remedies at law. A party need only prove that they are "likely to damaged" or "threatened with loss, damage, or injury" by the false or misleading statements. Similarly, under Wisconsin law, when money damages are

impossible to determine, pursuant to statute, an injunction is appropriate to abate a public nuisance. The record evidence more than adequately establishes these requirements.

The central focus at trial will be whether the Defendants' claims of "flushability" and "sewer system safe" are false, misleading and deceptive in light of the naturally occurring conditions in Minnesota and Wisconsin sewers. *See Kurtz v. Kimberly–Clark Corporation*, 321 F.R.D. 482, 547 (E.D.N.Y. 2017) (granting Rule 23(b)(2) certification and holding that "an injunction prohibiting defendants from labeling their products as 'flushable' and 'safe for sewer and septic systems' would provide a single solution, applicable to each class member."); *see also Pettit v. Procter & Gamble Company*, Case No. 15-cv-02150-RS, 2017 WL 3310692, at *3 (N.D. Cal. Aug. 3, 2017) ("[Plaintiff] produce[d] evidence that Freshmates are not suitable for sewers, wastewater systems, and the environment—evidence from which it can be resolved whether the 'flushable" label is false according to [plaintiff's] theory—which is that Freshmates are not "flushable' because they are not safe for sewers, wastewater systems, and the environment. [Plaintiff] has produced common evidence to resolve an asserted common contention."); *Meta v. Target Corporation*, 4:14 CV 832, 2016 WL 5076089, at *4 (N.D. Ohio Sept. 20, 2016) (granting class certification concluding that "[t]he basic question of fact remaining in this case is whether the Defendants' product is 'flushable,' 'sewer and septic safe' and/or 'breaks apart after flushing' as stated on its packaging/label. This question is common to all users of the product…").

Defendants do not—because they cannot—distinguish any of the cases that have already certified similar Rule 23 classes regarding claims of flushable and sewer safe. Nor

do they explain how the Ninth Circuit's conclusion that injunctive relief is particularly appropriate in these cases because it "would prohibit Kimberly-Clark from using the term 'flushable' on their wipes until the product is truly flushable." *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 972 (9th Cir. 2018).

At bottom, the focus is not on any particular wastewater facility, but rather the Defendants' claims that their wipes are universally flushable and sewer system safe in Minnesota and Wisconsin. Plaintiffs have voluminous evidence that these claims are *knowingly* false and misleading, and that evidence applies equally to all class members. Plaintiffs have readily satisfied all the elements of Rule 23(a), including adequacy, as well as Rule 23(b)(1) and (b)(2), the classes, therefore should be certified.

## ARGUMENT

### I. In Opposing Class Certification, Defendants Ignore Their Own Documents and Testimony



Ex. 1[1] (KCC-Wyoming-00100125-129) ; *see also* Ex. 2 (KCC-Wyoming-00055332-5334)

Yet, neither Defendant can claim that their wipes disperse

---

[1] All citations to "Ex. __" are to the Declaration of Daniel E. Gustafson, filed herewith.

like toilet paper in any environment; in fact, both disclaim such a representation. *See* ECF No. 549, Ex. 33 (Rockline0006363) ████████████████████

████████████████████████████████████████

████████████████

In fact, Kimberly-Clark cannot dispute that its wipes fail to disperse at all (or just minimally) in cold water. Beyond the evidence Plaintiffs adduced both in discovery and from the experts, Kimberly-Clark withheld considerable evidence until after the close of discovery which demonstrates that Kimberly-Clark views its wipes' failure to perform in cold water as a serious concern, and one it is continuing to devote considerable resources to fix. Indeed, as part of its post-discovery document production, ████████████████

████████████████████████████████████████

████████████████████████ Ex. 3 (KCC-Wyoming-117254-269 ████

████████████████████████████████████████

████████████████████████████████████████;

Ex. 4 (Powling Tr., 143:6-16) ████████████████████

████████████████████████████████████████

████████████████████████████.

Likewise, Rockline does not, because it cannot, dispute its wipes require significant agitation to disperse and will not disperse in low flow sewage environments. ████████

████████████████████████████████████████

████████████████████████ Ex. 5 (KCC-Wyoming-00121315).



Defendants' suggestion that Plaintiffs have no disagreements with INDA's testing methodologies, "including the municipal pump," is baffling. Def. Br. at 40-41. Plaintiffs described in detail how the municipal pump test is unrealistic, not reflective of real-world conditions, and that the testing parameters were rigged by INDA's members. ECF No. 527 at 11-13 ("Plfs.' Br."). ECF No. 551, Ex. 36 (Rockline0000470). Ex. 6 (KCC-Wyoming00089941)

All of this, of course, dovetails with Defendants' motivations in attacking the decision by Plaintiffs' expert, Dr. Menna, to test both Kimberly-Clark and Rockline's wipes in chilled, low flow conditions in the slosh box. However, those criticisms are

entirely unfounded and rejected by basic engineering principles. JAMES F. THORPE & WILLIAM H. MEDDENDORF, WHAT EVERY ENGINEER SHOULD KNOW ABOUT PRODUCT LIABILITY (1979) at 39 (for product design and testing "the engineer should develop an accelerated test that truly represents in-use conditions *at elevated stress levels.*") (emphasis added). Obviously, if the wipe would break down in 40° F water (a temperature Plaintiffs measured in wastewater), then it would necessarily break down at 45°, 55°, and 60°. Beyond basic engineering, that's just common sense. The same holds true for lowering the agitation levels in the slosh box; if the wipe breaks down with low turbulence in a short duration (just like toilet paper), then it will do so in high turbulence, both conditions which occur in wastewater systems. Ex. 7 (Fergus Falls 30(b)(6) Dep., at 54:10-16) ("[c]old weather causes a decrease in flow in the system.").

As detailed in Plaintiffs' opening brief, Defendants' testing and "industry" standards are intended solely to support their marketing claims of "flushable" and "sewer safe." They do not, however, demonstrate that a wipe is safe for flushing, will break down in a sufficient amount of time so as not to harm wastewater systems or increase the costs for raking, removing, and transporting the remaining waste off site for disposal. ████████████

████████████████████████████████████

*See* Ex. 8 (KCC-Wyoming-0005060) ████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████

Lastly, Defendants' claim that "wastewater treatment systems" have performed "collection studies" that support a finding that flushable wipes do not cause harm is simply not true. The majority of those studies were sponsored, designed, executed, manipulated, and authored by INDA's membership, including Kimberly-Clark's employee David Powling. For those that were not, the results were rejected as unscientific and unreliable by the very entities that commissioned them. *See* ECF No. 673 (Plfs' reply motion to exclude Defendants' expert, Mr. Johnson). Mr. Johnson relies almost exclusively on these so-called "collection studies" for his methodological approach. *Id*. As Plaintiffs conclusively demonstrate, neither those collection studies, nor Johnson's study, have any scientific support worthy of this Court's consideration. *Id*.

## II. Plaintiffs Have Ample Evidence That They Are "Likely To Be Damaged" By Defendants' False, Misleading and Deceptive Statements About Their Wipes

The Plaintiffs are publicly funded wastewater systems that operate on tax dollars for the health and welfare of the public. Their employees have difficult jobs – they are subjected to hazardous waste, dangerous conditions, and grueling weather. The evidence conclusively establishes that flushable wipes do not disperse like toilet paper. And, after they were introduced to the market, Plaintiffs saw a dramatic increase in clogging, plugging and maintenance. Based on their experiences, Plaintiffs agree that flushable wipes are harmful to their wastewater systems, likely to cause damage, and should not be flushed. Plaintiffs all seek the same relief: Defendants should be enjoined from marketing their wipes as flushable.

### A.   <u>Elk River</u>

Elk River started experiencing issues related to flushable wipes "in at least 2005, and the problems have only increased since then." ECF No. 529-13, Ex. 63 at 43 (Elk River Interrogatory Responses, at Interrogatory No. 1). Elk River is confident that flushable wipes are flushed by Elk River residents because "when someone goes and buys a package that says flushable wipes, they assume that when they're done with it they're supposed to flush them down the toilet." Ex. 9 (Elk River Rule 30(b)(6) Dep., at 267:12-17). Elk River employee Dale Eckert testified that Elk River has had to increase the number of times a year it manually cleans the bar screen at one of its lift stations because of the material that builds up has "got[ten] worse over the years." Ex. 10 (D. Eckert Dep., at 19:11-13).

Elk River has been—and will continue to be—damaged because "the labeling of flushable wipes has convinced people in the City of Elk River to believe—it's just like flushing toilet paper down your drains. And it's caused many, many call-outs for operators to respond to lift stations and unplug pumps in all hours of the night. And I believe the pumps have needed to be replaced because of it and impellers needed to be changed because of it." ECF No. 529-1, Ex. 4 at 27 (Elk River Rule 30(b)(6) Dep., at 145:12-146:1).

Elk River testified that it "pulled blockages, clogs, rags, out of the system that made [it] believe [it was] having an issue with flushable wipes." *Id.* at 25 (Elk River Rule 30(b)(6) Dep. 111:19-24). All it hopes to get out of this litigation is for Defendants to remove the words "flushable" from the packaging of their wipes. Ex. 11 (Elk River Rule 30(b)(6) Dep. 130:12-19).

## B. **Mankato**

Mankato first began to conduct maintenance due to the presence of flushable wipes in approximately 2004, and in 2009 it had to replace and modify equipment because flushable wipes in the system had become such a significant issue. Ex. 12 (Mankato Interrogatory Responses, at Interrogatory No. 1). Mankato has seen a significant increase in clogs at its two largest lift stations since flushable wipes came on the market. At its Monks lift station, it now experiences pump clogs one to two times per week, which rarely occurred in the past. Ex. 13 (Mankato Rule 30(b)(6) Dep., at 183:24-184:10).[2] It also must vacuum a mat of solid material off the surface of the station's wet well every week, which is a change from the past. *Id*. at 184:10-12.

Mankato concluded it was flushable wipes, and not baby wipes or some other material that already existed in the market, because it was material that they had not encountered in the system before that time. Ex. 14 (Mankato Rule 30(b)(6) Dep., at 34:21-36:1) (testifying that Mankato began to experience more clogs in 2004-2005 and the material they were pulling out was different than what they had pulled out of pumps in the past). Mankato testified that it has rarely seen paper towel, facial tissues, or sticks and other debris clog lift stations, *id*. (Mankato Rule 30(b)(6) Dep., at 48:21-49:5), whereas after Mankato started seeing a different kind of material causing many clogs in 2004-2005. *Id*. at 45:11-46:12. Prior to this litigation, Mankato attempted to collect flushable wipes from its system to determine where they were coming from but had to stop because there were

---

[2] Pump clogs occur because flushable wipes get caught inside the pump and slowly build up until a clog occurs. Ex. 15 (B. Bollman Dep., at 47:4-6).

so many flushable wipes, they could not handle the volume or "dedicate that much time to tracking down where the flushable wipes were coming from." Ex. 16 (J. Gad Dep., at 18:10-18). This additional impact forced to make significant efforts to inform residents about the issues flushable wipes cause to its sewer system. In August 2016, it posted a video to its city website informing residents not to flush any wipes, including those labeled as flushable, and also published the same video to YouTube and the Mankato Facebook page. Ex. 12 (Mankato Interrogatory Responses, at Interrogatory No. 10).

When asked what it hoped to get out of this case, the answer was simple, "stop the flushable label or be marketed as flushable when it doesn't break down." Ex. 14 (Mankato Rule 30(b)(6) Dep., at 40:18-22).

### C.   **CLJSTC**

CLJSTC began experiencing issues with flushable wipes in 2006. ECF No. 529-13, Ex. 62 at 23 (CLJSTC Interrogatory Responses, at Interrogatory No. 1). In 2009, CLJSTC replaced the controls in one of its lift stations to help with flushable wipes issues the lift station was experiencing. *Id.* at 27 (CLJSTC Interrogatory Responses, at Interrogatory No. 3). In 2014, CLJSTC completely remodeled one of its lift stations with new pumps that have impellers that can more easily pass flushable wipes without clogging. *Id*. CLJSTC's Rule 30(b)(6) witness testified that he uses Equate brand flushable wipes in his home (although does not flush them), so he is aware of what they look and feel like and believes that flushable wipes are present in CLJSTC's system. ECF No. 529-14, Ex. 75 at 75 (CLJSTC Rule 30(b)(6) Dep., at 33:13-34:16).

Even if a flushable wipe passes through all lift station pumps and reaches the wastewater treatment plant, it may have caused wear to pumps along the way, including by getting stuck in a "wear ring" of a pump. *Id.* at 81 (CLJSTC Rule 30(b)(6) Dep., at 74:7-77:5) (Q: Okay. And if the flushable wipe makes it through the whole system without causing any harm to the system, to the pumps, would that be satisfactory to you? A: The problem is it's gone through multiple pumps by the time it gets there, so it may have caused issues somewhere along the line… Q: Okay. So if – so it sounds like you're saying that if it gets stuck in a wear ring, if it gets clogged in a pump, then it's a problem but I'm saying if it goes through the whole system without causing a problem, why isn't that not [sic] satisfactory? A: I guess you're missing what I'm saying, I'm saying it could have been an issue somewhere along the line. It could have been a portion of a mass at one time on top of a lift station and then at some point been pulled down and sent through. So, along the way it could have caused some issues."). Even if flushable wipes do not make up 100% of the material found in Plaintiffs' wastewater systems, the flushable wipes are "getting in and binding everything up and causing the issue that's forcing the frequent [lift station] cleanings." *Id.* at 92 (CLJSTC Rule 30(b)(6) Dep., at 230:21-231:10).

CLJSTC is pursuing this litigation to "try to get, one, flushable wipes either manufactured in a different way so they do break down in the system or get them re-branded, so they're not labeled flushable." *Id.*at 80 (CLJSTC Rule 30(b)(6) Dep., at 73:17-23); *see also* Ex. 17 (CLJSTC Rule 30(b)(6) Dep., Ex. 6) (CHI00041740).

### D.    **Fergus Falls**

Fergus Falls began experiencing issues with flushable wipes in August 2006. Ex. 18 (Fergus Falls Interrogatory Responses, at Interrogatory No. 1). Fergus Falls believes flushable wipes are the underlying cause of its increase in clogs and maintenance because, prior to 2006, tree roots were the largest issue in the system, but after 2006, it began encountering wet rags in pumps and lift stations, as well as at the wastewater treatment plant. ECF No. 529-1, Ex. 3 at 19 (Fergus Falls 30(b)(6) Dep., at 47:15-48:8) (also testifying that paper towels and feminine products were on the market before flushable wipes, and Fergus Falls was not experiencing the sort of clogging problems it is now). As a result, Fergus Falls has informed residents and businesses that they should not flush wipes, including flushable wipes. Fergus Falls' Director of Public Works (title) testified that, through this litigation, Fergus Falls seeks to "change[] the marketing strategy of these types of materials to not say flushable." Ex. 19 (L. Taylor Dep., at 60:11-16).

### E.    **Holmen**

Holmen began experiencing issues with flushable wipes in at least 2011. Ex. 20 (Holmen Interrogatory Responses, at Interrogatory No. 1). In 2014, Holmen sent a letter to Holmen residents served by a lift station that experienced ongoing clogging, informing them not to flush wipes. *Id.* at Interrogatory No. 10. Starting in approximately 2011, Holmen began to notice thick mats of fibrous material building up on the surfaces of its lift stations, bound together by grease that is also present in the system. ECF No. 529-14, Ex. 73 at 60 (Holmen 30(b)(6) Dep., at 35:9-25). Although these mats of material had to be cleaned, the real issue was that this same fibrous material, presumably flushable wipes,

began clogging pumps. *Id.* at 61 (Holmen 30(b)(6) Dep., at 38:6-11. Since 2011, Holmen has had to perform more frequent cleanings of the romomat, which is at the entrance to the wastewater treatment plant, because of the amount of flushable wipes entering the system at that point. Ex. 21 (Holmen 30(b)(6) Dep., at 119:25-120:15).

### F.  Sauk Centre

Sauk Centre began experiencing issues with flushable wipes in approximately 2010. Ex. 22 (Sauk Centre Interrogatory Responses, at Interrogatory No. 1). Like other municipalities, Sauk Centre has made efforts to inform residents not to flush flushable wipes. It issued a notice to all customers informing them not to flush wipes. It also posted a link on its website to a segment form the Dr. Oz show regarding flushable wipes. *Id.* at Interrogatory No. 10).

Sauk Centre testified, "I saw the difference really loud and clear from all my years of doing this, before and after flushable wipes [came on the market]." Ex. 23 (Sauk Centre 30(b)(6) Dep., at 65:12-16). "I think we can say that Walmart and other stores sell flushable wipes in town and those are in our system." *Id.* at 92:3-7).

### G.  Princeton

Princeton began experiencing issues with flushable wipes in approximately March 2011. ECF No. 529-13, Ex. 66 at 775 (Princeton Interrogatory Responses, at Interrogatory No. 1). Princeton issued a flyer to residents multiple times informing them that various materials, including wipes, should not be flushed down the toilet. *Id.* at 786 (Princeton Interrogatory Responses, at Interrogatory No. 10). Nelson Electric, a third-party contractor Princeton uses to work on its pumps, including to clear clogs, has stated that Princeton is

not the only city he has seen experiencing increased pump clogging by flushable wipes. Ex. 24 (Princeton 30(b)(6) Dep., at 162:19-163:5). Princeton joined this lawsuit to "make sure that anything that appears to the general public as a flushable anything degrades at the same rate as toilet paper." *Id.* at 209:12-17.

## III. Plaintiffs and Their Counsel Satisfy the Adequacy Criteria

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent" *Portz v. St. Cloud State University*, 297 F. Supp. 3d 929, 947 (D. Minn. 2018) (*quoting Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)). The question for the Court is not "whether there is any potential or theoretical conflict among class members, it is whether class members' different interests are antagonistic to each other." *In re Target Corporation Customer Data Security Breach Litig.*, MDL No. 14-2522 (PAM), 2017 WL 2178306, at *3 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018). "For a conflict of interest to defeat the adequacy requirement, 'that conflict must be fundamental.'...Moreover, a conflict will not defeat the adequacy requirement if it is 'merely speculative or hypothetical.'" *Id.* (quoting *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010)).

According to Defendants, Plaintiffs and their counsel are inadequate because they did not seek to certify a Rule 23(b)(3) damages class; they settled with certain defendants individually; they lack evidence of harm; and are disinterested in the ligation. Def. Br. at 47. Defendants are wrong on the law and facts.

## A.  Plaintiffs Properly Seek Rule 23(b)(2) Certification

First, it is settled law that a named plaintiff's individual claim for damages does not disqualify them from being an adequate class representative. *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 573-575 (8th Cir. 1982) (ordering simultaneous Rule 23(b)(2) injunctive relief and individual damages); *Postawko v. Missouri Department of Corrections*, No. 2:16-cv-04219-NKL, 2017 WL 3185155, at *12 (W. D. Mo. July, 26, 2017) (*citing Stewart v. Winter*, 669 F.2d 328, 334-335 (5th Cir. 1982) ("An individual claim for large damages does not necessarily make a putative representative's interests 'antagonistic' to those of the class; to the contrary, the courts have often viewed the assertion of such a claim as an indication that the representative will prosecute the action vigorously.")); *Geary v. Green Tree Servicing, LLC*, Case No. 2:14-CV-00522, 2017 WL 2608691, at *8 (S.D. Ohio June 16, 2017) ("[T]he Court finds that Plaintiffs' separate individual claims and individual damages issues do not defeat adequacy for their class claim…"); *Drinkman v. Encore Receivable Management, Inc.*, No. 07-C33-S, 2007 WL 4458307, at *5, n. 1 (W.D. Wis. Dec. 7, 2007) (same); *Jones v. Berge*, 172 F. Supp. 2d 1128, 1133 (W.D. Wis. 2001) (class certified pursuant to Rule 23(b)(2) and noting that the only individual damages claims at issue are those only of the named plaintiffs).

Defendants fail to articulate how Plaintiffs' request for Rule 23(b)(2) injunctive relief concerning Defendants' universal claims of "flushability" and "sewer system safe" is antagonistic to their individual claims for damages. In fact, just the opposite is true. As the *Stewart* court recognized, Plaintiffs have every incentive to vigorously prove that Defendants' "flushability" claims are false on behalf of the Rule 23(b)(2) class because it

would open the door to proving their individual damages claims. *Stewart*, 669 F.2d at 334-335. Likewise, it would benefit Plaintiffs and the class to remove the vast majority of these so-called "flushable" wipes from the market until they can readily disperse in conditions found in Minnesota and Wisconsin sewers.

Defendants erroneously contend that Plaintiffs' decision not to seek certification of a Rule 23(b)(3) damages class automatically renders them inadequate because of the potential for *res judicata* and collateral estoppel. Def. Br. 47. Defendants do *not*, however, admit that Plaintiffs would have successfully obtained Rule 23(b)(3) certification. *See id*. Rather, it is Defendants' position that—regardless of merit—Plaintiffs were obligated to request Rule 23(b)(3) certification as a pre-condition to adequacy. *Id*. at 48 (claiming plaintiffs threw away what *could have been* "a major component of the class's recovery" by not seeking Rule 23(b)(3) certification) (citation omitted).

If Defendants' theory is correct, if Plaintiffs would have simply sought both Rule 23(b)(2) and (b)(3) certification, and the court ultimately granted just (b)(2) certification, the adequacy issue would be avoided. Or, if not that, then Defendants must believe that a court can never grant Rule 23(b)(2) certification and simultaneously deny Rule 23(b)(3) certification because that would split the claim and, according to Defendants rationale, the plaintiff would, again, be inadequate.[3] This is not the law. *See, e.g., Ang v. Bimbo Bakeries*

---

[3] Even if there was a genuine claim preclusion concern (there is not), the Rules expressly permit notice to class members in (b)(1) and (b)(2) cases, which could easily apprise class members of their rights. Fed. R. Civ. P. 23(c)(2)(A); *see also McReynolds v. Richards–Cantave*, 588 F.3d 790, 800 (2d Cir. 2009) ("[T]he language of Rule 23 is sufficiently flexible to afford district courts discretion to grant opt-out rights in (b)(1) and (b)(2) class actions.").

*USA, Inc.*, Case No. 13-cv-01196-HSG, 2018 WL 4181896, at *17 (N.D. Cal. Aug 31, 2018) ("Plaintiffs' motion is granted under Rule 23(b)(2) as to all four classes and denied under Rule 23(b)(3).").

In fact, courts routinely permit Rule 23(b)(2) injunctive certification even as a pathway to damages. *Paxton*, 688 F.2d at 573-575. The Eighth Circuit expressly recognized that a Rule 23(b)(2) certification that insulates class members from the money-damage portion of the case "is an available approach that is gaining ground in class action suits." *Ebert v. General Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016) (*citing* Newberg on Class Actions § 4:38). The Sixth and the Seventh Circuits agree, concluding that declaratory relief that will support an independent claim for monetary relief is a permissible and appropriate goal for a Rule 23(b)(2) class. *Gooch v. Life Investors Insurance Co. of America*, 672 F.3d 402, 428 (6th Cir. 2012) ("In sum, certifying declaratory relief under Rule 23(b)(2) is permissible even when the declaratory relief serves as a predicate for later monetary relief[.]"); *Chicago Teachers Union Local No. 1 v. Board of Education of the City of Chicago*, 797 F.3d 426, 442 (7th Cir. 2015) ("the fact that the plaintiffs might require individualized relief does not preclude certification of a class for common equitable relief.") (citations omitted).

Here, Plaintiffs requested certification pursuant to Minnesota and Wisconsin law to enjoin Defendants from continuing to advertise their wipes as "flushable" and "sewer system safe." *See* Min Stat. § 325D.15 ("Any person...who is threatened with loss, damage, or injury by reason of a violation of sections 325D.09 to 325D.16 shall be entitled to sue for and have injunctive relief..."); *City of Wyoming v. Procter & Gamble Co.*, 210

17

F. Supp. 3d. 1137, 1162 (D. Minn. 2016) (holding that Wisconsin public nuisance law requires demonstrating the defendants had "actual or constructive notice" and failed to abate the nuisance resulting in injury).

Absent injunctive and declaratory relief, Defendants can continue advertising their wipes as "flushable" and "sewer system safe" and all class members will face the threat of ongoing harm from removing these wipes from their wastewater systems. Money damages can only remedy past harms and would leave class members forever susceptible to additional harm from Defendants' ongoing conduct. Without question, seeking injunctive relief is in the class' best interest.

Defendants rely on an inapposite string of cases where the plaintiffs sought Rule 23(b)(3) damages certification at the expense of potential large individual personal injury damages, leaving future, injured individual claimants susceptible to *res judicata*. None of the plaintiffs in those cases sought strictly Rule 23(b)(2) relief, as is the case here. *See* Def. Br. at 48 (*citing Thompson v. Am Tobacco Co.*, 189 F.R.D. 544, 550-51 (D. Minn. 1999) (the proposed Rule 23(b)(3) class encompassed people with smoking-related illnesses, but the plaintiffs sought to expressly reserve from the class any claims for personal injury); *Foster v. St. Jude Med., Inc.*, 229 F.R.D. 599, 604 (D. Minn. 2005) (seeking to reserve individual personal injury claims outside of Rule 23(b)(3) class for damages); *Brown v. Kerkhoff*, 279 F.R.D. 479, 496 (S.D. Iowa 2012) (plaintiffs' request for Rule 23(b)(3) certification of unjust enrichment claim could potentially preclude later damages claims for misrepresentation and personal injury); *In re Teflon Products Liability Litigation*, 254 F.R.D. 354, 367 (S.D. Iowa 2008) (abandoning medical monitoring, and disavowing

personal injury claims to satisfy Rule 23(b)(3) predominance)). Similarly, Defendants'
citation to *Back Doctor Ltd. v. Metro Prop & Cas. Ins. Co.*, 637 F.3d 827 (7th Cir. 2011)
offers no support either; that case does not even address class certification or adequacy, it
relates to the propriety of removal under the Class Action Fairness Act, 28 U.S.C. §§ 1332,
1453.

Defendants ignore that Plaintiffs' decision not to seek certification of damages
claims that might require individualized inquiries does not render Plaintiffs inadequate. *See*
*Todd v. Tempur-Sealy International, Inc.,* Case No. 13-cv-04984-JST, 2016 WL 5746364,
at *5 (N.D. Cal. Sept. 30, 2016) ("[a] strategic decision to pursue those claims a plaintiff
believes to be most viable does not render her inadequate as a class representative."). 
Indeed, the Seventh Circuit recognized that "[r]efusing to certify a class because the
plaintiff decides not to make the sort of person-specific arguments that render class
treatment infeasible would throw away the benefits of consolidated treatment." *Murray v.*
*GMAC Mortg. Corp*., 434 F.3d 948, 953 (7th Cir. 2006); *Andren v. Alere, Inc.*, Case N.
16cv1255-GPC(AGS), 2017 WL 6509550, at *12 (S.D. Cal. Dec. 20, 2017) (rejecting
adequacy challenge recognizing that "[I]f Plaintiffs were to seek personal injury damages,
it would require individualized inquiries and both parties recognize that these
individualized inquiries would defeat class certification.").

Not surprisingly, Kimberly-Clark raised, and lost, an identical adequacy challenge
in a consumer flushable wipes case in New York. *Kurtz*, 321 F.R.D. at 537. Kimberly-
Clark claimed, just as it does here, the plaintiff was inadequate because he split his claim
by seeking only statutory damages, and not plumbing related damages. *Id*. In rejecting

that challenge, the district court concluded, "[t]hese are not cases where the 'class representatives had left aside the far stronger claims for monetary damages and sought to have the weaker claims certified, for dubious strategic purposes." *Id.* (citation omitted). The same is true here.

Finally, Defendants' additional arguments that the individual dismissal of the settling defendants, Nice-Pak, Procter & Gamble, and Tufco, precludes absent class members from seeking damages from them rings hollow. Def. Br. at 55. Such a result would entirely obviate the need for Rule 23 and the certification procedure. *Gardner v. GMAC, Inc.*, 796 F.3d 390, 398 (4th Cir. 2015) ("pre-certification dismissal does not legally bind absent class members"); *Mendez v. The Radec Corp.*, 260 F.R.D. 38, 46 (W.D.N.Y. 2009) (citing cases for the proposition that "when a district court decides a motion for summary judgment before a class has been certified, that decision will not bind putative class members.").

The very case on which Defendants rely, *Richards v. Jeffrson Cty.*, 517 U.S. 793, 798-99 (1996), makes that point. The *Richards* Court rejected the idea that individuals to litigation absent class certification can be said to have represented nonparties "in a constitutionally adequate manner" and to hold otherwise "would be to attribute them a power that it cannot be said that they had assumed to exercise." *Id.* at 802 ("due process prevents the [plaintiffs] from being bound by the [previous individual] judgment."). Defendants' contentions otherwise are meritless.

## B.     Plaintiffs' Individual Settlements Do Not Result in a Conflict

Defendants also claim, without any factual support, that Plaintiffs' decision to settle with three defendants individually created a conflict with the class. In so doing, they rely on hyperbole, speculation, and hypotheticals, such rhetoric will not defeat adequacy. *In re Target Data Breach*, 2017 WL 2178306, at *3.

First, Plaintiffs did *not* sue every knowable manufacturer of flushable wipes; a point Defendants made in seeking Rule 12 dismissal in 2015. ECF No. 42, at 3. As such, Defendants' contention that Plaintiffs were required to "obtain complete relief" by enjoining all manufactures of such wipes was never contemplated nor feasible. Def. Br. at 50. Likewise, claims that the settled defendants will swoop in and steal market share are simply speculation. *Id.* at 52 (claiming settling defendants will "promptly swoop in" without any record evidence).  Defendants have not even demonstrated that those manufacturers even have the immediate manufacturing capacity to subsume their overwhelming market share.

Second, Defendants ignore that Nice-Pak entered into a consent decree with the FTC during the pendency of this case. *In the Matter of NICE-PAK PRODUCTS, INC.*, 2015 WL 7009345 (F.T.C. Oct. 30, 2015). ███████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ █████████████████████████████████████ ECF No. 543, Ex. 21 at ¶20 (Hurley Decl.); Def. Br. at 54-55; ECF No. 642, Ex. 57 at 149:8-2 (Villee

Dep.) ███████████████████████████████████████████████████████

██████████████ These arguments are simply intended to mislead.

As set forth in Plaintiffs' opening brief (ECF No. 527 at 14), the FTC's consent order demands that Nice-Pak establish that its flushable wipes "disperse in a sufficiently short amount of time after flushing" and that testing supporting its flushability claims, "substantially replicate *the physical conditions of the environment* in which the Covered Product is…to be properly disposed of…" *Id.* (emphasis added). ████████████████

████████████████████████████████████████████████████████████

█████████████████ ECF No. 543, Ex. 21 at ¶18 (Hurley Decl█████████████████

████████████████████████████████████████████████████████████

██████████████████ Nice-Pak remains subject to this consent decree and oversight for twenty-years, or until October 2035. *In the Matter of NICE-PAK PRODUCTS, INC.*, 2015 WL 7009345, at *6.

Obviously, any injunctive relief Plaintiffs could obtain against Nice-Pak would be duplicative of the FTC's relief. So rather than continue to devote resources and expenses toward litigation with Nice-Pak, Plaintiffs wisely elected to settle. While that settlement provides nominal money relief, the key component of the settlement was securing the testimony of Nice-Pak's Vice President of Nonwovens, Jeffrey Hurley, Ph.D. at any hearing or trial. Dr. Hurley's testimony will include all the testing he has performed on both Rockline and Kimberly-Clark's wipes, in cold, low flow conditions, as well as his understanding of the consent decree and the testing the FTC requires to sustain a claim of "flushable." That testimony is a substantial benefit to the classes. Plaintiffs can hardly be

deemed inadequate for evaluating their claims against Nice-Pak and reaching a settlement that will aid the remainder of their case. *Looney v. Chesapeake Energy Corp.*, 2:15-CV-02108, 2016 WL 7638467, at *2 (W.D. Ark. Sept. 23, 2016) ("disagree[ments] with class counsel's strategic decision to voluntarily dismiss certain defendants and not pursue certain claims, the Court finds that none of these justifications are sufficient to overcome the presumption of adequate representation.").

Plaintiffs' nominal settlements with Tufco and Procter & Gamble were equally well-reasoned. Discovery established what Tufco contended at the pleading phase: Tufco does not make any labeling or packaging decisions for the wipes it manufactures for its private label customers. *City of Wyoming*, 210 F. Supp. 3d at 1163. The evidence would not support a finding otherwise and, therefore, Tufco would likely be ultimately be summarily dismissed. *See* Minn. Stat. § 323D.13 (requiring a showing that defendant "knowingly misrepresent[s], directly or indirectly, the true quality, ingredients or origin of such merchandise.").



Ex. 25 (KCC_Wyoming-00079966-80127)

With the FTC's settlement with Nice-Pak, and Plaintiffs pressing their claims against Kimberly-Clark and Rockline, 80% of the domestic flushable wipes market is covered. *Id.* Plaintiffs, therefore, made the strategic decision to focus their resources on the largest members of the market and dismiss the smallest. That

decision does not render the Plaintiffs or their counsel inadequate, nor does it create an inter-class conflict.[4] *Looney*, 2016 WL 7638467, at *2.[5]

Defendants' reliance on *Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*, 276 F.3d 1150 (9th Cir. 2002) does not support a finding otherwise. *Dawavendewa* was not a class action, and it did not involve a request for injunctive relief to end false advertising. *See id.* Rather, the case related to whether the Navajo Nation was a necessary party to an individual dispute regarding a hiring policy. *Id.* at 1153. The court concluded that the Navajos were necessary based on certain contractual agreements and how any injunction might impact performance under those agreements. *Id.* at 1155. That holding has no relevance to this matter.

## C. Defendants' Claims Regarding Future Harm are False

### 1. Defendants are Wrong on the Law

---

[4] Although irrelevant, Defendants' claims that Nice-Pak and P&G wipes perform worse than their wipes is at best misleading. Indeed, neither Rockline nor Kimberly-Clark have produced evidence demonstrating that the *current configurations* of Nice-Pak and P&G wipes perform worse than their wipes in real-world conditions found in Minnesota and Wisconsin (cold, hard, low flow water). Rather, Defendants cite results from tests performed years ago on legacy products. Notwithstanding, to claim a product performs worse in the INDA-controlled municipal pump test does not demonstrate how a wipe will perform when placed in real-world conditions.

[5] It is worth pointing out that Plaintiffs' counsel did not, and will not, take any money from these nominal settlements to either reimburse the ongoing litigation expenses or for attorneys' fees. Rather, the money will go directly to Plaintiffs who are publicly funded and who have not only actively engaged the litigation, but complied with the Court's six-month Preservation Protocol, by collecting, video-taping, photographing and logging materials removed from their systems. Compensation for those litigation efforts hardly puts them in a conflict with the absent class members.

First, Defendants improperly cite to standards applicable to injunctive relief provided as a matter of equity, not statute. Def. Br. at 56 (citing standard for "real and immediate threat of injury"). It has long been the law that "[w]here an injunction is authorized by statute it is enough if the statutory conditions are satisfied." *Henderson v. Burd*, 133 F.2d 515, 517 (2d Cir. 1943); *United States v. Pugh*, 717 F. Supp. 2d 271, 285 (E.D.N.Y. 2010) ("Given that I.R.C. § 7407 expressly authorizes the issuance of an injunction, the traditional equity grounds for injunctive relief need not be proven.").

The Eighth Circuit recognizes that "under Minnesota law, where injunctive relief is explicitly authorized by statute…proper exercise of discretion requires the issuance of an injunction if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purposes behind the statute's enactment." *Buetow v. A.L.S. Enterprises, Inc.*, 650 F.3d 1178, 1183–84 (8th Cir. 2011) (*quoting Wadena Implement Co. v. Deere & Co., Inc.*, 480 N.W.2d 383, 389 (Minn. App. 1992)) (internal quotations omitted).

Here, Plaintiffs invoke Minnesota law, which is clear that the "sole statutory remedy for deceptive trade practices is injunctive relief." *Simmons v. Modern Aero, Inc.*, 603 N.W.2d 336, 339 (Minn. Ct. App. 1999). Pursuant to Minnesota's Uniform Deceptive Trade Practices Act (Count VIII in Plaintiffs First Amended Complaint), a person may not, among other things, "represent that goods or services have characteristics, uses, or benefits that they do not have." Minn.Stat. § 325D.44(1). Under the act, "a person **likely** to be damaged" by such conduct, "may be granted an injunction" and "*[p]roof of monetary damage, loss of profits, or intent to deceive is not required*." Minn. Stat. § 325D.45(1)

25

(emphasis added); *see Alsides v. Brown Institute, Ltd.*, 592 N.W.2d 468, 475 (Minn. App. 1999). The relief provided under the act "is in addition to remedies otherwise available against the same conduct under the common law or other statutes." Minn. Stat. § 325D.45(3); *Simmons*, 603 N.W.2d at 339 ("the legislature has allowed [injunctive] relief against deceptive trade practices regardless of damages or other remedies available at law.").

Plaintiffs also seek relief pursuant to Minnesota's Unlawful Trade Practices Act, Minn. Stat. §325D.13 (Count V), which provides for injunctive relief when a person "is threatened with loss, damage, or injury" when a party "knowingly misrepresent[s], directly or indirectly, the true quality, ingredients or origin of such merchandise." The purpose is to provide injunctive relief "for a person likely to be damaged" and provide "relief from future damage, not past damage." *Bhatia v. 3M Co*., 323 F. Supp. 3d 1082, 1096 (D. Minn. 2018) (citations omitted).

And, under Wisconsin law, Wis. Stat. §823.01, provides for injunctive relief to "abate a public nuisance." *Town of East Troy v. Soo Line R. Co.*, 653 F.2d 1123, 1131 (7th Cir. 1980) (§ 823.01 gave town the "undisputed power to correct the [a public nuisance]…when the people of the town were severely inconvenienced, ill, and clamoring for action."); *Costas v. City of Fond du Lac*, 129 N.W.2d 217, 220 (Wis. 1964) ("If the damages cannot be adequately compensated in money or are impossible of determination, an injunction is the appropriate relief to abate a nuisance…").

Plaintiffs not only have statutory standing to pursue *all* these claims, as demonstrated below, they have ample, common evidence showing that they face a

continuing threat of future damage if Defendants are permitted to broadly claim their wipes are "flushable" and "sewer system safe." Granting Plaintiffs' requested injunctive relief here would "fulfill the legislative purposes behind the [various] statute's enactment." *Buetow*, 650 F.3d at 1183–84.; *Wildlife Research Center, Inc. v. Robinson Outdoors, Inc.*, 409 F. Supp. 2d 1131, 1138 (D. Minn. 2005) (granting injunctive relief pursuant to Minn. Stat. § 325D.15 to stop the defendant from advertising its products, *inter alia*, as "100% Pure Estrus Urine").

### 2. Plaintiffs Have Ample Evidence Establishing They are "Likely to Be Damaged" by Defendants' Flushable Wipes

No more telling example is the testimony of third-party Quality Flow Systems ("QFS"), a municipal pump manufacturer's representative, who Defendants subpoenaed to testify. Entirely unrefuted (or even mentioned) by Defendants is QFS's clear testimony that "flushable wipes cause wear on pumps" specifically causing "main impeller wear." Plfs.' Br. at 30. QFS was unequivocal explaining that flushable wipes "create vibration issues with the pump which causes seal faces to open and cause them to leak…" ECF No. 529-13, Ex. 60 at 12 (QFS Dep. at 157:3-11). Again, QFS was referring specifically to *flushable wipes*—not baby wipes, rags, tampons, or cleansing cloths:

> Q. And in that context, when they're talking about flushable wipes, *are they talking specifically about wipes marketed as flushable or are they talking about the rags and the solids that get caught in the equipment in general as far as you know*?
>
> * * *
>
> A. [F]*lushable wipes have become, again, more prevalent, I would say, in the last ten years where I've seen where they're becoming more and more of an issue in our business where people talk about them in particular.* And people will have

> videos about how their equipment passes, you know, or tries to
> pass these flushable wipes or they'll show videos of
> competitors' equipment not being able to pass them.

*Id.* at 26:17-27:24.

Entirely consistent with QFS's testimony, Elk River testified it had to replace seals, bearings, and o-rings in pumps because of clogs in the pump that contained flushable wipes. Ex. 9 (Elk River Rule 30(b)(6) Dep. 240:14-242:1). Similarly, Elk River had to replace pump gaskets due to taking pumps apart to remove clogs containing flushable wipes, *id.* at 242:12-23, as well as replace mechanical seals and bearings as a result of consistent plugging of pumps. *Id.* at 245:1-25. In fact, Elk River has replaced and repaired multiple pumps due to clogs containing flushable wipes. *See, e.g.* Ex. 26 (Elk River Rule 30(b)(6) Dep., Ex. 25) (collection of invoices to Elk River for pump repairs and replacements); Ex. 9 (Elk River Rule 30(b)(6) Dep., at 240:13-264:7).

When defense counsel tried to convince QFS that clogs can consist of multiple things, QFS disagreed, explaining that it has knowledge about the prevalence of flushable wipes in hospitals and nursing homes and when servicing pumps close to those entities, they've seen lift stations "full of wipes" and that they "[y]ou can see them floating on the surface." ECF No. 529-13, Ex. 60 at 8 (QFS Dep. at 35:18-36:4). QFS confirmed that flushable wipes can cause plugs in the sewer system:

> I have seen and witnessed plugs in pumps that were mainly
> made up of flushable wipes – or wipes. And you're always
> going to get some other debris in there. I mean I don't think
> there's any way to get around it. But I've seen plugs made up
> mainly of wipes.

*Id.* at 36:5-10

Neither defense experts Paschke nor Johnson were provided QFS's deposition transcript for their consideration. ECF No. 529-19, Ex. 102 at 153 (Paschke Rpt. at Ex. D); ECF No. 631-27, Ex. 27 at 14 (Johnson Rpt. at Ex. B). Mr. Paschke also did not conduct any studies, testing or analysis on flushable wipes generally or specifically to determine their impact on sewer systems in Minnesota or Wisconsin. *Id*. And despite being a purported expert in what can "harm" wastewater infrastructure, Paschke has never even examined a clogged wastewater pump nor could he recall having ever removed debris off a wastewater screen. ECF No. 631-45, Ex. 51 at 40 (Paschke Tr. at 152:7-153:6).

Yet, despite the complete lack of practical experience or scientific underpinnings, even Paschke's report states that areas more likely to see clogs are those located near "nursing homes or assisted living facilities." ECF No. 529-19, Ex. 102 at 57 (Paschke Rpt. at 23). In one specific example, Paschke observed that "Fergus Falls has 19 lift stations, it claims damages only at the Channing lift station, which it says has required increased cleanings since 2011 and the installation of various new equipment." *Id*. at 68 (Paschke Rpt. at 34). Paschke then points out that "one or more significant senior care or nursing home facilities, including Pioneer Care/Pioneer Senior Cottages, is located within the Channing service area." *Id*. Again, this is entirely consistent with the testimony of QFS; in its years of experience QFS has learned that flushable wipes are prevalent in nursing homes and can cause clogs in the neighboring pumps and lift stations, just like the Channing lift station.

Further, of the limited material he chose to review, Johnson confirmed the presence of flushable wipes in every Plaintiffs' system and, in particular, in six different events

29

provided by Fergus Falls, not to mention in 14 samples from the City of Princeton, 10 samples from Elk River, and 8 samples from Holmen, among others. *See* ECF No. 631-27, Ex. 27 at 22-82 (Johnson Rpt. at 12-72). Johnson also made clear that he determined that Kimberly-Clark wipes were amongst those he examined from Plaintiffs' sewer systems. ECF No. 529-18, Ex. 97 at 124 (Johnson Tr. at 159:13-16) ("Q. So you were able to see [KC] wipes in the wipes that you examined from the various collections? A. Yes.").

This evidence corroborates the following unrefuted evidence:

- Defendants' "flushable wipes" are sold in and flushed by consumers who reside in Minnesota and Wisconsin (Plfs.' Br. at 33);

- Defendants' packaging and labeling expressly direct consumers to dispose of flushable wipes in the toilet ensuring that they will enter the sewer systems in Minnesota and Wisconsin (*id.* at ECF No. 559, Ex. 47 (Menna Rpt. at 13-16));

- Defendants know, and have known, that their wipes will *not* disperse in conditions regularly found in sewer systems in Minnesota and Wisconsin, including cold, hard, low flow water (Plfs.' Br. at 18-26);

- Defendants' representation that their wipes are, in fact, "flushable" and "sewer system safe" is not based on testing in actual sewer systems, but rather the tests and testing parameters published by their trade association, INDA (*id.* at 5);

- ██████████████████████████████████████████████████████ ██████████████████████████████████████ (*id.* at 6); *see also* Ex. 27 (KCC-Woyming-00002287) ████████████████████ ██████████████████████████████

- the two INDA tests intended to simulate wipe behavior in an actual sewer system and support the claims of "flushable" and "sewer system safe" are the slosh box (measure dispersibility) and municipal pump (propensity to clog a wastewater pump) (Plfs.' Br. at 9-12);

- the testing parameters for both the slosh box and municipal pump were set by agreement amongst the wipe's manufacturers, including Defendants, and are not based on any scientific analysis of actual conditions occurring in public sewer systems at any given time, including those in Minnesota and Wisconsin (*id.*);

- Despite being designed to determine if a wipe will clog a wastewater pump, the municipal pump test does not require examining the pump to determine if any material actually accumulated inside the pump (*id.*);

- Defendants wipes will fail the slosh box test and only minimally disperse (if at all) if the test parameters are altered by cooling the water, reducing agitation and time; all which certainly occur in an actual sewer system during a wipes transit in Minnesota or Wisconsin (*id.* at 28);

- Defendants' experts concede that "no slosh box parameters would be suitable to test flushability in a sewer system" (*id.* at 17); and

- The FTC does not believe the INDA guidelines are suitable for establishing flushability and demanded that any testing supporting a claim of flushability must "substantially replicate" the "environment" which the wipes will be disposed of (*id.* at 14).

Even putting all this unrefuted evidence aside, Plaintiffs actually flushed these purported "flushable" wipes into their systems to determine if they would, in fact, disperse anywhere close to toilet paper. The conclusion was a resounding, no. All Defendants offer in response to this real-world testing are unpersuasive challenges about the locations, number of toilet flushes, distances, and water temperature at the time of testing. Def. Br. 37-38.

As an example, on April 2, 2018, Plaintiffs' expert went to Elk River and in the men's restroom at a Pearl Vision Clinic flushed Defendants' "flushable wipes." ECF No. 529-16, Ex. 88 at 14 (Dick Supp. Rpt. at 13). He measured the toilet water temperature as 43ºF and the sewer water temperature at 50ºF. *Id.* at 14. Although the plan was to retrieve

the wipes at a manhole several hundred feet away, the test was suspended due to a storm. *Id*. at 15. The next day, however, an Elk River employee cleaning the screens at the Evans Street pump station encountered the wipe samples from the testing. *Id*. The wipes had traveled 11,121 feet from the flush, were submerged in sewer flow for nearly 18 hours, yet, were found intact on the screen. *Id*.



Samples retrieved 1-day later from downstream pump station – Elk River

Pink –  Scott Flushable Wipes (KC);
Orange – Huggies Pull-Ups Flushable Wipes (KC); and
<u>Blue –  Cottonelle Freshchare Flushable Wipes (KC)</u>

Plaintiffs' expert flushed Defendants' wipes at all the other Plaintiff locations. The wipes were retrieved at various locations hundreds of feet away, virtually intact. Certainly, these wipes perform nothing close to toilet paper, nor can it be said they meet the FTC's requirement that they "disperse in a sufficiently short amount of time after flushing." *In re NICE-PAK PRODUCTS, INC.*, 2015 WL 7009345, *2.



Pink – Scott Flushable Wipes (KC);
Orange – Huggies Pull-Ups Flushable Wipes (KC); and
<u>Lime Green – Equate Flushable Wipes (Rockline)</u>

In all likelihood, these wipes would need to be manually removed off screens by

raking, ultimately hauled away, and disposed in a landfill because "there is not any other

option for dealing with this material…." Ex. 28 (MPCA-0002324-23335 at 2331) (June 6,

2010, emails from MPCA re City of Mankato) (citing MN Rule 7035.235 (D)-7 (landfill

special exemption for accepting sewerage for "*grit and bar screenings from a wastewater*

*treatment plant*").[6] As a result, Plaintiffs have, and will continue to, experience these types of injury.

### 3. Plaintiffs Are Active Participants in the Litigation

Once more, Defendants challenge Plaintiffs' adequacy by claiming that they are inactive participants who do not understand the case. To the contrary, Plaintiffs (and their employees), who are publicly funded sewer systems, have been dedicated to the successful prosecution of this case and are prepared to see it through trial.

First, Courts have identified four situations in which plaintiffs may be deemed inadequate representatives: (1) the plaintiffs lack personal knowledge concerning the type and extent of damages they have suffered; (2) the plaintiffs lack credibility concerning their claims; (3) the plaintiffs have afforded unfettered discretion to conduct the litigation; and (4) the plaintiffs have physical or mental limitations which may preclude them from being in a position to act in the best interests of the class. *Portz*, 297 F. Supp. 3d at 948. A plaintiffs' understanding of the law or minutiae of litigation procedure is not the

---

[6] Sauk Centre claims injury for having to remove disposable wipes and send them to a landfill. At the 30(b)(6) deposition, they testified that wipes were removed from equipment at the wastewater treatment plant and disposed of via garbage hauler. Ex. 23 (Sauk Centre 30(b)(6) Dep., at 189:5-19). Other Plaintiffs experienced the same. *See* Ex. 14 (Mankato 30(b)(6) Dep., at 90:16-21) (wipes removed from the wastewater treatment plant's bar screen go to a grinder and eventually a landfill); Ex. 29 (Jensen Dep., at 58:3-11) (Princeton uses a vacuum truck on one lift station every three months, and the material is dumped in a dumpster and hauled to a landfill); Ex. 7 (Fergus Falls 30(b)(6) Dep., at 60:5-14) (the bar screen at the wastewater treatment plant removes solid material, which gets disposed of in a certified landfill).

fundamental inquiry. *See id.* The primary question is whether "the plaintiff is willing and able to assist his or her counsel in vigorously prosecuting the action on behalf of the class without demonstrating other characteristics that could conflict with or hurt the interests of the class." *Id.*

As established by both the evidence in the case and third-party market share data, Plaintiffs understood the rationale for settling with both Tufco and P&G as described above. Def. Br. at 58; *see supra* III (A) (2). Furthermore, a math error regarding the Tufco settlement and the division amongst the plaintiffs in the case can hardly be categorized as a "lack of personal knowledge." *Id.* And, contrary to Defendants' bold claims otherwise, Village of Holman correctly understood that Nice-Pak (a settling defendant) changed the formulation of its wipe during the litigation and discontinued selling the legacy product, a fact that weighed into Plaintiffs' consideration to settle. *Id.*

Plaintiffs have vigorously assisted counsel in prosecuting this litigation from its outset. They all took time away from their operations to sit for multiple depositions, respond to countless discovery requests, opened their facilities for multiple inspections, including Plaintiffs' own testing, and produce 704,017 pages of documents. *Khoday v. Symantec Corp.*, Civil No. 11-180 (JRT/TNL), 2014 WL 1281600, at *17 (D. Minn. March 13, 2014) (finding adequacy where "named Plaintiffs actively participated in depositions and discovery, reviewed the complaint, maintain frequent contact with class counsel, and have demonstrated a willingness and ability to play an active role in and control the litigation and to protect the absent class members.") (citations omitted); *Hernandez v. Midland Credit Mgmt., Inc.,* 236 F.R.D. 406, 414 (N.D.Ill.2006) (finding named plaintiff

adequate even though "class counsel necessarily is the driving force behind some of the more complicated legal theories"). The Plaintiffs satisfy Rule 23(a)(4).

## IV. Plaintiffs Satisfy Commonality and Typicality, a Rule 23(b)(2) Class Should be Certified

In arguing that individual injury and causation issues defeat Rule 23(a) commonality and typicality requirements as well as Rule 23(b)(2) cohesiveness, Defendants mischaracterize the injury suffered by Plaintiffs and what Plaintiffs need to show to prove Defendants caused that harm under the statutory claims they seek to have certified. Differences in Plaintiffs' wastewater systems do not defeat commonality and typicality-they actually support these elements because Defendants claim their wipes are "flushable" and "sewer safe" regardless of those difference. And differences in where flushable wipes actually cause harm (by Defendant's characterization) likewise cannot defeat commonality and typicality- again, the harm is the same- increased cost or effort to maintain, repair, or upgrade wastewater treatment equipment and to dispose of excess waste because Defendants' wipes do not disperse like toilet paper does. Plaintiffs' proposed Rule 23(b)(2) classes should be certified.

### A. Plaintiffs have met Rule 23(a)(2) Commonality Requirement

Plaintiffs have clearly met the "very light burden" to show Rule 23(a)(2) commonality. *Hartley v. Suburban Radiologic Consultants Ltd.*, 295 F.R.D. 357, 376 (D. Minn. 2013) (quoting *Sonmore v. CheckRite Recovery Servs., Inc.*, 206 F.R.D. 257, 261 (D. Minn. 2001)). The common issues of fact and law- including the common injury suffered of "increased cost or effort to maintain, repair, or upgrade wastewater treatment

equipment and to dispose of excess waste due to Defendants falsely or deceptively advertising their wipes as 'flushable'" as well as the questions identified in Plaintiffs' opening brief (*see* Plfs.' Br. at 38) - will generate "common answers" for Plaintiffs and the proposed classes, contrary to Defendants' attempt to manufacture individualized issues. *See id.* at 37; *Dukes*, 564 U.S. at 349-50. "[D]espite differing individual circumstances of class members, commonality exists where injuries derive from a unitary course of conduct by a single system." *Kurtz*, 321 F.R.D. at 530 (internal quotation marks omitted; citations omitted). Here, Defendants have misrepresented the capability of their so-called flushable wipes to disperse in the conditions found in Minnesota and Wisconsin sewer systems. This "common thread" is sufficient to demonstrate commonality. *Id.* (citing *Ebin v. Kangadis Food, Inc.*, 297 F.R.D. 561, 565-66 (S.D.N.Y. 2014)).

*First*, in their arguments contending that commonality is not satisfied because Plaintiffs have failed to show common injury and causation, Defendants fail to cite the claims Plaintiffs request class certification. Under Minnesota law, an injunction is appropriate where the plaintiff is "likely" to be damaged by Defendants' misrepresentation about its products (Minn. Stat. § 325D.44(1), 325D.45(1)) and injunctive relief can be granted "for a person likely to be damaged" in order to provide "relief from future damage, not past harm." *Bhatia*, 323 F.Supp.3d at 1098 (citations omitted). Wis. Stat. §823.01, provides for injunctive relief to "abate a public nuisance." Plaintiffs do *not* need to show direct harm caused by Defendants' flushable wipes under these claims. Simply demonstrating, as Plaintiffs have, that Defendants' wipes are falsely advertised as

"flushable" and "sewer safe," and thus likely to cause future harm to Plaintiffs and the Classes, is sufficient to satisfy commonality.

*Second*, Plaintiffs' evidence shows that they have suffered a common injury. Defendants' characterization of Plaintiffs' injury is far too granular- they suggest that each Plaintiff needs to allege injury in the exact same manner, to the exact same piece of equipment or location in their wastewater system, and that future injury will occur in the same manner and location as well. *See* Def. Br. at 60-61, 67. However, Plaintiffs have properly characterized the common class-wide injury as increased cost or effort to maintain, repair, or upgrade wastewater treatment equipment and to dispose of excess waste due to Defendants falsely or deceptively advertising their wipes as "flushable." To show class-wide injury, ""[t]he interests of the various plaintiffs do not have to be identical to the interests of every class member; it is enough that they share common objectives and legal or factual positions." *In re Target Data Breach Litig.*, 2017 WL 2178306 at *6(quoting *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999)).

All wastewater systems have differences in equipment and design to accommodate the needs of their location's geography, population, and system age. That is obvious. But the Court need not examine uniformity amongst Plaintiffs facilities, but rather the unequivocal statement that Defendants' flushable wipes are "flushable" and "sewer system safe" regardless of population, equipment, location, weather or flow conditions. It is this uniform, false and misleading representation about the dispersibility of their flushable wipes that drives the commonality analysis. *See Suchanek v. Sturm Foods, Inc.*, 764 F.3d

750, 756 (7th Cir.2014) (distinguishing *Dukes* from consumer false-advertising class actions by noting that "[w]here the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.... In this case, the plaintiffs' claims and those of the class they would like to represent all derive from a single course of conduct by Sturm: the marketing and packaging of GSC.").

But even putting that aside, it is wrong to suggest that Plaintiffs cannot show common injury unless they demonstrate that they each experience the effects of the non-dispersibility of Defendants' flushable wipes in the exact same manner. *See Colon v. Passaic Cty.*, No. CIV.A. 08-CV-4439 DM, 2009 WL 1560156, at *4 (D.N.J. May 27, 2009) (holding "Rule 23 does not require an exact identity of claims and injuries among the putative class members," and finding that commonality is satisfied even if all class members do not experience the results of defendant's conduct in "precisely the same manner") (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985); *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988)); *see also Kurtz*, 321 F.R.D. at 531 ) (finding, in a similar case against flushable wipes manufacturers on behalf of consumers, "[i]t is not necessary for all of the plaintiffs to have had a 'uniform' experience with respect to the product.") (quotation marks omitted; citation omitted). Here, the common injury resulting from Defendants' false representations about the dispersibility of their flushable wipes has been to increase costs, maintenance, and solid waste disposal requirements for Plaintiffs. *See, e.g. supra* at II.

*Third*, with respect to causation, Plaintiffs do not need to show that any one particular clog, maintenance event, or equipment failure is the direct result of KC or

Rockline's flushable wipes. *See Group Health Plan, Inc. v. Phillip Morris*, 621 N.W. 2d. 2, at 14 (Minn. 2001) (to obtain *damages* (a heavier burden) under Minnesota deceptive practices laws a plaintiff need only show that there is "some 'legal nexus' between the injury and defendants' wrongful conduct.") (citations omitted). And for purposes of this motion, Plaintiffs need only establish that there are sufficiently common questions of law or fact. *See Kurtz*, 321 F.R.D. at 532. Plaintiffs have done so; the same question applies to all— whether the Class is likely to be damaged by Defendants' flushable wipes based on the false representations that they are "flushable" and "sewer system safe." Plaintiffs' evidence clearly shows that their wastewater systems encountered these issues after flushable wipes entered the market, including increased incidents of pump clogging, bar screen cleanings, lift station cleanings, and blockages over the last ten to twelve years caused by "rags," or flushable wipes. *See, e.g.* Ex. 14 (Mankato Rule 30(b)(6) Dep., at 34:21-36:1, 57:2-11, ) (Starting in the early 2000s, Mankato experienced pump clogs once or twice per week, whereas in the 1990s, pump clogs only occurred four to six times per year, and determined the clogs were caused by flushable wipes, and not baby wipes or some other material that already existed in the market, because it was material that they had not encountered in the system before that time); *see also, supra*, at II.[7]

---

[7] Contrary to Defendants' arguments, their wipes have been positively identified in Plaintiffs' sewer system by Defendants' own expert. ECF No. 529-18, Ex. 97 at 124 (Johnson Dep., at 159:14-24) (identifying Kimberly-Clark's wipes in the samples retained by Plaintiffs under the Court's Preservation Protocol). Additionally, an Equate brand flushable wipes package was retrieved out of Fergus Falls' wastewater system- strong evidence that the wipes themselves must also be in the system. ECF No. 529-1, Ex. 3 at 15 (Fergus Falls 30(b)(6) Dep., at 27:12-25).

Beyond Plaintiffs' own experiences, Plaintiffs will put forward common expert evidence that Defendants rigged the "flushability" guidelines and when they are altered to reflect real-world conditions, Defendants' wipes perform miserably. *See Kurtz*, 321 F.R.D. at 549 ("[I]f the products at issue are found to not be 'flushable,' then all [plaintiffs] were injured…"); ECF No. 559, Ex. 47 (Menna Rpt.); ECF No. 529-5, Ex. 26 (Dick Rpt.); ECF No. 529-16, Ex. 88 (Dick Supp. Rpt.) Evidence from Plaintiffs themselves as well as Plaintiffs' experts demonstrate that such conditions do, in fact, exist in Minnesota and Wisconsin and are not speculative or as variable as Defendants suggest. *See, e.g.* Plfs.' Br. at 12, n. 14 (wastewater temperatures recorded between 40 and 59 degrees); ECF No. 529-5, Ex. 26 (Dick Rpt.); ECF No. 529-16, Ex. 88 (Dick Supp. Rpt.) (finding varying flow rates in Plaintiffs' systems).[8]

## B.     Plaintiffs have met the Rule 23(a)(3) Typicality Requirement

Plaintiffs' claims are typical of those of putative class members because their interests are "aligned with those" of the putative class and the Plaintiffs will "advance the interests of the class members." *In re Baycol Prod. Litig.*, 218 F.R.D. 197, 205 (D. Minn. 2003). Typicality is met as long as the Plaintiffs' claims arise out of the same legal or remedial theory as those of the putative class. *See Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 576 (D. Minn. 1995) (citing cases). In fact, "a strong similarity of

---

[8] Unlike in *In re Hardieplank*, 12-md-2359, 2018 WL262826, at *14 (D. Minn. Jan. 2, 2018), which Defendants heavily rely, here Plaintiffs will put forward "common proof" that Defendants' wipes do not perform as advertised and are not, in fact, dispersible. Plaintiffs have satisfied the commonality requirement.

legal theories will satisfy the typicality requirement despite substantial factual differences." *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 690 (D. Minn. 1995) (citation omitted).

Here, Plaintiffs and the putative classes have claims arising out of the same legal theory—Kimberly-Clark and Rockline's flushable wipes do not disperse in regularly occurring conditions in Minnesota and Wisconsin. Plaintiffs' survey evidence shows that flushable wipes have been flushed in every county in Minnesota and Wisconsin, *see* ECF No. 529-13, Ex. 65 at 156, 164 (Krosnick Rpt.), and "[t]ypicality is satisfied when the claims of the named plaintiffs emanate from the same event or are based on the same legal theory as the claims of the class members." *Gardner v. First Am. Title Ins. Co.*, No. CIV.00-2176(RHK/AJB), 2003 WL 221844, at *5 (D. Minn. Jan. 27, 2003) (quoting *Lockwood Motors,* 162 F.R.D. at 575).

Variations in the types of equipment and sewer conditions are irrelevant for the typicality analysis because "differences in fact will not defeat certification." *Estate of Mahoney v. R.J. Reynolds Tobacco Co.*, 204 F.R.D. 150, 154 (S.D. Iowa 2001) (citations omitted). In fact, Defendants' own expert, Mr. Paschke, confirms that it is typical for the specific equipment, design and sewer conditions to vary among different wastewater systems. *See* ECF No. 529-19, Ex. 102 at 57 (Paschke Rpt. at 23) ("Wastewater flow rates are continuously varying within any sewer collection system."; "Wastewater travel times can vary greatly within any individual sewer system, and between different sewer systems."). Notwithstanding this argument by Defendants, Plaintiffs have shown that Defendants manipulated the INDA flushability standards to support their flushable claims

even with the knowledge that they do not disperse in colder temperatures and/or low flow conditions. *See generally* Plfs.' Br. at 5-29.

Plaintiffs and the putative class members also have a common remedial theory, which, again, satisfies the typicality requirement. As discussed above, individual proof of injury is not necessary to obtain an injunction under Plaintiffs' statutory claims. And, Plaintiffs and the putative classes all seek the same form of relief— that Kimberly-Clark and Rockline cease marketing their flushable wipes until they can disperse in Minnesota and Wisconsin wastewater conditions. *See Gardner*, 2003 WL 221844 at *5 ("the test for typicality is fairly easily met and only requires that the relief sought in the action [be] the same") (quoting *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174–75 (8th Cir.1994)) (internal quotation marks omitted).

Defendants' attempt to manufacture "atypical defenses" is unpersuasive as it, again, relies on an overly granular characterization of Plaintiffs' claims and injury. Plaintiffs allege that Defendants' wipes are falsely and deceptively advertised as flushable and sewer-safe when in fact they do not break down in Plaintiffs' sewer systems. The only defense that matters is whether that allegation is true. Just because Defendants' potential defenses as to causation or injury "may be successful against some Plaintiffs and not others does not render the named Plaintiffs' claims atypical." *Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 550 (D. Minn. 1999).[9] Plaintiffs' claims are typical of the classes and meet the Rule 23(a)(3) typicality requirement.

---

[9] For the first time in this litigation and well after the close of fact and expert discovery, Defendants raise the specter of Plaintiffs' compliance with the Court's Preservation

C.      **Plaintiffs' Proposed Classes are Cohesive**

Rule 23(b)(2) certification is appropriate here where Plaintiffs bring, and initially brought, this suit primarily to obtain injunctive relief. ECF No. 61 (First Amended Complaint) at ¶4 (primarily requesting injunctive relief). The Plaintiffs unambiguously testified that they brought this case to stop Defendants' wipes from being sold as flushable. *See supra*, at II. Plaintiffs' motion for Rule 23(b)(2) certification advances that primary goal.

Defendants' cohesiveness argument is simply a regurgitation of their prior arguments related to commonality and typicality, which Plaintiffs addressed above. They make no argument that Rule 23(b)(2) certification is inappropriate because Plaintiffs or class members would "be entitled to a different injunction or declaratory relief." *Ebert,* 823 F.3d at 481. Rather, regardless of the level of harm any Plaintiff or class member has suffered due to flushable wipes or the differences in Plaintiffs' and class members' wastewater systems, an injunction under the Minnesota and Wisconsin statutory claims that prohibits Defendants from advertising their flushable wipes products as "flushable"

---

Protocol. Def. Br. at 71. Putting aside that their timing is suspect in that it appears for the very first time herein, Defendants misrepresent Plaintiffs' compliance with the Preservation Protocol. Plaintiffs produced a total of 276 samples of material collected from their wastewater systems, which included material collected before the Court entered the Preservation Protocol, yet Defendants only analyzed the contents of 90 of those samples. *See* ECF No. 631-27, Ex. 27 at 8 (Johnson Rpt. at 7). Plaintiffs do not need to show that every clog, equipment failure, or maintenance event experienced was due to flushable wipes to obtain an injunction. If Defendants believe they have a spoliation motion, they should put it before the Court rather than raise speculative and irrelevant arguments here.

and "sewer system safe" will protect all Plaintiffs and Class members from the threat of future harm. There is no evidence that any Plaintiff or class member will seek any different injunctive terms, or that any alternative injunction would be needed to alleviate the threat of harm.

Plaintiffs have put forth clear evidence that when flushable wipes do not disperse and that they can, and do, harm wastewater equipment. *See, e.g.* ECF No. 529-13, Ex. 60 at 6 (QFS Dep., at 26:17-27:24) (testifying that pump manufacturers do demonstrations at trade shows where flushable wipes are put in a pump and are unable to pass through); *supra* at II. Even if the flushable wipes do not become clogged in pumps, because they do not disperse they have to be removed from the wastewater system at some point, whether that be through additional manual maintenance or by purchasing new equipment such as a mechanical bar screen. *See, e.g.* Ex. 10 (D. Eckert Dep., at 19:11-13) (Elk River has had to increase the number of times a year it manually cleans the bar screen at one of its lift stations because the mat of material that builds up has "got[ten] worse over the years."); Ex. 24 (Princeton 30(b)(6) Dep., at 86:19-24) (Princeton added a bar screen to its main lift station in 2016 to collect flushable wipes before they reached the pumps). Defendants' flushable wipes are the only product on the market that is affirmatively labeled as "flushable," yet they cannot disperse in Minnesota and Wisconsin's wastewater systems.[10]

---

[10] Defendants' reliance on *Parko v. Shell Co.*, 739 F.3d 1083, 1086 (7th Cir. 2014) is misplaced. Unlike the plaintiffs in *Parko*, Plaintiffs here do not just allege that wipes are present – they also allege – and will prove – that the wipes are causing harm, as described herein. Furthermore, *Parko* relates to a proposed class for money damages under Rule 23(b)(3) in an environmental contamination case, not a 23(b)(2) class seeking injunctive relief for a willful deceptive advertising practice. *Parko* has no relevance here.

Plaintiffs have compelling evidence that Defendants' manipulation of the INDA standards caused, and will continue to cause, Plaintiffs' injury. *See* Plfs.' Br at 5-29. The evidence clearly shows that both Kimberly-Clark and Rockline knew that their wipes would not disperse in the water temperature and flow conditions present in Plaintiffs' wastewater systems, yet they actively participated in the creation of the various version of the INDA guidelines that do not take such conditions into account. *See* ECF No. 529-10, Ex. 41 (KC's Obj. and Resp. to Plfs.' Second Set of Requests for Admission to All Defendants, No. 52) (Kimberly- Clark admits that water temperature can affect its flushability claims); ECF No. 558, Ex. 46 (KCC-Wyoming-00000444) (emphasis added); ECF No. 560, Ex. 48 (KCC-Wyoming-00099672) (2013 KC Technical Communication); ECF No. 568, Ex. 57 (Rockline00010189) ███████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

Both Defendants were active, voting members of INDA that participated in creating and approving all versions of the INDA standards. They cannot distance themselves from statements made in their own documents—namely Plfs.' Exs. 8, 17, 18, and 36, which speak for themselves.

Plaintiffs have met the requirements for certification of a Rule 23(b)(2) injunctive class. A class-wide injunction prohibiting Defendants from labeling their wipes are "flushable" and "sewer-safe" is the only way to remedy the ongoing threat of harm.

## V.  Defendants' Standing Arguments are Without Merit

### A.  Plaintiffs do not need to Present Evidence of Harm to Absent Members

Defendants' argument that Plaintiffs lack standing because they do not present evidence of harm to absent class members fails.  A party seeking certification under Rule 23(b)(2) must establish only that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  The Eighth Circuit has stated that, "if the Rule 23(a) prerequisites have been met and injunctive or declaratory relief has been requested, the action usually should be allowed to proceed under subdivision (b)(2)."  *DeBoer*, 64 F.3d at 1175.

"The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or to none of them.'" *Dukes*, 564 U.S. at 360-61.  Conversely, a Rule 23(b)(2) class is inappropriate if "each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Ebert*, 823 F.3d at 480-81. "[A]ll of the class members need not be aggrieved by ... [the] defendant's conduct in order for some of them to seek relief under Rule 23(b)(2).  What is necessary is that the challenged conduct or lack of conduct be premised on a ground that is applicable to the entire class."  7AA Wright & Miller § 1775.

Plaintiffs meet the requirements for certification under Rule 23(b)(2).  Plaintiffs contend that, despite knowing that their wipes were not flushable and sewer safe in natural conditions, Defendants falsely and deceptively marketed and advertised to consumers in

Minnesota and Wisconsin that their wipes are flushable and sewer safe. Based upon these uniform false misrepresentations, consumers in these states have flushed, and continue to flush, Defendants' wipes. Plaintiffs, which are public entities responsible for the maintenance of wastewater facilities on behalf of the public, allege (and discovery has shown, as discussed *supra*) that they are harmed by the existence of these wipes in their sewer systems. If Defendants are not enjoined from making false representations, consumers will continue to be misled that flushing Defendants' wipes is appropriate. An injunction that precludes Kimberly-Clark and Rockline from continuing to market their wipes to consumers in Minnesota and Wisconsin as flushable and sewer safe will, as Rule 23(b)(2) requires, affect all class members uniformly.

This is precisely the type of uniform equitable relief that is contemplated by Rule 23(b)(2), and the classes should be certified. *See, e.g., Avritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023, 1036 (8th Cir. 2010) (holding that certification is appropriate under Rule 23(b)(2) where uniform resolution of the plaintiff's claims justified certification of the class); *see also Kurtz*, 321 F.R.D. at 482 (granting certification under Rule 23(b)(2) seeking an injunction of the same deceptive advertising present in this case because "the defendants, through their labeling practices, "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole").

## B. Plaintiffs' Proposed Class Definition Does not Defeat a Finding of Standing as to Absent Class Members

While "[t]he constitutional requirement of standing is equally applicable to class actions," federal courts "do not require that each member of a class submit evidence of personal standing." *See Avritt*, 615 F.3d at 1034 (citing *Denney v. Deustche Bank AG*, 443 F.3d 253, 263-64 (2d Cir. 2006)). Instead, in order to have standing for certification purposes, "[a] class 'must therefore be defined in such a way that anyone within it would have standing.'" *Id.*

Here, Plaintiffs' classes are defined as follows:

> **Class 1**: All entities that own, manage, or operate wastewater treatment facilities in the State of Minnesota; and
>
> **Class 2**: All entities that own, manage, or operate wastewater treatment facilities in the State of Wisconsin.

Both of these classes are comprised of facilities and entities that are responsible for the treatment of wastewater in designated geographic areas. Specifically, the classes include: (1) municipalities within Minnesota and Wisconsin that operate "lift" stations (which pump wastewater to water treatment facilities); and (2) other wastewater systems (such as CLJSTC and Metropolitan Council), which are not necessarily owned by a municipality, but that manage and maintain lift systems for other municipalities. All members of both classes are responsible for wastewater management for the benefit of the public. Plaintiffs have alleged, and will prove at trial, that Kimberly-Clark and Rockline's deceptive advertising regarding "flushable" wipes has harmed, and continues to harm, their

sewer systems. As such, Plaintiffs' proposed classes, as defined in the Amended Complaint, satisfy Article III's standing requirements.[11]

## C. Regardless, There is Ample Evidence of Harm to Absent Class Members

As set forth above, Plaintiffs have no obligation, under Rule 23(b)(2) or general Article III standing principles, to establish evidence of specific damages of absent class members. Nonetheless, brief internet research, reveals a number of similarly-situated municipalities in both Minnesota and Wisconsin decrying "flushable wipes" due to the harms they can cause:

- Ken Thomas, *Just Ask Us: Are Flushable Wipes Actually Flushable?* (June 6, 2016) *available at* https://madison.com/wsj/news/local/ask/just-ask-us/just-ask-us-are-flushable-wipes-actually-flushable/article_9a4c22c0-ca6d-50ef-ad07-75b1ed70b499.html (last visited November 13, 2018) ("Even wipes labeled as 'flushable' should not be flushed as they don't break easily and can cause the same problems." Those problems can occur in the home as well as in the wastewater treatment plant, and can be costly to repair");

- *Wipes Not Flushable!* (March-April 2017) *available at* https://www.cityofeagan.com/wipes-not-flushable (last visited November 15, 2018) ("Wipes labeled as "flushable" or "septic safe" do not break down the same way as toilet paper. They clog residential and municipal sewer pipes, put stress on community wastewater collection and treatment systems, and cause premature equipment repair and replacement, which indirectly drives up utility rates"); and

- *What Not to Flush*, *available at* https://www.cityoflacrosse.org/content/407/3701/4753/4763/default.aspx (last visited November 13, 2018) (including wipes labeled as "flushable" in a list to consumers of what should not be flushed); *"Flushable Wipes" Wreak*

---

[11] Kimberly-Clark and Rockline's suggestion that the proposed class definitions include "private" plaintiffs, such as Quality Flow Systems, is false. Quality Flow Systems is <u>not</u> a class member. As Defendants are well aware, QFS is a third party that services certain of Plaintiffs' sewer systems. QFS testified in this case about the damages caused by Defendants' flushable wipes.

*Havoc       on       City       Pipes,       available       at*
http://stpaulpark.org/index.asp?SEC=D59B54E2-4FF3-452A-9997-
0396DD468AEE&DE=AC86EA9D-BC74-42F5-9007-
5DDF6DDFA945&Type=B_BASIC (last visited November 13, 2018).

Although Plaintiffs are not required to establish evidence of damages of all absent class members, that information is so readily available on the internet it further discredits Defendants' arguments that Plaintiffs fail to show harm, and supports certification of the proposed classes under Rule 23(b)(2).

## VI.  Plaintiffs Have Satisfied Rule 23(b)(1)

In their attempt to defeat certification, Defendants argue that Plaintiffs' case is not a typical Rule 23(b)(1) case and that there is no risk of courts ordering incompatible standards of conduct. Defendants are wrong. Following well-established case law, Plaintiffs' lawsuit is the exact type of case suitable for certification under Rule 23(b)(1). Furthermore, the existence of other pending class action lawsuits challenging the same false and deceptive labeling that Plaintiffs challenge here, not to mention the strong possibility of others being filed, clearly demonstrates that there is a very real risk of multiple courts entering inconsistent declaratory and injunctive relief which would establish incompatible standards of conduct for the Defendants. Plaintiffs' proposed Rule 23(b)(1) classes should be certified.

### A.  The Classes Satisfy Rule 23(b)(1)(A)

Defendants claim that their mere opposition to certification under Rule 23(b)(1)(A), by itself, requires this Court to deny Plaintiffs' motion. However, an objection to Rule 23(b)(1)(A) class certification by the non-moving party, whom the Rule is meant to protect,

is not outcome-determinative. *Krueger v. Ameriprise Financial, Inc.*, 304 F.R.D. 559, 577 (D. Minn. 2004); *Casa Orlando Apartments, Ltd. v. Fed. Nat. Mortg. Ass'n*, 624 F.3d 185, 197 (5th Cir. 2010) ("We find nothing in the plain text of Rule 23 that permits a defendant's veto over (b)(1)(A) certification.")

Defendants cite *In re St. Jude Med., Inc. Silzone Heart Valves Prod. Liab. Litig.*, No. MDL 01-1396 JRTFLN, 2003 WL 1589527 (D. Minn. Mar. 27, 2003) in support of their argument. However, *St. Jude* and the case it relied on, *Fogie v. Rent–A–Center, Inc.*, 867 F. Supp. 1398 (D. Minn.1993), both have been distinguished in this District. In *Krueger*, the court rejected the defendants' identical argument by noting that the courts in *St. Jude* and *Fogie* "first found that the case was unsuitable for certification under Rule 23(b)(1)(A) because the 'plaintiffs [were] not suing for different [and/or] incompatible relief.'" *Krueger*, 304 F.R.D. at 577. After that threshold finding, those courts merely supplemented their conclusions by noting that a defendant who objects to class certification under this Rule waives its protections. *Id.* Tellingly, the *Krueger* court then *proceeded to certify a class under Rule 23(b)(1)(A) despite the defendants' objection*. *Id.*

Next, Defendants' claim that certification under Rule 23(b)(1)(A) is not appropriate misses the mark. First, Plaintiffs are not claiming that mere possibility of inconsistent adjudications alone justifies class certification.[12] Instead, Plaintiffs have claimed that in

---

[12] Each of the cases Defendants cite for this proposition, which Plaintiffs do not assert, are also readily distinguishable as they all involve scenarios where the court found there was no risk of incompatible adjudications. *See Chmieleski v. City Prod. Corp.*, 71 F.R.D. 118, 155 (W.D. Mo. 1976) (denying certification under Rule 23(b)(1)(A) because "there must be different parties attempting to impose different standards of conduct" and in this antitrust action "such a situation seems highly unlikely."); *Casa Orlando*, 624 F.3d at 197

addition to the likelihood of inconsistent adjudications, "there exists a substantial risk of incompatible standards of conduct." Plfs.' Br. at 42.

Second, unlike the cases cited by Defendants[13], this case involves a significant risk of multiple courts ordering incompatible standards of conduct. Here, as demonstrated at the outset, there are other cases pending challenging false and deceptive advertising flushable wipes. In addition to the example already provided in Plaintiffs' opening brief Plfs.' Br. at 42-43, it is not hard to imagine other scenarios where courts could order incompatible standards of conduct. For example, one court could order that Defendants remove the terms "flushable" and/or "sewer safe" from their products entirely. Another court could order that the terms remain, but demand that either or both of these terms have specific qualifying language added. Under these scenarios, and infinite others, the Defendants would be placed in a bind by being ordered to act in inconsistent ways if individual suits were permitted to proceed. *White v. Nat'l Football League*, 822 F. Supp. 1389, 1408-09 (D. Minn. 1993) (certifying a Rule 23(b)(1)(A) class because "[o]ne court

_____

(Denying certification because it is seldom appropriate under 23(b)(1)(A) when dealing with monetary compensation and where the defendant could comply with the potential injunctive remedies in the case.); *Ruland v. Gen. Elec. Co.*, 94 F.R.D. 164, 165 (D. Conn. 1982)(Denying certification where there was "no evidence to support a finding of a risk of inconsistent or varying adjudications which would establish incompatible standards.") As is detailed herein, there is a very realistic risk that courts could order incompatible standards of conduct in this case.

[13] *See Brown v. Wells Fargo & Co.*, 284 F.R.D. 432, 446 n. 14 (D. Minn. 2012) (Finding no possibility of incompatible standards of conduct where the defendant "would be able to comply with one judgment without violating the terms of another."); *Smith v. Brown & Williamson Tobacco Corp.*, 174 F.R.D. 90, 99 (W.D. Mo. 1997) ("Rule 23(b)(1)(A) is designed to cover those situations in which a party may be ordered to act in inconsistent ways if individual suits were permitted to proceed.")

could grant injunctive relief, a second might deny such relief, and a third might grant injunctive relief that materially differs from that granted by the first court."). This is precisely the type to "whipsawing" Defendants' brief declares that Rule 23(b)(1)(A) is designed to eliminate. Def. Br at 85 (*citing Payne v. Tri-State CareFlight, LLC*, No. CIV 14-1044 JB\KBM, 2018 WL 4603810, at *16 (D.N.M. Sept. 25, 2018)).

### B. The Classes Satisfy Rule 23(b)(1)(B)

As Defendants agree, Rule 23(b)(1)(B) is not restricted to "limited fund" cases. Def. Br at 86. It also applies when injunctive relief is sought. *White*, 822 F. Supp. at 1409 (Certifying a Rule 23(b)(1)(B) class seeking injunctive relief). Thus, Defendants' only challenge to Plaintiffs' Rule 23(b)(1)(B) motion is that some other tort cases have declined to certify Rule 23(b)(1)(B) classes. However, neither of the two cases Defendants cite provide any persuasive authority. Plaintiffs' case is not a limited fund case and Plaintiffs are not challenging the future ability of Defendants to satisfy financial claims. *See In re Simon II Litig.*, 407 F.3d 125, 137–38 (2d Cir. 2005) (Denying certification in a limited fund case because there was no "evidence on which the district court may ascertain the limit and the insufficiency of the fund."). Defendants' challenge falls woefully short.

Plaintiffs' case easily satisfies the standard for Rule 23(b)(1)(B) certification. Simply put, certification under Rule 23(b)(1)(B) is appropriate when "the prosecution of separate actions seeking injunctive relief would create the risk of judgments that may, as a practical matter, affect the rights of class members and impair their ability to protect their interests." *White*, 822 F. Supp. at 1409. The existence of other cases seeking injunctive relief and challenging the same conduct demonstrates the need for certification under Rule

23(b)(1)(b). *Id.* ("The numerous lawsuits already filed by various class members seeking injunctive relief clearly demonstrate that such risks are also present in the instant case."). As is discussed above, there are already multiple cases filed against Defendants challenging the same false and deceptive advertising. Furthermore, different courts may grant varying forms of declaratory and injunctive relief. These determinations very likely could set forth standards of conduct regarding labeling and flushability which would be dispositive of the interests of other class members or substantially impair or impede their ability to protect their interests. Therefore, this Court should grant certification under Rule 23(b)(1)(B).

## CONCLUSION

For all the forgoing reasons, as well as those set out in their opening brief, Plaintiffs respectfully request that the Court grant their motion for class certification and certify the proposed Minnesota and Wisconsin state classes.

Respectfully submitted,

Dated: November 16, 2018

*/s/Daniel E. Gustafson*
Daniel E. Gustafson (#202241)
Jason S. Kilene (#024773X)
Joshua J. Rissman (#0391500)
Raina C. Borrelli (#392127)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
jkilene@gustafsongluek.com
jrissman@gustafsongluek.com
rborrelli@gustafsongluek.com

Simon B. Paris
Patrick Howard
Charles J. Kocher
**SALTZ, MONGELUZZI, BARRETT &
BENDESKY, P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Tel: (215) 496-8282
Fax: (215) 496-0999
sparis@smbb.com
phoward@smbb.com
ckocher@smbb.com

*Proposed Class Counsel*

Mark Reinhardt (#90530)
Garrett D. Blanchfield (#209855)
Roberta A. Yard (#322295)
Brant D. Penney (#316878)
**REINHARDT, WENDORF &
BLANCHFIELD**
E 1250 First National Bank Building
332 Minnesota Street
St. Paul, MN 55101
Tel: (651) 287-2100
Fax: (651) 287-2103
m.reinhardt@rwblawfirm.com
g.blanchfield@rwblawfirm.com
r.yard@rwblawfirm.com
b.penney@rwblawfirm.com

David M. Cialkowski (#306526)
June P. Hoidal (#033330X)
**ZIMMERMAN REED, PLLP**
1100 IDS Center 80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400
Fax: (612) 341-0844
David.cialkowski@zimmreed.com
June.hoidal@zimmreed.com

Anthony D. Shapiro
**HAGENS BERMAN**
**SOBOL SHAPIRO LLP**
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
tony@hbsslaw.com

Kenneth A. Wexler
Edward A. Wallace
Mark R. Miller
**WEXLER WALLACE LLP**
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Tel: (312) 346-2222
Fax: (312) 346-0022
kaw@wexlerwallace.com
eaw@wexlerwallace.com
mrm@wexlerwallace.com

Todd A. Seaver
Kristin J. Moody
**BERMAN TABACCO**
44 Montgomery Street, Suite 650
San Francisco, CA 94104
Tel: (415) 433-3200
Fax: (415) 433-6382
tseaver@bermantabacco.com
kmoody@bermantabacco.com

*Additional Counsel for Plaintiffs and Proposed Classes*